UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
————————————————————————————

SAYVION D. BLOUNT,

                                        Plaintiff,

                                                                    5:20-CV-937
v.                                                                  (GTS/TWD)

COUNTY OF ONONDAGA, et al.,

                                        Defendants.
————————————————————————————

APPEARANCES:

SAYVION D. BLOUNT
Plaintiff, *pro se*
20A1115
Downstate Correctional Facility
Box F
Red Schoolhouse Rd.
Fishkill, NY 12524

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

## I.    INTRODUCTION

        The Clerk has sent to the Court for review a *pro se* complaint filed by Plaintiff Sayvion

D. Blount pursuant to 42 U.S.C. §1983 ("Section 1983"), together with an application to proceed

*in forma pauperis* ("IFP Application") and a motion for appointment of counsel.  (Dkt. Nos, 1, 2,

6.)  Plaintiff is incarcerated and has not paid the filing fee for this action.  (Dkt. No. 5.[1])

———————————————

[1]  Plaintiff's address currently listed on the Docket Report for this action is Downstate
Correctional Facility.  (Dkt. No. 5.)  A search of the Inmate Information Database ("inmate
database") maintained by the New York State Department of Corrections and Community
Supervision ("DOCCS"), using Plaintiff's Department ID Number (20A1115), reveals Plaintiff
is presently incarcerated at the Willard Drug Treatment Campus.  *See*
http://nysdocslookup.docs.state.ny.gov (last visited Oct. 19, 2020).  Under this Court's rules, an

## II.    IFP APPLICATION

A court may grant in forma pauperis status if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).  Upon review, Plaintiff has submitted a completed and signed IFP Application, which demonstrates economic need.  (Dkt. No. 2.) Plaintiff has also filed the inmate authorization form required in this District.  (Dkt. No. 3.) Accordingly, Plaintiff's IFP Application is granted.[2]

## III.    SUFFICIENCY OF THE COMPLAINT

### A.    Standard of Review

Having found that Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

28 U.S.C. § 1915(e) directs that when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks

---

unrepresented litigant is under a duty to inform the Court of any address changes in writing.  *See* N.D.N.Y.L.R. 10.1(c)(2).  For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the Court informed of address changes.  Consequently, Plaintiff must file a change of address within thirty days, and he must continue to submit any address changes to the Court as long as his action is pending.  "Failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action."  N.D.N.Y. L.R. 41.2(b).

[2]  Section 1915 permits "an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged."  *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).  "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts."  *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)). Plaintiff should also note that although his IFP Application has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

monetary relief against a defendant who is immune from such relief."  28 U.S.C. §

1915(e)(2)(B).[3]

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action

in which a prisoner seeks redress from a governmental entity or officer or employee of a

governmental entity" and must "identify cognizable claims or dismiss the complaint, or any

portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim

upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune

from such relief."  28 U.S.C. § 1915A.

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules

of Civil Procedure ("Federal Rules").  Rule 8 of the Federal Rules provides that a pleading which

sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim

showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8 "is

to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to

file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res*

*judicata* is applicable."  *Hudson v. Artuz*, No. 95 Civ. 4768, 1998 WL 832708, at *1 (S.D.N.Y.

Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D.

15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).  Although "[n]o technical form is

required," the Federal Rules make clear that each allegation contained in the pleading "must be

simple, concise, and direct."  Fed. R. Civ. P. 8(d).  Additionally, Rule 10 of the Federal Rules

provides in pertinent part that:

> "[a] party must state its claims or defenses in numbered
> paragraphs, each limited as far as practicable to a single set of
> circumstances.  A later pleading may refer by number to a

---

[3]  To determine whether an action is frivolous, a court must look to see whether the complaint
"lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

> paragraph in an earlier pleading.  If doing so would promote
> clarity, each claim founded on a separate transaction or occurrence
> – and each defense other than a denial – must be stated in a
> separate count or defense.

Fed. R. Civ. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of identification for

referring to a particular paragraph in a prior pleading[.]"  *Flores v. Graphtex*, 189 F.R.D. 54, 54

(N.D.N.Y. 1999) (quotation marks and citations omitted).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a

claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While the court should construe the factual allegations in the light most favorable to the

plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint

is inapplicable to legal conclusions."  *Id.*  "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S.

at 555).  Rule 8 of the Federal Rules "demands more than an unadorned, the-defendant-

unlawfully-harmed-me accusation."  *Id.*  Thus, a pleading that contains only allegations which

"are so vague as to fail to give the defendants adequate notice of the claims against them" is

subject to dismissal.  *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

### B.    Summary of Complaint

Plaintiff brings this Section 1983 action against the County of Onondaga, City of

Syracuse, the Hon. Mary Anne Doherty, Thomas Roulan, Joseph Centra, and Janelle N. Ecker as

Defendants.  (Dkt. No. 1 at 1, 2.)  Additionally, although not named as Defendants in the caption

or list of parties, the Court liberally construes the complaint as asserting allegations of

wrongdoing against the Hon. Thomas J. Miller, Assistant District Attorney Colin Lynch, Ian Duquette, and Andrew Torrance. (*See generally* Dkt. No. 1.[4]) The following facts are set forth as alleged by Plaintiff in his complaint.[5]

On June 1, 2019, Plaintiff was arrested for unlawful possession of a motor vehicle, a misdemeanor, in addition to other unspecified crimes and appeared before the Hon. Mary Anne Doherty ("Judge Doherty"), Syracuse City Court Judge. (Dkt. No. 6 at 2.[6]) *Id.* On August 12, 2019, after spending 73 days in jail and "pleading," Judge Doherty released Plaintiff "pending sentencing for this misdemeanor crime at a later date." *Id.*

On September 22, 2019, Plaintiff was "assaulted" by Ian Duquette and Andrew Torrance at a gas station in the City of Syracuse, resulting in Plaintiff's "injury and arrest." (Dkt. No. 1 at 14.) Specifically, Plaintiff was arrested for "felonies, violating the plea term of 3 years misdemeanor probationary term that [he] was going to be sentenced to, and the pretrial release in [Judge] Doherty's Court." (Dkt. No. 6 at 2.) Plaintiff was "held" in jail on the "new felony

---

[4] Rule 10(a) of the Federal Rules of Civil Procedure requires that all defendants be listed in the caption of the complaint. The rule provides that, "the title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). "A party not named in the caption of the complaint is not a party to the action." *Bloodywone v. Bellnier*, No. 9:18-CV-0615 (GTS/DJS), 2018 WL 10550308, at 5 n.8 (N.D.N.Y. Oct. 17, 2018) (citing *Abbas v. U.S.*, No. 10-CV-0141, 2014 WL 3858398, at *2 (W.D.N.Y. Aug. 1, 2014) (the failure to name a party in the caption makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims")). "If people are not also named in the caption of the [ ] complaint, they will not be defendants in the case." *Whitley v. Krinser*, No. 06-CV-0575, 2007 WL 2375814, at *1 (W.D.N.Y. Aug. 15, 2007). Nevertheless, in this instance, in light of Plaintiff's *pro se* status, and because Plaintiff asserts allegations of wrongdoing against the aforementioned individuals as set forth herein, the Court construes the complaint as asserting claims against these individuals. The Clerk is directed to add the aforementioned individuals as Defendants in this action.

[5] The Court also considers the amended statement of facts (Dkt. No. 6). (*See* Dkt. No. 7.)

[6] Page references to documents identified by docket number refer to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

charges" by the Hon. Thomas J. Miller ("Judge Miller"), Onondaga County Court Judge, "and

the still pending misdemeanor in [Judge] Doherty's Court." *Id.*

On January 1, 2020, Plaintiff was "released" on his "own recognizance" and pursuant to

the "new bail reform law enacted that day." *Id.* Plaintiff "was to return" to "Judge Miller's

Court" on January 8, 2020, and to "Judge Doherty's Court" on January 14, 2020. *Id.* Plaintiff

failed to appear at either court date. *Id.* On January 8, 2020, Judge Miller issued a bench

warrant for Plaintiff's arrest. *Id.*

On January 24, 2020, Plaintiff was arrested on Judge Miller's bench warrant. *Id.* On

January 31, 2020, in Judge Miller's Court, Plaintiff was "forced" into "pleading" to an

indeterminate sentence of 1.5 to 3 years. *Id.*[7] Plaintiff also agreed "to be sentenced to the

Willard Drug Treatment program 97 day state prison program on March 30, 2020." *Id.* at 11-12.

Judge Miller made "biased and prejudiced remarks and decisions regarding [Plaintiff's]

sentencing and plea bargain agreement." *Id.* at 10. For example, Judge Miller stated, "If you

were a family member of mine, I would have to sentence you to a state prison sentence." *Id.*

This "coercion" led Plaintiff to believe that he "couldn't plea to an alternative to prison." *Id.*

Plaintiff also asked his attorney, Timothy Roulan, "about Doherty's Court," and Roulan

explained that "[s]he didn't issue a warrant yet, and so you are not held by her, you are going

home today." (Dkt. No. 6 at 2.) Roulan also stated, "don't worry about Doherty's misdemeanor,

that will be run concurrent with the felony." *Id.* Plaintiff was released from jail on January 31,

2020, and, pursuant to the plea agreement was to be sentenced on March 30, 2020. (Dkt. No. 1

at 11.)

---

[7] A review of the DOCCS inmate database shows Plaintiff (DIN 20A1115) was convicted of
criminal possession of stolen property in the fourth degree and was sentenced to 1.5 to 3 years.
*See* http://nysdocslookup.docs.state.ny.gov (last visited Oct. 19, 2020).

On March 21, 2020, Plaintiff was arrested pursuant to a bench warrant issued by Judge Doherty for failing to appear on January 14, 2020. *Id.* He was held without bail by Judge Doherty for another 89 days, which Plaintiff claims is "false imprisonment." *Id*. at 3.

Moreover, despite the terms of the January 31, 2020, plea agreement, Judge Miller did not sentence Plaintiff on March 30, 2020, and used the "COVID-19 pandemic to justify not upholding this agreement" (Dkt. No. 1 at 11, 12.)

On June 17, 2020, during a recorded video proceeding regarding the June 1, 2019, misdemeanor charge, Judge Doherty stated, "Mr. Blount you have 5 months of incarceration on this charge, I think. Right, Mr. Blount? So if you want, I am going to give you time served now." (Dkt. No. 1 at 5.) Plaintiff responded, "No, your Honor. I have close to approximately 9 months of total incarceration as of today." *Id*.[8] Judge Doherty replied, "well, whatever you have in I am now giving you time served." *Id*.

On July 15, 2020, Judge Miller and ADA Lynch denied Plaintiff of his "right" to withdraw and/or revise his January 31, 2020, plea. *Id*. at 12. Although Plaintiff told Janelle E. Ecker, his attorney, that he wanted to "withdraw" or "revise" the plea because of Judge Miller's "bias and coercion," she did not follow his directions. *Id*. Judge Miller sentenced Plaintiff to state prison in "complete violation of [his] civil/constitutional rights as a person" *Id*. at 10. As of August 12, 2020, Plaintiff was incarcerated for at total of 150 days on the felony charges, as opposed to agreed upon 97 days at the Willard Drug Treatment Campus and, therefore, "needs to be released on parole supervision." *Id*.[9]

---

[8] According to the complaint, from June 1, 2019, through June 17, 2019, Plaintiff was "held by Judge Doherty" for a total of 260 days as a result of the misdemeanor charge.

[9] As noted above, the website maintained by DOCCS indicates Plaintiff was received into custody on August 20, 2020, and is currently incarcerated at the Willard Drug Treatment Center. (*See* Part 1.n1., *supra*.)

Plaintiff also claims that attorneys Joseph Centra and Janelle Ecker "did not raise any legal concern or motions on [his] behalf and refused to assist [Plaintiff] in any legal capacity." (Dkt. No. 6 at 1.)  Because of their "inaction," these attorneys "witnessed and allowed Plaintiff's civil/constitutional rights to be violated."  *Id.*

As a result of the foregoing, Plaintiff has been "emotionally distressed/duressed and mentally anguished."  (Dkt. No. 1 at 2.)  "Because of this false imprisonment and or unlawful detainment and denial of due process," and because he was "held in custody without bail by Judge Doherty, Plaintiff was unable to attend the funerals of two family members.  (Dkt. No. 1 at 2.)  He also has suffered "loss of potential wages."

Plaintiff claims that the "the 260 days in jail" on the June 1, 2019, misdemeanor charge, constitutes "false imprisonment, unlawful detainment, denial of due process in a criminal proceeding, a mismanagement of records, negligence, and professional misconduct and unethical manner and/or misconduct by Hon. Judge Doherty, Syracuse City Judge."  *Id.* at 3.  The complaint also lists the following as causes of action: unconstitutional conditions of confinement, denial of equal protection, deliberate indifference to medical needs, breach of professional conduct and ethics, negligence, and mismanagement of records.  *Id.*  Plaintiff has "PTSD and extreme depression and anxiety," along with mental anguish and loss of potential wages.  *Id.*

In addition to significant monetary damages, Plaintiff requests a "full investigation" of Judge Doherty regarding the aforementioned "false imprisonment" and states that he wants her "formally disciplined and disbarred for her neglect of duties," and to have her "removed from the court room bench."  (Dkt. No. 1 at 9.)  Plaintiff also requests a "full investigation" of the foregoing and requests that Janelle Ecker and Judge Miller be "formally disciplined and

disbarred" and should not be allowed to practice.  *Id.*  Plaintiff further requests that he be

released to parole supervision.  *Id.*  For a complete statement, reference is made to the complaint.

(Dkt. No. 1.)

### C.    Nature of Action

Plaintiff seeks relief pursuant to Section 1983, which establishes a cause of action for

"'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws'

of the United States."  *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see also Myers*

*v. Wollowitz*, No. 95-CV-0272 (TJM), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995)

(finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged

violations of their constitutional rights").  "Section 1983 itself creates no substantive rights, [but]

. . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v.*

*James*, 13 F.3d 515, 519 (2d Cir. 1993).  To state a claim under Section 1983, the plaintiff must

allege both that the defendant has violated plaintiff's rights under either the Constitution or laws

of the United States and that the defendant acted "under color of state law."  *Rae v. City of*

*Suffolk*, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010); 42 U.S.C. § 1983.

## IV.    ANALYSIS

In addressing the sufficiency of a *pro se* plaintiff's complaint, the court must construe his

pleadings liberally.  *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

Having reviewed Plaintiff's complaint with this principle in mind, the Court recommends

dismissing the complaint in its entirety.

### A.    Claims against Judge Doherty and Judge Miller

Judges are absolutely immune from suit for damages for any actions taken within the

scope of their judicial responsibilities.  *Mireles v. Waco*, 502 U.S. 9, 11 (1991).  This is true

however erroneous an act may have been, and however injurious its consequences were to the

plaintiff. *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994); *see also Stump v. Sparkman*, 435 U.S.

349, 357 (1978) ("A judge will not be deprived of immunity because the action he took was in

error, was done maliciously, or was in excess of his authority; rather, he will be subject to

liability only when he has acted in the clear absence of all jurisdiction."). Generally, "acts

arising out of, or related to, individual cases before the judge are considered judicial in nature."

*Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). This immunity applies to state court judges

who are sued in federal court pursuant to Section 1983. *Pizzolato v. Baer*, 551 F. Supp. 355, 356

(S.D.N.Y. 1982), *aff'd sub nom. Pizzolato v. City of New York*, 742 F.2d 1430 (2d Cir. 1983).

The only two circumstances in which judicial immunity does not apply is when he or she takes

action "outside" his or her judicial capacity and when the judge takes action that, although

judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 11-12.

In the present action, Plaintiff's Section 1983 claims against Judge Doherty and Judge

Miller arise from the exercise of their judicial functions. (*See generally* Dkt. Nos. 1, 6.) Judges

are immune from damages for civil liability for acts taken in their judicial capacity. *Stump*, 435

U.S. at 356, *Bliven*, 579 F.3d at 210. Plaintiff's allegations fail to implicate either of the

exceptions to judicial immunity. (*See generally* Dkt. Nos. 1, 6.)

Therefore, the Court recommends that Plaintiff's Section 1983 claims against Defendants

Judge Doherty and Judge Miller be dismissed with prejudice pursuant to 28 U.S.C. §

1915(e)(2)(B) and 28 U.S.C. § 1915A(b) based on absolute immunity and failure to state a claim

upon which relief may be granted.[10]

---

[10] Because Judge Doherty and Judge Miller are entitled to absolute judicial immunity, the Court
does not address the merits of Plaintiff's allegations or the favorable termination rule of *Heck v.
Humphrey*, 512 U.S. 477 (1994).

**B.    Claims against ADA Lynch**

Like judges, prosecutors also enjoy absolute immunity from suit under Section 1983 in matters associated with their prosecutorial functions, regardless of motivation.  *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function); *see also Hill v. City of N.Y.*, 45 F.3d 653, 660-61 (2d Cir. 1995) ("[P]rosecutors are entitled to absolute immunity for that conduct 'intimately associated with the judicial phase of the criminal process.'" (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).  Absolute immunity is defeated only when the prosecutor is engaging in investigative functions.  *Bernard v. Cty. of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (citation omitted).  The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity.  *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006).

In this case, construed liberally, Plaintiff's Section 1983 claims against ADA Lynch concern a quintessential prosecutorial function—pursing a criminal case—which fall squarely with the scope of absolute immunity.  To the extent Plaintiff is suing ADA Lynch for her conduct during plea negotiations and sentencing, such conduct is also protected by absolute immunity.  *See Taylor v. Kavanagh*, 640 F.2d 450, 451-52 (2d Cir. 1981) (absolute immunity extends to plea negotiations and sentencing); *Brown v. Paterson*, No. 10 Civ. 5833, 2011 WL 7429454, at *7 (S.D.N.Y. Dec. 27, 2011) (prosecutorial function includes plea bargaining), *report-recommendation adopted by* 2012 WL 639151 (S.D.N.Y. Feb. 28, 2012).

Therefore, the Court recommends that Plaintiff's Section 1983 claims against Defendant ADA Lynch be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) based on absolute immunity and failure to state a claim upon which relief may be granted.

### C.    Claims against City of Syracuse and County of Onondaga

Pursuant to the standard for establishing municipal liability laid out in *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), in order to set forth a cognizable claim for municipal liability under Section 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. 658); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer.")  A municipality may be liable for deprivation of constitutional rights under Section 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.  *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989).  A plaintiff must also establish a causal connection – an affirmative link–between the policy and the deprivation of his constitutional rights.  *Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985) (plurality opinion).  Indeed, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it "may not be held liable on a theory of *respondeat superior*."  *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000).

Here, Plaintiff has named as Defendants the City of Syracuse and County of Onondaga. (Dkt. No. 1 at 1.)  Upon review, Plaintiff fails to identify or allege any facts showing the existence of an official policy or custom of the City of Syracuse or County of Onondaga that resulted in the deprivation of his constitutional rights.  The listing of the City of Syracuse and County of Onondaga in the caption falls far short of alleging municipal liability.  *See Gray-Davis*

12

*v. New York*, 14-CV-1490 (GTS/TWD), 2015 WL 2120518, at *6 (N.D.N.Y. May 5, 2015)

("Without supporting factual allegations of, among other things, a policy or custom pursuant to

which the alleged action was undertaken, [Plaintiff] fails to state a claim against those

municipalities that is plausible on its face."); *Hawthorne v. City of Albany*, 17-CV-0716 (GTS),

2017 WL 6520774, at *5 (N.D.N.Y. Nov. 14, 2017) (same).

Therefore, the Court recommends that Plaintiff's Section 1983 claims against Defendants

City of Syracuse and County of Onondaga be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)

and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### D.    Claims against Roulan, Centra, and Ecker

Plaintiff has named three attorneys, Timothy Roulan, Joseph Centra, and Janelle N.

Ecker, as Defendants.  (Dkt. No. 1 at 1-3.)  Section 1983 permits a person to recover damages for

the deprivation of constitutional rights "under color of any statute, ordinance, regulation, custom,

or usage of any State or Territory."  42 U.S.C. § 1983 (2012).  Private attorneys, whether court

appointed or privately retained, are generally not liable under Section 1983.  *See Rodriguez v.*

*Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ("[I]t is well-established that court-appointed

attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under

color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983.") (citation

omitted)).

Because of this lack of state action, Plaintiff's claims against his criminal defense

attorneys are not cognizable under Section 1983.  Moreover, there is no indication in the

complaint that Roulan, Centra, or Ecker was a "willful participant in joint activity with the State

or its agents," as is required in order for the Court to find that a private party has engaged in state

action.  *See Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam).

Therefore, the Court recommends that Plaintiff's Section 1983 claims be dismissed as against Defendants Roulan, Centra, and Ecker pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### E.    Claims against Duquette and Torrance

Plaintiff claims he was "assaulted" by Duquette and Torrance on September 22, 2019, in the City of Syracuse, resulting in an unspecified "injury" and his "arrest" for "felonies."  (Dkt. No. 1 at 14.)  It is the plaintiff's duty to allege state action on the part of the defendants named in a complaint, and a court may dismiss an action under 28 U.S.C. § 1915(e) where a plaintiff fails to plead such a nexus.  *See Carollo-Gardner v. Diners Club*, 628 F. Supp. 1253, 1256-57 (E.D.N.Y. 1986) (dismissing as frivolous *pro se* complaint where plaintiff failed to allege state action on part of defendants) (citations omitted).

In this instance, the complaint is silent as to whether Duquette and Torrance acted under color of state law.  Private conduct is beyond the reach of Section 1983 "no matter how discriminatory or wrongful" that conduct may be.  *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)).

Therefore, the Court recommends that Plaintiff's Section 1983 claims be dismissed as against Defendants Duquette and Torrance pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### F.    Remaining Constitutional Claims

The complaint lists causes of actions for unconstitutional conditions of confinement, denial of equal protection, and deliberate indifference to medical needs.  However, such

allegations are conclusory and unsupported by any factual enhancement and, therefore, fail to satisfy the governing pleading requirements under Rule 8 and *Iqbal*.  Additionally, the complaint fails to identify any individuals personally involved in the remaining alleged constitutional violations.  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation.").

Therefore, the Court recommends dismissing the remaining constitutional claims pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### G.    State Law Claims

A federal court may, in its discretion, exercise supplemental jurisdiction over a state law claim, but only to the extent it is accompanied by a claim over which the court has original jurisdiction.  *See* 28 U.S.C. § 1367 ("[E]xcept [in limited circumstances], in any civil action of which the district courts have original jurisdiction, the district court shall have supplemental jurisdiction over all other claims that are so related[.]").

In light of the above recommendations, the Court also recommends declining to exercise supplemental jurisdiction over any purported state law claims.  *See Kolari v. New York Presbyterian Hosp.*, 455 F.3d 118, 120 (2d Cir. 2006) (district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has jurisdiction have been dismissed).

### H.    Whether to Permit Amendment

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted).  An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

In this case, it is not clear whether better pleading would permit Plaintiff to state a cognizable cause of action.  Nevertheless, out of deference to Plaintiff's *pro se* status, the Court recommends that he be granted leave to amend to cure the deficiencies identified above, except with regard to Plaintiff's Section 1983 claims against Defendants Judge Doherty, Judge Miller, and ADA Lynch.[11]

## V.    MOTION FOR COUNSEL

Plaintiff has filed a motion for the appointment of counsel.  (Dkt. No. 6.)  It is well settled that "[a] party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011)

---

[11]  If the District Court adopts and approves this Report-Recommendation, and if Plaintiff chooses to file an amended complaint, any amended complaint must comply with Rules 8 and 10 of the Federal Rules.  Any such amended complaint must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act.  In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

(citations omitted).  In *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994), the

Second Circuit reiterated the factors that a court must consider in ruling upon such a motion.  In

deciding whether to appoint counsel, the court should first determine whether the indigent's

position seems likely to be of substance.  If the claim meets this threshold requirement, the court

should then consider a number of other factors in making its determination.  *Id.* at 1341 (quoting

*Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)); *see also Leftridge*, 640 F.3d at 69

(noting that a motion for appointment of counsel may be properly denied if the court "concludes

that [the party's] chances of success are highly dubious.") (citations omitted).

The Court denies the motion as moot in light of the above recommendations that

Plaintiff's complaint be dismissed in its entirety.  Even if the Court were not recommending

dismissal, a more fully developed record would be necessary before an assessment can be made

as to whether counsel should be appointed.  *See Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d

Cir. 1997).  The denial is without prejudice and with opportunity to renew.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**;[12] and it is

further

**ORDERED** that the Clerk revise the docket sheet to **ADD** Hon. Thomas J. Miller,

Assistant District Attorney Colin Lynch, Ian Duquette, and Andrew Torrance as Defendants in

this action; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS**

**ENTIRIETY** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b); and it is further

---

[12]  Plaintiff should note that, although the Court has granted his IFP Application, he will still be
required to pay fees that he may incur in this action, including copying and/or witness fees.

**RECOMMENDED** that Plaintiff's Section 1983 claims against Defendants Judge Doherty, Judge Miller, and ADA Lynch be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A based on absolute immunity and failure to state a claim upon which relief may be granted; and it is further

**RECOMMENDED** that Plaintiff's remaining Section 1983 claims be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**RECOMMENDED** that the District Court decline to exercise supplemental jurisdiction over any state law claims;

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 6) is **DENIED WITHOUT PREJUDICE**; and it is further

**ORDERED** that the Clerk provide Plaintiff with (1) a copy of this Order and Report-Recommendation; (2) copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and (3) a Change of Address Form on Plaintiff at his address listed on the Docket, Downstate Correctional Facility, and the address of the facility listed in the Inmate Information Database, Willard Drug Treatment Campus; and it is further

**ORDERED** that Plaintiff must file a **CHANGE OF ADDRESS** within **THIRTY DAYS** of the date of the Report-Recommendation, and he must continue to submit any address changes to the Court as long as this action is pending and "[f]ailure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action." N.D.N.Y. L.R. 41.2(b).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[13]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: October 19, 2020
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[13]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

1998 WL 832708
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Theodore HUDSON, Plaintiff,

v.

Christopher ARTUZ, Warden Philip
Coombe, Commissioner Sergeant
Ambrosino Doctor Manion Defendants.

No. 95 CIV. 4768(JSR).
|
Nov. 30, 1998.

**Attorneys and Law Firms**

Mr. Theodore Hudson, Great Meadow Correctional Facility,
Comstock.

Alfred A. Delicata, Esq., Assistant Attorney General, New
York.

MEMORANDUM AND ORDER

BUCHWALD, Magistrate J.

**\*1** Plaintiff Theodore Hudson filed this *pro se* action
pursuant to 42 U.S.C. § 1983 on April 26, 1995. Plaintiff's
complaint alleges defendants violated his constitutional rights
while he was an inmate at Green Haven Correctional
Facility. [1] Plaintiff's complaint was dismissed *sua sponte* by
Judge Thomas P. Griesa on June 26, 1995 pursuant to 28
U.S.C. § 1915(d). On September 26, 1995, the Second Circuit
Court of Appeals vacated the judgment and remanded the case
to the district court for further proceedings.

[1]    Plaintiff is presently incarcerated at Sullivan
       Correctional Facility.

The case was reassigned to Judge Barbara S. Jones on
January 31, 1996. Defendants moved to dismiss the complaint
pursuant to Fed.R.Civ.P. 12(c) on November 25, 1996.
Thereafter, the case was reassigned to Judge Jed S. Rakoff
on February 26, 1997. On February 26, 1998, Judge Rakoff
granted defendants' motion to dismiss, but vacated the
judgment on April 10, 1998 in response to plaintiff's motion
for reconsideration in which plaintiff claimed that he never
received defendants' motion to dismiss.

By Judge Rakoff's Order dated April 14, 1998, this case was
referred to me for general pretrial purposes and for a Report
and Recommendation on any dispositive motion. Presently
pending is defendants' renewed motion to dismiss. Plaintiff
filed a reply on July 6, 1998. For the reasons discussed
below, plaintiff's complaint is dismissed without prejudice,
and plaintiff is granted leave to replead within thirty (30) days
of the date of the entry of this order.

FACTS

Plaintiff alleges that he was assaulted by four inmates in the
Green Haven Correctional Facility mess hall on March 14,
1995. (Complaint at 4.) He alleges that he was struck with
a pipe and a fork while in the "pop room" between 6:00
p.m. and 6:30 p.m. (Complaint at 4–5.) Plaintiff contends
that the attack left him with 11 stitches in his head, chronic
headaches, nightmares, and pain in his arm, shoulder, and
back. (*Id.*) Plaintiff also states that Sergeant Ambrosino
"failed to secure [the] area and separate" him from his
attackers. (Reply at 5.) Plaintiff's claim against Warden Artuz
is that he "fail [sic] to qualify as warden." (Complaint at
4.) Plaintiff names Commissioner Coombes as a defendant,
alleging Coombes "fail [sic] to appoint a qualified warden
over security." (Amended Complaint at 5.) Plaintiff further
alleges that Dr. Manion refused to give him pain medication.
(Complaint at 5.) Plaintiff seeks to "prevent violent crimes"
and demands $6,000,000 in damages. (Amended Complaint
at 5.)

Defendants moved to dismiss the complaint, arguing that: (1)
the Eleventh Amendment bars suit against state defendants
for money damages; (2) the plaintiff's allegations fail to state
a claim for a constitutional violation; (3) the defendants are
qualifiedly immune from damages; and (4) plaintiff must
exhaust his administrative remedies before bringing this suit.

DISCUSSION

I find that plaintiff's complaint runs afoul of Rules 8 and
10 of the Federal Rules of Civil Procedure and dismiss the
complaint without prejudice and with leave to amend. Federal
Rule 8 requires that a complaint contain "a short and plain
statement of the claim showing that the pleader is entitled to
relief." Fed.R.Civ.P. 8(a)(2). The purpose of this Rule "is to
give fair notice of the claim being asserted so as to permit the

adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y.1995) (quoting *Brown v. Califano,* 75 F.R.D. 497, 498 (D.D.C.1977)); *see Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) (stating that the "principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial").

**\*2** Rule 10 of the Federal Rules of Civil Procedure requires, *inter alia,* that the allegations in a plaintiff's complaint be made in numbered paragraphs, each of which should recite, as far as practicable, only a single set of circumstances. *Moore's Federal Practice,* Vol. 2A, ¶ 10.03 (1996). Rule 10 also requires that each claim upon which plaintiff seeks relief be founded upon a separate transaction or occurrence. *Id.*[2] The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading." *Sandler v. Capanna,* 92 Civ. 4838, 1992 WL 392597, \*3 (E.D.Pa. Dec.17, 1992) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1323 at 735 (1990)).

[2]      Rule 10 states:

(b) Paragraphs; Separate Statements. All averments of claim or defense shall be made in numbered paragraphs, the contents of each of which shall be limited as far as practicable to a statement of a single set of circumstances; and a paragraph may be referred to by number in all succeeding pleadings. Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth.

A complaint that fails to comply with these pleading rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of" a plaintiff's claims. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996). It may therefore be dismissed by the court. *Id.; see also Salahuddin v. Cuomo,* 861 F.2d at 42 ("When a complaint does not comply with the requirement that it be short and plain, the court has the power to, on its own initiative, ... dismiss the complaint"). Dismissal, however, is "usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible

that its true substance, if any, is well disguised." *Id.* In those cases in which the court dismisses a *pro se* complaint for failure to comply with Rule 8, it should give the plaintiff leave to amend when the complaint states a claim that is on its face nonfrivolous. *Simmons v. Abruzzo,* 49 F.3d 83, 87 (2d Cir.1995).

In determining whether a nonfrivolous claim is stated, the complaint's allegations are taken as true, and the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v.. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint of a *pro se* litigant is to be liberally construed in his favor when determining whether he has stated a meritorious claim. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Even if it is difficult to determine the actual substance of the plaintiff's complaint, outright dismissal without leave to amend the complaint is generally disfavored as an abuse of discretion. *See Salahuddin,* 861 F.2d at 42–42; *see also Doe v. City of New York,* No. 97 Civ. 420, 1997 WL 124214, at \*2 (E.D.N.Y. Mar.12, 1997).

Here, plaintiff's *pro se* complaint fails to satisfy the requirements of Federal Rules 8 and 10. The complaint is often illegible and largely incomprehensible, scattering what appear to be allegations specific to plaintiff within a forest of headnotes copied from prior opinions. Defendants have answered with a boilerplate brief, which is perhaps all a defendant can do when faced with such a complaint. The Court is left with an insurmountable burden in attempting to make a reasoned ruling on such muddled pleadings.

**\*3** Although plaintiff's complaint is substantially incomprehensible, it appears to plead at least some claims that cannot be termed frivolous on their face. For example, plaintiff clearly alleges that inmates assaulted him and that Dr. Manion refused to provide him medical attention. He also appears to assert that Sergeant Ambrosino failed to protect him from the attack or take steps to prevent future attacks. (Plaintiff's Reply at 5). It is well established that an inmate's constitutional rights are violated when prison officials act with deliberate indifference to his safety or with intent to cause him harm. *Hendricks v. Coughlin,* 942 F.2d 109 (2d Cir.1991). It is similarly well established that an inmate's constitutional rights are violated when a prison doctor denies his request for medical care with deliberate indifference to the inmate's serious medical needs. *Estelle v. Gamble,* 429

U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Hathaway v. Coughlin,* 37 F.3d 63 (2d Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). Although plaintiff provides few facts to support his allegations, I disagree with defendants' assertion that outright dismissal is appropriate because it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Defendant's Memorandum at 5 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Because plaintiff's complaint does not comply with Rules 8 and 10, it is hereby dismissed without prejudice, and plaintiff is granted leave to replead within thirty (30) days of the date of the entry of this Order. In drafting his second amended complaint, plaintiff is directed to number each paragraph and order the paragraphs chronologically, so that each incident in which he alleges a constitutional violation is described in the order that it occurred. Plaintiff is also directed to specifically describe the actions of each defendant that caused plaintiff harm, and to do so in separate paragraphs for each defendant. Plaintiff's complaint shall contain the facts specific to the incidents plaintiff alleges occurred, and not any facts relating to any case that has been decided previously by a court of law. Plaintiff's complaint shall also contain a clear statement of the relief he seeks in addition to monetary damages.

CONCLUSION

For the reasons set forth above, plaintiff's complaint is dismissed without prejudice, and plaintiff is granted leave to replead within thirty (30) days of the date of the entry of this Order.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 1998 WL 832708

---

End of Document

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

Myers v. Wollowitz, Not Reported in F.Supp. (1995)

1995 WL 236245

1995 WL 236245
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James N. MYERS, Jr., Plaintiff,

v.

Heather WOLLOWITZ, Attorney, Defendant.

No. 95–CV–0272 (TJM) (RWS).
|
April 10, 1995.

**Attorneys and Law Firms**

James N. Myers, Jr., Troy, NY, pro se.

*DECISION AND ORDER*

McAVOY, Chief Judge.

*I. Background*

**\*1** Presently before this Court is the above-captioned plaintiff's application to proceed in forma pauperis and civil rights complaint. Plaintiff has not paid the partial filing fee required to maintain this action.

For the reasons stated below, plaintiff's complaint is dismissed pursuant to 28 U.S.C. § 1915(d) and Local Rule 5.4(a) of the General Rules of this Court as without arguable basis in law.

In his *pro se* complaint, plaintiff seems to claim that plaintiff was represented by defendant Wollowitz, a public defender for the County of Rensselaer, in a County Court proceeding. Plaintiff alleges that after a criminal proceeding in that Court, plaintiff was "sentenced to a illegal sentence." *Id.* at 2. Plaintiff contends that due to the ineffective assistance of his counsel, defendant Wollowitz, his constitutional rights were violated. For a more complete statement of plaintiff's claims, reference is made to the entire complaint filed herein.

*II. Discussion*

Consideration of whether a *pro se* plaintiff should be permitted to proceed in forma pauperis is a two-step process. First, the court must determine whether the plaintiff's economic status warrants waiver of fees and costs under 28 U.S.C. § 1915(a). If the plaintiff qualifies by economic status, the court must then consider whether the cause of action

stated in the complaint is frivolous or malicious. *Moreman v. Douglas,* 848 F.Supp. 332, 333 (N.D.N.Y.1994) (Scullin, J.); *Potnick v. Eastern State Hosp.,* 701 F.2d 243, 244 (2d Cir.1983) (per curiam).

In the present case, upon review of the plaintiff's inmate account statements, the Court has determined that plaintiff's financial status qualifies him to file or "commence" this action in forma pauperis. 28 U.S.C. § 1915(a). Turning to the second inquiry, a court may "dismiss the proceeding under 28 U.S.C. § 1915(d) if the court thereafter determines that ... the action is frivolous or malicious." *Moreman,* 848 F.Supp. at 333 (citation omitted).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Although the court has the duty to show liberality towards *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering sua sponte dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), there is a responsibility on the court to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis. Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(d) is appropriate to prevent abuses of the process of the court, *Harkins v. Eldredge,* 505 F.2d 802, 804 (8th Cir.1974), as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327. *See generally Moreman,* 848 F.Supp. at 334.

**\*2** 42 U.S.C. § 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights. *See, e.g., Von Ritter v. Heald,* 91–CV–612, 1994 WL 688306, *3, 1994 U.S.Dist. LEXIS 17698, *8–9 (N.D.N.Y. Nov. 14, 1994)* (McAvoy, C.J.). A party may not be held liable under this section unless it can be established that the defendant has acted under the color of state law. *See, e.g., Rounseville v. Zahl,* 13 F.3rd 625, 628 (2d Cir.1994) (noting state action requirement under § 1983); *Wise v. Battistoni,* 92–Civ–4288, 1992 WL 380914, *1, 1992 U.S.Dist. LEXIS 18864, *2–3 (S.D.N.Y. Dec. 10, 1992)* (same) (citations omitted).

In the present case, the sole defendant named by plaintiff is the Rensselaer County public defender who apparently represented plaintiff in the criminal proceeding discussed in

Myers v. Wollowitz, Not Reported in F.Supp. (1995)

Case 5:20-cv-00937-GTS-TWD    Document 8    Filed 10/19/20    Page 24 of 75

1995 WL 236245

his complaint. *See* Complaint at 2. However, "[i]t is well settled that an attorney's representation of a party to a court proceeding does not satisfy the Section 1983 requirement that the defendant is alleged to have acted under color of state law...." *Wise,* 1992 WL 380914 at *1, 1992 U.S.Dist. LEXIS 18864 at *2–3; *see also D'Ottavio v. Depetris,* 91–Civ–6133, 1991 WL 206278, *1, 1991 U.S.Dist. LEXIS 13526, *1–2 (S.D.N.Y. Sept. 26, 1991).

Since the plaintiff has not alleged any state action with respect to the Section 1983 claim presently before the Court, plaintiff's complaint, as presented to this Court, cannot be supported by any arguable basis in law and must therefore be dismissed pursuant to 28 U.S.C. § 1915(d). *Neitzke,* 490 U.S. at 328.

Accordingly, it is hereby

ORDERED, that leave to proceed or prosecute this action in forma pauperis is denied, and it is further

ORDERED, that this action is dismissed pursuant to 28 U.S.C. § 1915(d) and Local Rule 5.4(a) of the General Rules of this Court as lacking any arguable basis in law, and it is further

ORDERED, that the Clerk serve a copy of this Order on the plaintiff by regular mail.

I further certify that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a).

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1995 WL 236245

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 7429454
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Christopher BROWN, Plaintiff,
v.
David A. PATERSON, The Governor of
the State of New York, et al., Defendants.

No. 10 Civ. 5833(PAC)(HBP).
|
Dec. 27, 2011.

*REPORT AND RECOMMENDATION*

PITMAN, United States Magistrate Judge.

**\*1**  TO THE HONORABLE PAUL A. CROTTY, United
States District Judge,

I. *Introduction*

In a complaint filed on August 3, 2010, plaintiff Christopher
Brown, *pro se,* brings this action for damages pursuant
to 42 U.S .C. § 1983 against seventeen defendants. Plaintiff
claims, *inter alia,* that he was subjected to an unreasonable
search and seizure, falsely arrested and imprisoned, and
maliciously prosecuted, all in connection with his arrest on
drug charges in July of 2009. Eight defendants have moved
to dismiss the complaint for failure to state a claim, pursuant
to Rule 12(b)(6) of the Federal Rules of Civil Procedure.
Specifically, (1) Orange County District Attorney, Francis
D. Phillips, Assistant District Attorney Jessica M. Dovico,
and Assistant District Attorney Steven Grasso (the "District
Attorney Defendants") move to dismiss by Docket Item
22, (2) Orange County Executive, Edward A. Diana move
to dismiss, also by Docket Item 22, and (3) The Legal
Aid Society of Orange County, Inc., Steven A. Baldino,
Gary Abramson, and Dennis McCormick [1] (the "Legal Aid
Defendants") move to dismiss by Docket Items 38, 42, 46,
and 50.

1    Baldino, Abramson, and McCormick are attorneys
     employed by The Legal Aid Society of Orange
     County, Inc.

For the reasons set forth below, I respectfully recommend that
all the forgoing motions to dismiss be granted in their entirety.

II. *Facts*

A. *Plaintiff's Allegations* [2]

2
         The facts set forth herein are drawn from plaintiff's
         complaint and the attached exhibits (Docket Item
         2).

Following an earlier conviction, plaintiff was released from
prison and into the custody of the New York State Division
of Parole on May 20, 2009 (Complaint, dated Apr. 24, 2010
(Docket Item 2) at 3). On May 21, 2009, plaintiff took up
residence in Room 15 of the Globe Motel, in Middletown,
New York (Complaint at 3). In early July, 2009, plaintiff's
girlfriend, Carrie Acton, moved in with plaintiff (Complaint
at 3).

Plaintiff alleges that he "suffered a false arrest upon the
'rubber stamp' of an illegal search warrant" when, on July
22, 2009, Middletown City Judge Steven Brockett [3] signed
a no-knock search warrant, based on perjured testimony,
authorizing the search of plaintiff's motel room (Complaint
at 1, 3, 8 & Ex. B). The search warrant described a
person "approximately 5′6″ in height [and] 145–150 lbs [in
weight] .... 25–26 years of age [with] light complexion [and]
a mustache with wavy dark hair" known as "Cyrus," as the
"target" of the warrant and authorized the seizure of
controlled substances and drug paraphernalia among other
things (Complaint at Ex. B). Middletown City Police officers
executed the warrant at 9:05 p.m., even though the officers
allegedly "[knew] to a moral certainty that the Affidavit in
Support if [the] search warrant was inadequate" (Complaint
at 8). The police officers seized several loose pieces of crack
cocaine, one bag containing sixteen small zip-lock bags of
crack cocaine, five small zip-lock bags of crack cocaine,
crack pipes, a digital scale, packaging materials, four razor
blades, a "wire push rod with chore boy," a letter and a
card with the name "Cyrys" written on each, some papers, a
container, and a jacket (Complaint at Ex. B). The plaintiff was
arrested and charged with one count of criminal possession
of a controlled substance in the third degree, one count of
criminal possession of a controlled substance in the fifth
degree, one count of criminal possession of a controlled
substance in the seventh degree, and one count of criminally
using drug paraphernalia in the second degree, in violation
of New York Penal Law Sections 220.16, 220.06, 220.03,
220.50, respectively (Complaint at 3 & Ex. C).

3      Judge Brockett is also a defendant in this action.

**\*2**  Plaintiff was arraigned before Judge Brockett on July 23, 2009 and was released on his own recognizance, pursuant to New York Criminal Procedure Law § 180.80,[4] on July 28, 2001. The police subsequently informed plaintiff's parole officer of the arrest and the charges against plaintiff (Complaint at 4 & Ex. D). Although plaintiff maintained that he was not the intended target of the search warrant, he did acknowledge, to his parole officer, "his complicity in the crime adding that he had relapsed. He stated that this was not an excuse, but he and [his] girlfriend were both using and this is why the drugs/cocaine were in the room" (Complaint at 4 & Ex. E).

4      Section 180.80 provides that a "defendant against whom a criminal complaint has been filed" who is held for more than one-hundred-forty-four hours without a "disposition" of the complaint or the "commencement of a hearing thereon" must be released on his own recognizance.

On August 18, 2009, plaintiff was arrested for violating the terms of his parole and was subsequently charged with resisting arrest in violation of New York Penal Law § 205.30 (Complaint at 4 & Ex. F).

Plaintiff further alleges that his defense attorney, Dennis McCormick, a staff attorney with the Legal Aid Society "did nothin[g] in plaintiff[']s defense" as "the people set out to 'Maliciously' prosecute [him] forcing Plaintiff to pro-se [*sic* ] without knowledge of the law" (Complaint at 8). On November 2, 2009, plaintiff wrote to McCormick, requesting a meeting because McCormick had not contacted plaintiff and had not been to see him in jail as he had promised (Complaint at 4 & Ex. H). Plaintiff also wrote to Judge Brockett on November 2, 2009, expressing his desire to testify at a preliminary hearing scheduled for December 21, 2009 (Complaint at 4 & Ex. F). In his letter to Judge Brockett, plaintiff argued that (1) "the [search] warrant [was] defective in description of Plaintiff" because the description of the target did not properly describe him; (2) the police selectively charged him with possessing a scale, and not other drug paraphernalia that were seized, in order to bolster their untenable position that plaintiff had the intent to distribute narcotics; and (3) the police informant who had provided evidence against the plaintiff "gave this information out of revenge, spitefulness and simply because [plaintiff] would not

get him high" (Complaint at 4–5 & Ex. F at 2–3).[5] Plaintiff also offered to plead guilty to the charge of resisting arrest and to continue attending a "long term out patient/in patient program" in exchange for a dismissal of the drug charges and a sentence of time served for the offense of resisting arrest (Complaint at Ex. F).

5      In his letter to Judge Brockett, plaintiff also admitted that he "did relapse [and was] smoking crack cocaine."

On November 5, 2009, McCormick visited plaintiff at the Orange County Jail and orally delivered a plea offer that the prosecution was extending; plaintiff rejected that offer and asked McCormick to investigate the difference between the field test reports and the incident report concerning the aggregate weight of the narcotics recovered from plaintiff's motel room (Complaint at 5). On November 6, 2009, the Legal Aid Society forwarded plaintiff a plea-offer letter from Assistant District Attorney Jessica M. Dovico (Complaint at 5 & Ex. J). Dovico offered a sentence of one and one-half years incarceration, two years of post-release supervision, and a dismissal of all other charges in return for a guilty plea to a charge of attempted criminal possession of a controlled substance in the fifth degree (Complaint at 5 & Ex. J). In response, plaintiff sent his own "plea proposal" letter to Dovico on November 10, 2009, offering to plead guilty to some unspecified charge in exchange for plaintiff's placement into an "alternative to incarceration judicial diversion program" for one and one-half years and a dismissal of all other charges (Complaint at 5 & Ex. K). Also in that letter, plaintiff complained about the fact that his attorney had "deliberately" held the prosecution's offer for nineteen days before forwarding it to him, and argued that the "the people" were motivated by "bad faith, ... solely motivated to get a conviction" and that the "court" should not allow "the people to take such a 'prejudice' approach when the people are in violation of [New York Criminal Procedure Law § 715.50[6] ]" (Complaint at 5 & Ex. K).

6      New York Criminal Procedure Law Section 715.50 provides that within a certain amount of time following a felony drug arrest, an analysis of the drugs should be performed and the results should be forwarded to the district attorney's office but "[t]he failure to have an analysis made or to forward a copy thereof within the time specified ... shall not

be deemed or construed to bar ... the prosecution of a case involving such drugs."

**\*3** On December 3, 2009, plaintiff wrote to the District Attorney's Office again informing it that he intended to testify, and to call witnesses, at the grand jury proceeding scheduled for December 21, 2009, and requesting a copy of the affidavit that was submitted to secure the search warrant that led to his arrest (Complaint at 6 & Ex. O). On December 15, 2009, plaintiff filed a "Notice of Order of Termination of Prosecution Pursuant to CPL 180.85(1)" requesting that the charges against him be dismissed (Complaint at 6 & Ex. Q); that motion was denied on December 21, 2009 (Complaint at 6). On January 8, 2010, plaintiff was informed that the drug charges had been reduced and was provided with a copy of a controlled substance report (Complaint at 6 & Ex. T). On January 27, 2010, and again on February 8, 2010, plaintiff submitted a "Motion to Dismiss" pursuant to Criminal Procedure Law Sections 170.30(1)(d), (e), (f), (g) and 30.30(1)(a) asserting that the prosecution failed in its "statutory obligation to be ready for trial within six months [after] the filing of the felony complaint" (Complaint at 6–7 & Ex. U).

On February 9, 2010, plaintiff pleaded guilty to the resisting arrest charge and agreed to a sentence of nine months on that charge in exchange for a dismissal of the drug charges (Complaint at 7 & Ex. V, Y).

On February 9 and 23, 2010, plaintiff submitted Freedom of Information Law requests to the City Court of Middletown and the Orange County District Attorney's Office, seeking the affidavit submitted in support of the search warrant executed on his motel room (Complaint at 7 & Ex. Z); those requests were denied on March 2 and 3, 2010, on the grounds that the affidavit was a judicial record and that the warrant application "was created for law enforcement purposes, references confidential sources" and was exempt from FOIL disclosure because the witness did not testify at trial (Complaint at 7–8 & Ex. B.2, C.2).

B. *Procedural History*

The motions that give rise to this Report and Recommendation were filed on May 2 and 24, 2011. When plaintiff did not file a timely response to the motions, I issued an Order, dated November 28, 2011, directing plaintiff to serve and file any opposition he may have, no later than December 19, 2011 (Docket Item 61). Despite the November 28, 2011 Order, plaintiff has still not responded

to any of the pending motions. Notwithstanding plaintiff's default in responding to the motions, I shall, address the merits of the pending motions. *See McCall v. Pataki,* 232 F.3d 321, 322–23 (2d Cir.2000); *Haas v. Commerce Bank,* 497 F.Supp.2d 563, 564 (S.D.N.Y.2007) (Holwell, D.J.) ("[F]ailure to oppose a 12(b)(6) motion cannot itself justify dismissal of a complaint.").

III. *Analysis*

A. *Standards Applicable to a Motion to Dismiss Pursuant to Rule 12(b)(6)*

The standards applicable to a motion to dismiss pursuant to Rule 12(b)(6) are well-settled and require only brief review.

**\*4** When deciding a motion to dismiss under Rule 12(b) (6), [the court] must accept as true all well-pleaded factual allegations of the complaint and draw all inferences in favor of the pleader. *See City of Los Angeles v. Preferred Communications, Inc.,* 476 U.S. 488, 493, 106 S.Ct. 2034, 90 L.Ed.2d 480 (1986); *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977) (referring to "well-pleaded allegations"); *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). " '[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.' " *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991)). The Court also may consider "matters of which judicial notice may be taken." *Leonard T. v. Israel Discount Bank of New York,* 199 F.3d 99, 107 (2d Cir.1999) (citing *Allen v. WestPoint–Pepperill, Inc.,* 945 F.2d 40, 44 (2d Cir.1991)). In order to avoid dismissal, a plaintiff must do more than plead mere "[c]onclusory allegations or legal conclusions masquerading as factual conclusions." *Gebhardt v. Allspect, Inc.,* 96 F.Supp.2d 331, 333 (S.D.N.Y.2000) (quoting 2 James Wm. Moore, Moore's Federal Practice ¶ 12.34[a] [b] (3d ed.1997)). *Hoffenberg v. Bodell,* 01 Civ. 9729(LAP), 2002 WL 31163871 at \*3 (S.D.N.Y. Sept. 30, 2002) (Preska, D.J.); *see also In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007); *Johnson & Johnson v. Guidant Corp.,* 525 F.Supp.2d 336, 345–46 (S.D.N.Y.2007) (Lynch, then D.J., now Cir. J.).

The Supreme Court has clarified the proper mode of inquiry for evaluating a motion to dismiss pursuant to Rule 12(b)(6), which uses as its starting point the principle that "[a] pleading

that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

[I]n *Bell Atl[antic] Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court disavowed the well-known statement in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. at 562. Instead, to survive a motion to dismiss under *Twombly,* a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

*Talley v. Brentwood Union Free Sch. Dist.,* No. 08–790(DRH), 2009 WL 1797627 at *4 (E.D.N.Y. June 24, 2009).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*5 *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations, internal quotations and alterations omitted).

In evaluating a motion under Rule 12(b)(6), the court must determine whether the plaintiff has alleged any facially plausible claims. *See Smith v. NYCHA,* 410 F. App'x 404, 405–06 (2d Cir.2011). A claim is plausible when its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citations omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal, supra,* 129 S.Ct. at 1949 (internal quotations omitted). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Ashcroft v. Icrbal, supra,* 129 S.Ct. at 1950, *cruoting* Fed.R.Civ.P. 8(a) (2).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Icrbal, supra,* 129 S.Ct. at 1949; *see also Reed Const. Data Inc. v. McGraw–Hill Cos., Inc.,* 745 F.Supp.2d 343, 349 (S.D.N.Y.2010) (Sweet, D.J.). As a result, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal, supra,* 129 S.Ct. at 1950.

Where, as here, a plaintiff proceeds *pro se,* the complaint must be liberally construed to raise the strongest claims that the allegations suggest. *Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir.2006); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994). This rule applies "with particular stringency to [*pro se* ] complaints of civil rights violations." *Phillip v. Univ. of Rochester,* 316 F.3d 291, 293–94 (2d Cir.2003). Nevertheless, the "Court [ ] is not obliged to reconcile plaintiff's own pleadings that are contradicted by other matter asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint." *Fisk v. Letterman,* 401 F.Supp.2d 362, 368 (S.D.N.Y.2005) (Marrero, D.J.); *see also Matusovsky v. Merrill Lynch,* 186 F.Supp.2d 397, 399–400 (S.D.N.Y.2002) (Marrero, D.J.) (noting that in analyzing a motion to dismiss pursuant to Rule 12(b)(6) a court may consider "documents attached to the complaint as exhibits [and] if a plaintiff's allegations are contradicted by such ... document[s], those allegations are insufficient to defeat a motion to dismiss").

### B. *Plaintiffs' Federal Claims*

*6 Plaintiff states that "[t]he matters in controversy arise[ ] under 42 U.S.C. section 1983" (Complaint at 1).

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ....

In order to state a claim under Section 1983, "a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Dwares v. City of N.Y.,* 985 F.2d 94, 98 (2d Cir.1993); *accord Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir.1999).

Plaintiff claims that, as a result of the defendants' conduct, he was (a) subjected to an unreasonable search and seizure, (b) falsely arrested, (c) falsely imprisoned, (d) improperly charged by the police, (e) maliciously prosecuted, (f) unfairly treated by the District Attorney's Office during plea negotiations, (g) not timely provided with a controlled substance report and not provided with a copy of the search warrant application, and (h) poorly represented by his Legal Aid attorney which forced him to represent himself.

The District Attorney Defendants and the Orange County Executive, Edward Diana, argue that plaintiff's complaint should be dismissed because plaintiff has (a) failed to meet the pleading requirements under Rule 8 of the Federal Rules of Civil Procedure, (b) failed to establish a claim under 42 U.S.C. § 1983, (c) failed to state a claim for malicious prosecution, (d) failed to allege sufficiently a claim for failure to train, and (e) the District Attorney Defendants are immune from suit by virtue of the Eleventh Amendment and absolute prosecutorial immunity.

The Legal Aid Defendants argue that (a) this Court lacks subject matter jurisdiction under the *Rooker–Feldman* doctrine, (b) *Younger* abstention bars plaintiff's claims, (c) the Legal Aid Defendants did not act under color of state law, (d) the plaintiff has failed to allege a state law legal malpractice

claims and, in any event, this Court should exercise its discretion and dismiss that claim.

### 1. *District Attorney Defendants*

The complaint fails to state a claim against all the District Attorney Defendants.

The complaint itself does not specify whether plaintiff is asserting his claims against the District Attorney Defendants in the their individual or personal capacities. Construing the complain leniently, I shall assume plaintiff intends to assert claims against the District Attorney Defendants in both capacities.

To the extent plaintiff asserts claims against the District Attorney of Orange County and his assistants in their official capacities, all are immune from suit pursuant to the Eleventh Amendment because a claim against a state official in his official capacity is deemed to be a claim against a state. *Escobar v. City of N.Y.,* 05–cv–3030 (ENV/CLP), 2007 WL 1827414 at *3 (E.D.N.Y. Jun. 25, 3007) ("When a New York State county district attorney is sued in his official capacity for quasijudicial acts ... he is 'properly deemed to be an official of New York State and [is] entitled to invoke Eleventh Amendment immunity.' ") *quoting Ying Jing Gan v. City of N.Y.,* 996 F.2d 522, 536 (2d Cir.1993), *and Peterson v. Tomaselli,* 469 F.Supp.2d 146, 157 (S.D.N.Y.2007) (Holwell, D.J.); *accord Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir.1997) (Eleventh Amendment immunity extends to assistant district attorneys sued in their official capacities); *Watanmaker v. Clark,* 09–CV–3877 (JFB) (ARL), 2010 WL 3516344 at *7 (E.D.N.Y. Aug. 31, 2010); *Washington v. Kelly,* 09 Civ. 4638(SAS), 2004 WL 830084 at *4 (S.D.N.Y. Apr. 13, 2004) (Scheindlin, D.J.).

**\*7** To the extent the complaint can be construed as asserting a claim against the District Attorney Defendants in their individual capacities, they are shielded from liability by absolute prosecutorial immunity. " ' 'It is now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursing a criminal prosecution is immune from civil suit for damages under § 1983.' " *Crews v. County of Nassau,* 06–CV–2610 (JFB)(WDW), 2007 WL 4591325 at *13 (E.D.N.Y. Dec. 27, 2007), *quoting Shmueli v. City of N.Y.,* 424 F.3d 231, 236 (2d Cir.2005). "Prosecutorial immunity from § 1983 liability is broadly defined, covering 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate.' " *Hill v. City of N.Y.,* 45 F.3d 653, 661 (2d Cir.1995), *quoting Dory v. Ryan,*

25 F.3d 81, 83 (2d Cir.1994). *See generally Butz v. Economou,* 438 U.S. 478, 509–10, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Imbler v. Pachtman,* 424 U.S. 409, 427–28, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

Plaintiff's only substantive allegations against the District Attorney Defendants are that "the people subject themselves to the 'Bad Faith' approach [apparently, in connection with plea bargaining] solely motivated to get a conviction"; "the people continue to take the 'prejudice' approach for conviction based upon a presumptive field test"; and "the County is held liable as a result of [the Judge] acting in concert with the Prosecution Team ... for 'Deliberate Indifference' on the grounds that the Defendants are so un-supervised, un-trained or lack commonsense [*sic* ] to interpret AGUILAR PRONGS" (Complaint at 5, 6, 9). The complaint does not attribute any of these actions to any specific District Attorney Defendant.

Under the most liberal reading possible, plaintiff's allegations can be construed as claims against the District Attorney Defendants for their acts committed in connection with the decision to prosecute plaintiff or in plea bargaining. However, these actions fall squarely within the scope of absolute prosecutorial immunity. *See Imbler v. Pachtman, supra,* 424 U.S. at 431 (State prosecutors are entitled to absolute immunity for that conduct "intimately associated with the judicial phase of the criminal process."); *Flagler v. Trainor,* 663 F.3d 543, 2011 WL 5829660 at *2–*3 (2d Cir. Nov.21, 2011); *Hill v. City of N.Y., supra,* 45 F.3d at 661; *Sharp v. Morgenthau,* 08 Civ. 5919(PKC)(FM), 2010 WL 339767 at *3 (S.D.N.Y. Jan. 25, 2010) (Castel, D.J.) ("It is clear that Morgenthau and the ADA Defendants were functioning as prosecutors when they initiated the criminal case against plaintiff, and appeared in Criminal Court during the pendency of the case."), *citing Shmueli v. City of N.Y., supra,* 424 F.3d at 237; *see also Taylor v. Kavanagh,* 640 F.2d 450, 451–52 (2d Cir.1981) (prosecutorial function includes plea bargaining); *Miller v. County of Nassau, supra,* 467 F.Supp.2d at 316 (same); *Watanmaker v. Clark, supra,* 2010 WL 3516344 at *8 (even intentional misconduct is not actionable if undertaken "as an advocate in the prosecution against [a criminal defendant]").

**\*8** Thus, plaintiff's Section 1983 claims against all the District Attorney Defendants should be dismissed. [7]

[7]   The District Attorney Defendants also argue that the complaint fails to state a claim against them

because the complaint does not allege the personal involvement of each of the District Attorney Defendants in the alleged violations of plaintiff's federally protected rights. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994), *quoting Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991). Although this argument also appears to be meritorious, I do not reach it because the Eleventh Amendment and the doctrine of absolute prosecutorial immunity by themselves require the dismissal of the complaint as to the District Attorney Defendants.

### 2. *County Executive Edward Diana*

Although the summons names Orange County Executive, Edward Diana, "individually, and in [his] official capacit[y]," the complaint does not specify in what capacity Diana is being sued and, apart from naming him in the caption, contains no references to him whatsoever. Even if I assume that plaintiff intends to sue Diana in both capacities, the complaint against him must be dismissed.

To the extent the complaint can be construed as asserting claims against Diana in his official capacity, it " 'represent[s] only another way of pleading an action against an entity of which [Diana] is an agent.' " *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), *quoting Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The absence of any allegations against Diana, precludes the possibility that Orange County could be liable for the acts of Diana. In theory, Orange County could be liable under Section 1983 for violations of plaintiff's federally protected rights committed pursuant to an official policy, custom or practice, *Mayo v. County of Albany,* 357 F. App'x 339, 341 (2d Cir.2009), *citing Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and *Ciraolo v. City of N.Y.,* 216 F.3d 236, 242 (2d Cir.2000); *accord Coon v. Town of Springfield,* 404 F.3d 683, 686 (2d Cir.2005). However, in the absence of an allegation that Diana violated plaintiff's federal rights, it's unnecessary to inquire whether Diana acted pursuant to a county policy, custom or practice because a necessary predicate for county liability—an alleged violation of plaintiff's federal rights by a county agent—is missing.

Even if I construe the complaint as an inartful attempt to state a claim directly against Orange County, without regard to Diana's conduct, and that Diana was intended only to be a nominal defendant, the complaint still fails because it does not allege any injury to plaintiff resulting from a policy, custom or practice of Orange County. To the contrary, the complaint does not allege any injury to plaintiff from any conduct attributable to Orange County. Although the complaint contains numerous references to the "people," (Complaint at 5, 6, 9), these references appear to relate exclusively to conduct by the District Attorney and his staff concerning the prosecution of plaintiff. In New York, with respect to non-administrative, prosecutorial conduct, the District Attorney and his staff represent the state, not the county or municipality to which they are assigned. *Reid v. Schuman,* 83 F. App'x 376, 377 (2d Cir.2003), *citing Ying Jing Gan v. City of N.Y., supra,* 996 F.2d at 536; *accord Amaker v. N.Y.S. Dep't of Corr. Servs.,* 435 F. App'x 52, 54 (2d Cir.2011); *Woodward v. Office of Dist. Att'y,* 689 F.Supp.2d 655, 659 (S.D.N.Y.2010) (Marrero, D.J.). Thus, the references in the complaint to the "people" cannot be deemed to refer to conduct attributable to Orange County.

**\*9** The only other reference in the complaint to conduct arguably attributable to Orange County is set forth in the following sentences:

As the people set out to "Maliciously" prosecute Plaintiff, attorney Dennis [M]cCormick did nothin[g] in Plaintiff[']s defense, forcing Plaintiff to pro-se [*sic*] without knowledge of the law, thus, Orange County policy makers plus delegated subordinates continuely [*sic*] act in concert to falsely imprison and deprive his USCA AMENDS [*sic*] contrary to clearly established Supreme Court President [*sic*], therefore, the County is held liable as a result of Judge Steven Brockett acting in concert with the Prosecution team as well as Agent of the Government for "Deliberate Indifference" on the grounds that the Defendants are so un-supervised, untrained or lack commonsen[s]e to interp[r]et AGUILAR PRONGS, see *Aguilar [v.] Texas* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723.

These acts repr[e]sent a pattern of events demonstrating intentional imprisonment and deprivation of USCA rights and has caused Plaintiff los[s] of family ties, mental and emotional anguish as a result

(Complaint at 8).

The foregoing sentences offer no facts to establish the existence a county custom, policy or practice. Even when read liberally, the forgoing allegations do not identify an Orange County policy or custom and do not plead any facts linking that policy or custom to the alleged constitutional deprivations. *See Batista v. Rodriguez, supra,* 702 F.2d at 397 ("The mere invocation of the pattern or plan [will] not suffice without this causal link." (internal quotations omitted)). In addition, conclusory allegations of misconduct are insufficient to support a claim of municipal policy or custom. *See, e.g., Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987) ("As we have repeatedly held, complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning); *Plair v. City of N.Y.,* 789 F.Supp.2d 459, 469–70 (S.D.N.Y.2011) (Sweet, D.J.) (dismissing the plaintiff's claim because his reliance on conclusory allegations without factual support "render[ed] his *Monell* allegations insufficient under *Twombly* and *Iqbal"* ); *Covington v. City of N.Y.,* 916 F.Supp.2d 282 (S.D.N.Y.) (Scheindlin, D.J.) (adopting Report & Recommendation of Peck, M.J.), *citing DeDiego v. City of New Britain,* 93–CV– 0391, 1994 WL 70280 at *2 (D.Conn. Jan.31, 1994) ("[T]he simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury"). Plaintiff's statements, at best, communicate his frustration with the criminal justice system and convey his speculations and conclusions as to what he perceived went wrong with his criminal prosecution. That is insufficient to state a claim against Orange County.

**\*10** To the extent the complaint can be read to assert a theory of liability against the County based on conduct by a policy maker—a feat which requires an extremely liberal interpretation—the complaint does not allege conduct by individuals with the responsibility of establishing final government policy with respect to the activity alleged. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 482–83, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ("The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.")

Even if I were to construe plaintiff's pleadings as attempting to state a claim against Orange County for failing to train

Case 5:20-cv-00937-GTS-TWD    Document 8    Filed 10/19/20    Page 32 of 75
Brown v. Paterson, Not Reported in F.Supp.2d (2011)
2011 WL 7429454

Judge Brockett regarding the standards for issuing search warrants, the claim would still fail as a matter of law. Orange County has no duty to train Judge Brockett. Orange County is not responsible for, and takes no part in, the training and supervision of municipal and city judges which sit within its boundaries. Municipal court judges' training and the rules they must follow are imposed by the state legislature and the chief administrator of New York courts. *See* N.Y. Const., art. VI, § 17; *Berry v. Vill. of Millbrook,* —— F.Supp.2d ——, 09 Civ. 4234(KMK), 2011 WL 4445636 at *6–*7 (S.D.N.Y. Sept. 26, 2011) (Karas, D.J.). Therefore, Orange County cannot be held liable for a failure to train Judge Brockett. *See also,* Uniform City Ct. Act § 102, *available at* N.Y. Jud. Ct. Acts, pt. 3 (McKinney) (City Courts are part of the Unified Court System); *Berry v. Vill. of Millbrook, supra,* 2011 WL 4445636 at *7 ("[W]hen a municipal judge enforced state law he does not act as a municipal official or lawmaker, but rather serves only to effectuate state policies." (citations omitted)), *quoting Estes–El v. Town of Indian Lake,* 954 F.Supp. 527, 536 (N.D.N.Y.1997). [8]

[8]    In addition, despite plaintiff's assertion to the contrary (Complaint at 8), the County cannot be held liable for Judge Brockett's actions for the additional reason that a municipal or city judge is not a county policymaker. *Berry v. Vill. of Millbrook,* —— F.Supp.2d ——, 09 Civ. 4234(KMK), 2011 WL 4445636 at *6 (S.D.N.Y. Sept. 26, 2011) (Karas, D.J.); *Rodriguez v. City of N.Y.,* 02 Civ. 8203(SAS), 2004 WL 444089 at *4 (S.D.N.Y. Mar. 10, 2004) (Scheindlin, D.J.).

To the extent the complaint purports to state a claim against Diana in his personal capacity, the absence of allegations against Diana in the body of the complaint is a fatal defect. "It is well-settled that 'where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.' " *Dove v. Fordham Univ.,* 56 F.Supp.2d 330, 335 (S.D.N.Y.1999) (Sweet, D.J.), *quoting Morabito v. Blum,* 528 F.Supp. 252, 262 (S.D.N.Y.1981) (Ward, D.J.); *Bernstein v. City of N.Y.,* 06 Civ. 895(RMB), 2007 WL 1573910 at *10 (S.D.N.Y. May 24, 2007) (Berman, D.J.); *Holloway v. Carey,* 482 F.Supp. 551, 553 (S.D.N.Y.1979) (Weinfeld, D.J.).

Plaintiff also fails to state a claim against Diana in his personal capacity because he does not allege facts which, if true, would establish Diana's personal involvement in any

constitutional violation. *Wright v. Smith, supra,* 21 F.3d at 501. "[A]n allegation that [Diana] is in a high position of authority ... is, in and of itself, insufficient to impose liability absent [an allegation] of personal involvement in the constitutional deprivation." *Wallace v. Conroy,* 945 F.Supp. 628, 637–38 (S.D.N.Y.1996) (Leisure, D.J.) (adopting Report & Recommendation of Katz, M.J.).

**\*11**  Accordingly, plaintiff's claim against Diana, in his official and individual capacity, should be dismissed

### 3. *Legal Aid Defendants*

The Legal Aid Defendants move to dismiss the claims against them, arguing they are not state actors.

To be actionable under Section 1983, "the challenged conduct [must have been] attributable at least in part to a person acting under color of state law ...." *Dwares v. City of N.Y., supra,* 985 F.2d at 98; *see also Velez v. Levy,* 401 F.3d 75, 84 (2d Cir.2005); *Feingold v. New York,* 366 F.3d 138, 159 (2d Cir.2004); *Varela v. Demmon,* 491 F.Supp.2d 442, 450 (S.D.N.Y.2007) (Stein, D.J., adopting Report & Recommendation of Gorenstein, M.J.). "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (internal quotation marks omitted).

Court-appointed attorneys, including attorneys associated with the Legal Aid Society, do not act under color of state law when representing their clients. *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Rodriguez v. Weprin,* 116 F.3d 62, 65–66 (2d Cir.1997); *McNeill v. New York,* 06–CV–4843 (NGG), 2006 WL 3050867 at *4 (E.D.N.Y. Oct. 24, 2006); *Fisk v. Letterman, supra,* 401 F.Supp.2d at 378.

Here, plaintiff alleges that McCormick represented him in connection with two arrests. No other connection between the Legal Aid Defendants and the state is alleged. The array of authorities cited above demonstrates that plaintiff's allegations are insufficient to meet Section 1983's state action requirement.

Furthermore, plaintiff does not make any allegations against the Legal Aid Defendants Baldino and Abramson. Therefore, claims against these two defendants should be dismissed

2011 WL 7429454

as plaintiff has failed to state a claim against them, *Dove v. Fordham Univ., supra,* 56 F.Supp.2d at 335, and failed to allege their personal involvement in a constitutional deprivation. *Wright v. Smith, supra,* 21 F.3d at 501.

Accordingly, the claims against the Legal Aid Defendants should be dismissed. [9]

[9]    Although other arguments raised by the Legal Aid Defendants, in favor of dismissal, appear to have merit, I need not reach those arguments because dismissal is plainly appropriate for the reasons stated in the text.

D. *Claims Against Judge Brockett*

Although Judge Brockett has not moved to dismiss plaintiff's complaint, "this Court may, *sua sponte,* dismiss a complaint for lack of subject matter jurisdiction, based on a finding of judicial immunity." *Miller v. County of Nassau,* 467 F.Supp.2d 308, 312 (E.D.N.Y.2006), *citing Daniels v. Appellate Div. Of State Supreme Court,* 97 Civ. 5113(DC), 1997 WL 528060 at *1 (S.D.N.Y. Aug. 27, 1997) (Chin, then D.J., now Cir. J.); *Fisch v. Consulate Gen.,* 11 Civ. 4182(SAS), 2011 WL 3847398 at *1 (S.D.N.Y. Aug. 30, 2011) (Scheindlin, D.J.); *Blash v. Amsterdam,* 98 Civ. 7117(SAS), 1998 WL 760239 at *1 (S.D.N.Y. Oct. 30, 1998) (Scheindlin, D.J.).

"It is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities or within his or her jurisdiction." *Miller v. County of Nassau, supra,* 467 F.Supp.2d at 312, *citing Mireles v. Waco,* 502 U.S. 9, 9–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991), *and Maestri v. Jutkofsky,* 860 F.2d 50, 52–53 (2d Cir.1988).

**\*12**  The Supreme Court has emphasized that the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. *Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (citation omitted). Absolute immunity exists "however erroneous the act may have been, however injurious in its consequences it may have proved to the plaintiff." *Bradley v. Fisher,* 13 Wall. 335, 80 U.S. 335, 347, 20 L.Ed. 646 (1871). "The cloak of immunity is not pierced by allegations of bad faith or malice." *Tucker v. Outwater,* 118 F.3d 930, 932 (2d Cir.1997). Indeed, the doctrine of judicial immunity is so expansive that it is overcome only when (1) the action is nonjudicial, i.e., not taken in the

judge's judicial capacity; or (2) the action, although judicial in nature, is performed in the complete absence of any jurisdiction. *Mireles,* 502 U.S. at 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9.

*Miller v. County of Nassau, supra,* 467 F.Supp.2d at 312.

Here, plaintiff fails to allege any actions committed by Judge Brockett that were performed outside of the scope of his jurisdiction. The entirety of plaintiff's allegations against Judge Brockett relate to the Judge's role in authorizing the search of plaintiff's residence. Given the most liberal reading possible, plaintiff's claims against Judge Brockett are barred by absolute judicial immunity and the claims should be dismissed.

E. *Plaintiffs' State–Law Claims*

To the extent plaintiff alleges state law claims against the moving defendants, [10] I recommend they be dismissed. "[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.' " *Kolari v. N.Y.-Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir.2006), *quoting* 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine —judicial economy, convenience, fairness, and comity— will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *Klein & Co. Futures, Inc. v. Bd. of Trade,* 464 F.3d 255, 262 (2d Cir.2006) ("[W]here, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." (citation omitted)). Thus, because I recommend that all of plaintiff's federal claims against the moving defendants be dismissed, I further recommend that any state law claims plaintiff may have alleged against the moving defendants be dismissed.

[10]    Although it is not completely clear, the plaintiff may be attempting to allege a state law malpractice claim against his defense attorney, McCormick, of the Legal Aid Society, and a claim under the New York Freedom of Information Law, N.Y. Pub. Off. Law, art. VI.

IV. *Conclusion*

2011 WL 7429454

For all the foregoing reasons, I respectfully recommend that the motions to dismiss made by defendants Francis D. Phillips, Jessica M. Dovico, Steven Grasso, Edward A. Diana, The Legal Aid Society of Orange County, Inc., Steven A. Baldino, Gary Abramson, and Dennis McCormick (Docket Items 22, 38, 42, 46, 50) be granted in their entirety. I also recommend that all claims against Steven Brockett be dismissed. If accepted, this Report and Recommendation will result in the dismissal of all claims against the above named defendants.

## V. *Objections*

**\*13** Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of this Report and Recommendation to file written objections. *See also* Fed.R.Civ.P. 6(a) and 6(d). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty, United States District Judge, 500 Pearl Street, Room 735, New York, New York 10007, and to the chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Crotty. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 7429454

---

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

 © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 639151

2012 WL 639151
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Christopher BROWN, Plaintiff,
v.
David A. PATERSON, The Governor of
the State of New York, et al., Defendants.

No. 10 Civ. 5833(PAC)(HBP).
|
Feb. 28, 2012.

*ORDER ADOPTING R & R*

Honorable PAUL A. CROTTY, District Judge.

**\*1** On August 3, 2010, *pro se* plaintiff Christopher Brown ("Brown") instituted this 42 U.S.C. § 1983 action against seventeen defendants, alleging that he was subjected to an unreasonable search and seizure, false arrest and imprisonment, and malicious prosecution. On August 10, 2010, this Court referred the matter to Magistrate Judge Henry Pitman for general pretrial matters and dispositive motions.

On May 2 and May 24, 2011, eight defendants moved to dismiss Brown's complaint, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim, including: Francis D. Phillips, Assistant District Attorney Jessica M. Dovico, and Assistant District Attorney Steven Grasso (collectively, the "District Attorney Defendants"); Orange County Executive, Edward A. Diana; The Legal Aid Society of Orange County, Inc., Steven A. Baldino, Gary Abramson, and Dennis McCormick (collectively, the "Legal Aid Defendants"). Magistrate Judge Pitman directed Brown to respond to these motions, but Brown failed to do so. Notwithstanding the default, Magistrate Judge Pitman considered the motions to dismiss on their merits; and on December 27, 2011, he issued a Report and Recommendation ("R & R") recommending that the Court grant defendants' motions to dismiss in their entirety. Further, he recommended dismissing, *sua sponte,* Brown's claims against Judge Brockett. Brown did not file any objections to the R & R.

On December 13, 2011, seven additional defendants moved to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim, including: Ramon Bethencourt, Matthew T. Byrne, Mr. Colon, David W. Franck, Patrick H. Gass, Matthew Johnson, and Mr. Mecocci (collectively, the "Police Officer Defendants"). Again, Brown did not oppose the motion. This motion is not addressed in the R & R, but this Court will consider the motion; and it will also address, *sua sponte,* Brown's claims against the last defendant, David Paterson, the former Governor of New York.

For the reasons that follow, the Court adopts Magistrate Judge Pitman's R & R in its entirety. The Court also GRANTS the Police Officer Defendants' motion to dismiss and, *sua sponte,* dismisses Brown's claims against defendant Paterson. Accordingly, the Court dismisses Brown's complaint in its entirety.

**BACKGROUND**

**I. Facts** [1]

[1] Unless otherwise noted, the facts are taken from the R & R.

On May 20, 2009, Brown was released from prison into the custody of the New York State Division of Parole. On May 21, 2009, Brown moved into Room 15 of the Globe Motel, in Middletown, New York. On July 22, 2009, Middletown City Judge Steven Brockett signed a no-knock search warrant authorizing the search of Brown's motel room. The search warrant authorized the seizure of controlled substances and drug paraphernalia, and specified that the target was a 25–26 year-old, 5′6″, 145–150 lbs, dark haired male known as "Cyrus." In executing the warrant, the police officers seized, *inter alia,* several loose pieces of crack cocaine, one bag containing sixteen small zip-lock bags of crack cocaine, five small zip-lock bags of crack cocaine, crack pipes, a digital scale, packaging materials, four razor blades, a "wire push rod with chore boy," and a letter and card with the name "Cyrys" written on each. Brown was arrested and charged with one count of criminal possession of a controlled substance in the third degree, one count of criminal possession of a controlled substance in the fifth degree, one count of criminal possession of a controlled substance in the seventh degree, and one count of criminally using drug paraphernalia in the second degree. Brown was arraigned in front of Judge Brockett and released on his own recognizance, pursuant to N.Y.Crim. Proc. § 180.80.

**\*2** Police officers informed Brown's parole officer of Brown's arrest and the charges against him. Brown told his parole officer that he was not the intended target of the search warrant, but admitted that he was "complicit [ ] in the crime" and that "he and his girlfriend were both using and this is why the drugs/cocaine were in the room." (*See* Compl. Ex. E.) A parole warrant was issued for Brown's arrest based on Brown's parole violations, which included: (1) being arrested and charged with drug offenses on July 22, 2009; (2) possessing cocaine on July 22, 2009; and (3) possessing drug paraphernalia on July 22, 2009. (*See* Compl. Ex. E.) On August 18, 2009, Brown was arrested on the parole warrant and subsequently charged with resisting arrest. Dennis McCormick, a staff attorney with the Legal Aid Society, was assigned to defend Brown.

On February 9, 2010, Brown pled guilty to resisting arrest and agreed to a sentence of nine months in exchange for dismissal of all other charges. On February 9 and 23, 2010, Brown entered Freedom of Information Law ("FOIL") Requests to the City Court of Middletown and the Orange County District Attorney's Office, requesting the affidavit which supported the search warrant executed on his motel room. On March 2 and 3, 2010, Brown's requests were denied as exempt from FOIL disclosure because the affidavit was a judicial record and the warrant application was for law enforcement purposes, referenced confidential sources, and because the informant did not testify at trial.

## II. Magistrate Judge Pitman's Report and Recommendation

Magistrate Judge Pitman thoroughly detailed Brown's factual allegations, and carefully reviewed the legal standard. He then addressed: (1) Brown's claims against the District Attorney Defendants; (2) Brown's claims against Orange County Executive, Edward A. Diana; (3) Brown's claims against the Legal Aid Defendants; (4) Brown's claims against Judge Brockett; and (5) any possible state law claims. Magistrate Judge Pitman recommended that the Court dismiss all of the claims addressed.

### 1. District Attorney Defendants

The District Attorney Defendants are immune from suit in their official capacities, because they are "deemed to be [ ] official[s] of New York State and [are] entitled to invoke Eleventh Amendment immunity." *Ying Jing Gan v. City of New York,* 996 F.2d 522, 536 (2d Cir.1993). The District Attorney Defendants are also immune from suit in their

individual capacities so long as they were acting within the scope of their duties in initiating and pursuing a criminal prosecution, rather than in an administrative or other capacity. *See Hill v. City of New York,* 45 F.3d 653, 661 (2d Cir.1995). Magistrate Judge Pitman found that Brown's claims against the District Attorney Defendants related to their conduct in deciding to prosecute Brown or in plea bargaining with Brown, all of which falls within the contours of absolute prosecutorial immunity. (R & R 18.) Magistrate Judge Pitman thus recommended that the Court dismiss all of Brown's claims against the District Attorney Defendants. (*Id.* 19.)

### 2. Orange County Executive, Mr. Diana

**\*3** Magistrate Judge Pitman considered whether Brown adequately stated a claim against Mr. Diana in his official capacity, his individual capacity, or nominally, on behalf of Orange County. (R & R 20–27.) Magistrate Judge Pitman found that Brown's claim failed under any analysis.

With respect to claims against Mr. Diana in his official capacity, Magistrate Judge Pitman determined that Brown's claims "represent only another way of pleading an action against an entity of which [Diana] is an agent." (R & R 20 (quoting *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).) He found that "[t]he absence of any allegations against Diana, precludes the possibility that Orange County could be liable" for Mr. Diana's acts. (R & R 20.)

With respect to a direct claim against Orange County, Magistrate Judge Pitman found that Brown neither alleged facts to establish the existence of an Orange County policy, custom, or practice, nor alleged facts to establish that Brown was injured as a result of any conduct attributable to Orange County. (R & R 21–22.) Brown's allegations against the "people," which appears to refer to the District Attorney Defendants, are insufficient to state a claim against Orange County because "[w]hen prosecuting a criminal matter, a district attorney in New York State ... represents the State not the county." *Ying Jing Gan,* 996 F.2d at 536 (quoting *Baez v. Hennessy,* 853 F.2d 73, 77 (2d Cir.1988), *cert. denied,* 488 U.S. 1014, 109 S.Ct. 805, 102 L.Ed.2d 796 (1989).) Likewise, Brown's allegations regarding Judge Brockett's training are insufficient to state a claim against Orange County because "judges' training, as well as the rules they must follow, are imposed by the state legislature and the chief administrator of the courts," not a particular county. *Berry v. Village of Millbrook,* No. 09–CV–04234 (KMK), 2011 WL 4445636, at \*7 (S.D.N.Y. Sept.26, 2011). Moreover, to the extent Brown

attempted to state a claim based on the conduct of an Orange County policymaker, his claim fails because he does not allege that a policymaker was responsible for establishing a final government policy respecting the defendants' alleged conduct. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 482–83, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) ("The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.").

Finally, Magistrate Judge Pitman found that any claim against Mr. Diana in his personal capacity fails because Brown did not state how Mr. Diana violated the law or injured Brown, *see Dove v. Fordham Univ.,* 56 F.Supp.2d 330, 335 (S.D.N.Y.1999), or how Mr. Diana was otherwise personally involved with any constitutional violations, *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). (*See* R & R 26.)

**\*4** Accordingly, Magistrate Judge Pitman recommended that the Court grant Mr. Diana's motion to dismiss in its entirety. (R & R 27.)

### 3. Legal Aid Defendants

To state a claim under § 1983, "a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Snider v. Dylag,* 188 F.3d 51, 52 (2d Cir.1999).

Court appointed attorneys, such as the Legal Aid Defendants, do not act under color of state law when representing a client. *Polk Cnty. v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). Accordingly, Magistrate Judge Pitman recommended that the Court dismiss Brown's § 1983 claims against the Legal Aid Defendants. (R & R 28.)

### 4. Judge Brockett

Magistrate Judge Pitman recommended that the Court dismiss, *sua sponte,* Brown's claims against Judge Brockett. (R & R 30.) Judges "have enjoyed judicial immunity since the seventeenth century" and "will be held liable only when [they] act[ ] in the clear absence of all jurisdiction." *Fisch v. Consulate Gen. of Rep. of Poland,* 11 Civ. 4182(SAS), 2011 WL 3847398, at \*1 (S.D.N.Y. Aug. 30, 2011). "[I]n cases of judicial immunity, a court may dismiss a defendant *sua sponte,* without affording a hearing or other notice of dismissal." *Id.* Magistrate Judge Pitman found that Brown "fails to allege any actions committed by Judge Brockett that were performed outside of the scope of his jurisdiction." (R & R 30.) Magistrate Judge Pitman thus concluded that Brown's claims against Judge Brockett were barred by absolute judicial immunity, and recommended the Court dismiss these claims. (*Id.*)

### 5. State–Law Claims

Magistrate Judge Pitman noted that, while not completely clear, Brown may be attempting to allege a state law malpractice claim against his defense attorney, Mr. McCormick, of the Legal Aid Society, and a claim under the New York Freedom of Information Law, N.Y. Pub. Off. Law, art. VI. Magistrate Judge Pitman recommended that the Court decline to exercise supplemental jurisdiction over any possible state law claims that Brown was attempting to raise.

"[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.' " *Kolari v. New York Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir.2006) (*quoting* 28 U.S.C. § 1367(c)(3)). Thus, "if the federal claims are dismissed before trial ... the state claims should be dismissed as well," based on considerations of judicial economy, convenience, fairness, and comity. *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (quoting *Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Having recommended that the federal claims against the moving defendants be dismissed, Magistrate Judge Pitman recommended that the Court decline to exercise supplemental jurisdiction and dismiss any state law claims.

### DISCUSSION

#### I. The Report and Recommendation

**\*5** In reviewing a report and recommendation, a court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where a party makes a timely written objection, the district court must review the contested issues *de novo. Greene v. WCI Holdings Corp.,* 956 F.Supp. 509, 513 (S.D.N.Y.1997). "The district court may adopt those portions

of the report to which no timely objection has been made, so long as there is no clear error on the face of the record." *Feehan v. Feehan,* No. 09 Civ. 7016, 2011 WL 497776 at *1 (S.D.N.Y. Feb.10, 2011). Brown did not file any objections to the R & R.

The Court has reviewed the R & R for clear error and finds none. Accordingly, the Court adopts Magistrate Judge Pitman's R & R in its entirety.

**II. Brown's Remaining Claims**

The Court now turns to Brown's claims against defendant Paterson, the former Governor of New York, and the Police Officer Defendants.

*1. Legal Standard*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[T]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id.* Pleadings of a *pro se* plaintiff are held to a less stringent standard and should be construed liberally "to raise the strongest arguments that they suggest." *Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir.2006). The Court, however, need not "reconcile plaintiff's own pleadings that are contradicted by other matter asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint." *Fisk v. Letterman,* 401 F.Supp.2d 362, 368 (S.D.N.Y.2005).

*2. Former Governor David Paterson*

Brown does not state whether he is suing former Governor David Paterson in his official or individual capacity. A governor is immune from suit in his official capacity, pursuant to the Eleventh Amendment, so long as his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Al–Jundi v. Estate of Rockefeller,* 855 F.2d 1060, 1066–67 (2d Cir.1989). *Ying Jing Gan v. City of New York,* 996 F.2d 522, 528 (2d Cir.1993). While a governor is not immune from suits in his individual capacity, the fact that the Governor is "in a high position of authority is an insufficient basis for the imposition of personal liability." *Humphrys v. Nager,* 962 F.Supp. 347, (E.D.N.Y.1997) (quoting *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977).) Brown's only factual allegation regarding Paterson is that he was Governor at the relevant time. (*See* Compl. at 2.) This sole allegation is insufficient to state a claim against Paterson in either his official or individual capacity. Accordingly, Brown's claims against Paterson are dismissed.

*3. Police Officer Defendants*

**\*6** The Police Officer Defendants argue that Brown's claims § 1983 claims are barred under *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) (hereinafter, *"Heck"* ).

In *Heck,* the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 486–87. The Court further explained that:

> An example of ... a § 1983 action that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful-would be the following: A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest. He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the

state law concerning res judicata, the §
1983 action will not lie.

*Id.* at 487 n. 6 (internal citations omitted). The Court also
noted that to bring a malicious prosecution claim under
§ 1983, the plaintiff must show that the prior criminal
proceeding terminated in favor of the accused. *Id.* at 484.

There is no dispute that Brown's resisting arrest conviction
has not been reversed, expunged, declared invalid, or
otherwise called into question. [2] Resisting arrest, under N.Y.
Penal Law § 250.30, is defined as intentionally preventing
or attempting to prevent a police officer from effecting an
authorized arrest. Brown's resisting arrest charge was based
on his attempt to prevent police officers from executing a
parole warrant on August 18, 2009. (*See* Compl. Exs. E,
F.) The parole warrant was based on the following parole
violations: (1) Brown's arrest and subsequent drug charges on
July 22, 2009; (2) Brown's possession of cocaine on July 22,
2009; and (3) Brown's possession of drug paraphernalia on
July 22, 2009. (*See* Compl. Ex. E.)

[2]     The Court notes that Brown's plea to the resisting
        arrest charge was made, in part, to satisfy all the
        charges in the case. (Compl. at 7.)

Brown's unlawful search and seizure claim is thus barred
by *Heck* for the reasons described in the Supreme Court's
example: If Brown's unlawful search and seizure claims
were successful, then his possession of cocaine and drug
paraphernalia, and the resulting arrest and criminal charges,
would not provide a legal basis for his parole violations
and the parole warrant. If there was an insufficient basis
for the parole warrant, then Brown's resisting arrest charge
would not be based on an authorized arrest. Thus, Brown's
successful prosecution of his unlawful search and seizure
claim would necessarily imply that his criminal conviction
was wrongful. [3] Therefore, it is barred by *Heck. See Davis v.
Cotov,* 214 F.Supp.2d 310, 316 (E.D.N.Y.2002) (holding that
plaintiff's § 1983 claim that his parole violation was based on
an improper arrest was barred by *Heck* because plaintiff had
not established that his parole revocation was invalidated in
an appropriate state or federal proceeding).

[3]     In some cases, an unlawful search and seizure
        claim might not "necessarily imply that a prior
        state conviction was unlawful," such as where

"the subject evidence was admissible based on
such doctrines as independent source, inevitable
discovery, and harmless error." *Williams v. Ontario
Cnty. Sheriff's Dep't,* 662 F.Supp.2d 321, 327
(W.D.N.Y.2009). This, however, is not one of
those cases. There is no suggestion that the drugs,
drug paraphernalia, and resulting arrest would be
admissible based on those doctrines, or would
constitute harmless error.

**\*7** "One element that must be alleged and proved in
a malicious prosecution action is termination of the prior
criminal proceeding in favor of the accused." *Heck,* 512 U.S.
484. Brown's malicious prosecution claim is barred by *Heck*
because his conviction did not terminate in his favor. The fact
that Brown pled guilty to only one charge to satisfy many
does not change this analysis. *See Sealey v. Fishkin,* No. 96
CV 6303(RR),1998 WL 1021470, at *4 (E.D.N.Y. Dec.2,
1998) (holding that *Heck* barred plaintiff's arrest without
probable cause claim even though plaintiff "pleaded guilty to
disorderly conduct, a lesser charge than the assault for which
he was initially arrested").

A false arrest and imprisonment claim, however, does not
inevitably undermine a conviction, and therefore is not always
barred under *Heck. See Covington v. City of New York,* 171
F.3d 117, 123 (2d Cir.1999). Nonetheless, "the existence of
probable cause is an absolute defense to a false arrest claim."
*Jaegly v. Couch,* 439 F.3d 149, 152 (2d Cir.2006). Probable
cause "is presumed where an arrest is made pursuant to a valid
arrest warrant." *Barcomb v. Sabo,* No.2011 WL 1770795, at
*10 (N.D.N.Y. May 9, 2011). Accordingly, "unless it can be
shown that the warrant was obtained using fraud, perjury, or
the misrepresentation or falsification of evidence, a claim for
false arrest or wrongful imprisonment must fail." *Id.* (citing
*Katz v. Morgenthau,* 709 F.Supp. 1219, 1229 (S.D.N.Y.1989)
("No civil action is available to plaintiff under Section 1983
for an arrest and subsequent detention made pursuant to a
valid arrest warrant.")).

Brown does not claim that the August 18, 2009 parole warrant
was invalid; he does, however, attack the validity of the
July 22, 2009 search warrant. The search warrant authorized
the Police Officer Defendants to search (1) Brown's motel
room for, *inter alia,* drugs—"including but not limited to
cocaine"—drug paraphernalia, records, and weapons; and
(2) a target, "Cyrus." (Compl.Ex. B.) Brown claims that
the Police Officer Defendants knew the search warrant was
"inadequate" because "it was obvious that their informant
gave [perjured] information ...," and notes that he was not the

intended target. (*See* Compl. at 8.) Brown's claims, however, are undermined by Brown's admission to his parole officer that he was "complicit[ ] in the crime" and was using cocaine; and by the fact that a letter and card with the name "Cyrys" written on each was seized from Brown's motel room. (*See* Compl. Ex. B at 3, Ex. E.) Brown's conclusory allegations of perjury are thus insufficient to show the search warrant was invalid. Since Brown has not plausibly shown that the search warrant was obtained by perjury or fraud, his false arrest and imprisonment claim fails.

Finally, to the extent Brown intended to bring a claim against the Middletown Police Department itself, which is not clear, *see* Compl. 2–3 (only listing individual officers as defendants), any such claim would fail. The Middletown Police Department is a non-suable agent of the City of Middletown. *See Jenkins v. City of New York,* 478 F.3d 76, 93 n. 19 (2d Cir.2007). A municipality can be held liable for its employee's § 1983 violation where the violation involves the "execution of a government's policy or custom." *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Brown has not identified any City of Middletown policy or custom that caused the alleged violation, or alleged that he was injured by any conduct attributable to the City of Middletown. Furthermore, as detailed above, Brown failed to adequately allege that a

City of Middletown employee committed a § 1983 violation. Accordingly, to the extent Brown intended to bring a claim against the Middletown Police Department or the City of Middletown, any such claim fails.

### 4. Conclusion

**\*8** Brown has failed to state a claim against former Governor David Paterson and the Police Officer Defendants. Accordingly, the Court grants the Police Officer Defendants' motion to dismiss in its entirety, and *sua sponte* dismisses David Paterson from this action.

### CONCLUSION

The Clerk of Court is directed to close these motions (Dkts. No. 22, 38, 42, 46, 50, and 62) and enter judgment closing this case. Pursuant to 28 U.S.C. § 1915(a), I find that an appeal from this order would not be taken in good faith.

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 639151

---

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 2120518
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Lafrancis GRAY–DAVIS;
and Myrell Davis, Plaintiffs,
v.
State of NEW YORK; Paul Rigby, Senior Parole
Officer; Tammy Gronau, Parole Officer; Mr. Green,
Parole Officer; Mr. Maher, Parole Officer; Ms.
Delaney, Parole Officer; Mr. Fregoe, Parole Officer;
Ms. Montford, Supervisor Parole Officer; Robert
Butera, Parole Officer; Anthony I Annucci, Acting
Comm'r of Dep't of Corr. and Cmty. Supervision;
Tinam. Stanford, Chair of Bd. of Parole; Randy W.
Blume, Assist. Comm'r of Onondaga Cnty. Dep't
of Corr.; Timothy H. Cowin, Comm'r of Onondaga
Cnty. Dep't of Corr.; Cnty. of Onondaga; Onondaga
Cnty. Dep't of Corr.; City of Jamesville; City of
Syracuse; Syracuse City Police Dep't; John Doe
Nos. 1–4, Parole Officers; John Doe Nos. 5–
15, Syracuse City Police Officers; and John Doe
16, Chief of Syracuse City Police, Defendants.

No. 5:14–CV–1490 (GTS/TWD).
|
Signed May 5, 2015.

**Attorneys and Law Firms**

Lafrancis Gray–Davis, Syracuse, NY, pro se.

DeRoberts Law Firm, Jeffrey DeRoberts, Esq., of Counsel,
Syracuse, NY, for Plaintiff Myrell Davis.

### DECISION and ORDER

GLENN T. SUDDABY, District Judge.

**\*1** Currently before the Court, in this civil rights action
filed by LaFrancis Gray–Davis and her minor son Myrell
Davis ("Plaintiffs"), against the above-captioned entities
and individuals ("Defendants") arising from two searches
by police and the institution of special conditions by
parole officers between December 2013 and April 2014,
is the Report–Recommendation of United States Magistrate

Thérèse Wiley Dancks recommending that certain of
Plaintiffs' claims be dismissed with prejudice, certain of the
claims be dismissed without prejudice (and with leave to
amend as authorized by the Court), and certain of the claims
survive the Court's initial review of Plaintiffs' Complaint.
(Dkt. No. 6.) Plaintiffs have not filed an objection to the
Report–Recommendation and the deadline in which to do so
has expired. (*See generally* Docket Sheet.)

When *no* objection is made to a report-recommendation, the
Court subjects that report-recommendation to only a *clear
error* review. Fed.R.Civ.P. 72(b), Advisory Committee Notes:
1983 Addition. When performing such a "clear error" review,
"the court need only satisfy itself that there is no clear error on
the face of the record in order to accept the recommendation."
*Id.: see also Batista v. Walker,* 94–CV–2826, 1995 WL
453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I
am permitted to adopt those sections of [a magistrate judge's]
report to which no specific objection is made, so long as
those sections are not facially erroneous.") (internal quotation
marks and citations omitted).

Here, based upon a review of this matter, the Court can find
no clear error in Magistrate Judge Dancks' thorough Report–
Recommendation. (Dkt. No. 6.) Magistrate Judge Dancks
employed the proper standards, accurately recited the facts,
and reasonably applied the law to those facts. (*Id.*) As a result,
the Report–Recommendation is accepted and adopted in its
entirety for the reasons stated therein.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Dancks' Report–
Recommendation (Dkt. No. 6) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that the following claims are *DISMISSED* with
**prejudice** and **without leave to amend:**

(1) all claims against Defendant State of New York;

(2) all claims against Defendant Onondaga County
Department of Corrections;

(3) all claims against Defendant Syracuse City Police
Department;

(4) Plaintiffs' 42 U.S.C. § 1983 claims for money damages
against Defendants Annucci, Stanford, Rigby, Gronau,

WESTLAW   © 2020 Thomson Reuters. No claim to original U.S. Government Works.                                                                1

Green, Maher, Delaney, Fregoe, Montford, Butera, and John Doe Nos. 1–4;

(5) Plaintiffs' claim for violation of their Fifth and Ninth Amendment rights; and it is further

**ORDERED** that the following claims **shall be *DISMISSED* with prejudice** and without further Order of this Court **UNLESS,** within **THIRTY (30) DAYS** of the date of this Decision and Order, Plaintiffs file an Amended Complaint correcting the pleading deficiencies referenced in Magistrate Judge Dancks' Report–Recommendation:

**\*2** (1) Plaintiffs' claims against Defendant County of Onondaga;

(2) Plaintiffs' claims against Defendant Hamlet of Jamesville (a/k/a City of Jamesville);

(3) Plaintiffs' claims against Defendant City of Syracuse;

(4) Plaintiffs' claims against Defendants Butera, Blume, Cowin and John Doe No. 16; and

(5) Plaintiffs' claims against Defendants Annucci and Stanford (**EXCEPT** for their 42 U.S.C. § 1983 claims for money damages against those two Defendants in their official capacities, which claims again are dismissed with prejudice and without leave to amend); and it is further

**ORDERED** that any Amended Complaint that Plaintiffs chose to file shall be a complete pleading, which will supersede their original Complaint in all respects, and may not incorporate any portion of the original Complaint by reference, in accordance with Local Rule 7.1(a)(4) of the District's Local Rules of Practice; and it is further

**ORDERED** that Plaintiffs' remaining claims—i.e., their claims against Defendants Rigby, Gronau, Green, Maher, Delaney, Fregoe, and Montford ("Remaining Defendants") for violation of Plaintiffs' First, Fourth and Fourteenth Amendment rights—**SURVIVE** the Court's initial review of the Complaint; and it is further

**ORDERED** that the District Court shall issue summonses, along with copies of the Complaint and General Order 25, to the United States Marshal for service upon the remaining Defendants; and it is further

**ORDERED** that counsel for the Remaining Defendants shall file a formal response to the surviving claims in the Complaint in accordance with Federal Rules of Civil Procedure; and it is further

**ORDERED** that Plaintiffs shall take reasonable steps to identify Defendant John Doe Nos. 1–15 and, if necessary, make a motion seeking leave to amend her pleadings to add the proper party; and it is hereby

**ORDERED** that the Clerk of Court serve a copy of this Decision and Order upon Plaintiff LaFrancis Gray–Davis by regular mail.

### *ORDER AND REPORT–RECOMMENDATION*

THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

The Complaint of *pro se* Plaintiff LaFrancis Gray–Davis, on her own and on behalf of her son, Myrell Davis, was received for filing in the Northern District of New York on December 11, 2014, along with an application to proceed *in forma pauperis.* (Dkt. Nos. 1 and 2.) By Order of December 18, 2014, the Court granted Plaintiff's application to proceed *in forma pauperis.* (Dkt. No. 4 at 2–3.) Because Plaintiff, who is not an attorney and not represented by counsel, may not appear on behalf of her minor child, Myrell, *see Cheung v. Youth Orchestra Found., of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990), the Court deferred the requisite initial review of the Complaint pursuant to 28 U.S.C. § 1915(e) and stayed the case for ninety days in order to give Plaintiff time to retain counsel, at least for her minor son. *Id.* at 3. Attorney Jeffrey DeRoberts, Esq. filed a Notice of Appearance on behalf of Myrell Davis on January 8, 2015, thereby removing the impediment to initial review of the Complaint. (Dkt. No. 5.)

### I. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

**\*3** Even when a plaintiff meets the financial criteria for *in forma pauperis,* 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis,* "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "An action is frivolous where either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy, or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully,* 943 F.2d 259, 260 (2d Cir.1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se,* the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008) (citation omitted). A *pro se* complaint

should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000).

## II. PLAINTIFF'S COMPLAINT

**\*4** Plaintiff met James D. Davis ("Davis") in July of 2009, when he was on parole supervision, and the couple had a child, Myrell Davis, in 2010. (Dkt. No. 1 ¶¶ at 5 and 6.) Davis was violated by parole supervision on September 22, 2011, and Defendant Senior Parole Officer Paul Rigby ("Rigby"), who allegedly had a vendetta against Plaintiff because of her association with Davis, acted to prevent Plaintiff and Davis from being married at the Onondaga County Justice Center in November of 2011. *Id.* at ¶¶ 7–8.

Plaintiff and Davis were married on November 12, 2012, while Davis was incarcerated, and on July 30, 2013, when Davis was about to be released, Plaintiff was informed by his parole officer, Defendant Ms. Montford ("Montford"), that she and her son and all family members were not permitted to have contact with Davis. *Id.* at ¶¶ 9–10. Included in the special conditions in the Certificate of Release to Parole Supervision signed by Davis on August 6, 2013, was the condition "17. I will not associate in any way or communicate by any means with ... Latesha Dexter and Lafrancis Gray without the permission of the P.O." *Id.* at p. 56. Included in a list of Special Conditions of Release to Parole Supervision in connection with Plaintiff's July 30, 2013, release, signed by Davis on February 24, 2014, were:

13(i): I will have no in person contact, or attempt to contact **Eric Roam, Latesha Dexter and/or LaFrancis Gray–Davis.** Either in person or members of their immediate family by means of letter, telephone, cell phone, third party, electronic means or any other methods without the knowledge and written permission of my parole officer. Failure to follow this rule is a violation of my parole in an important respect.

13(q): I will have contact with any children in common with **LaFrancis Gray–Davis** if court ordered only.

*Id.* at pp. 58, 60. Depending on Davis' parole officer, Plaintiff and Davis have at times been able to have contact with one

another and even share a home. Other times they have not. *Id.* at ¶ 12.

On Christmas Eve or Christmas day of 2013, Defendant parole officers John Doe Nos. 1 through 4 searched Plaintiff's home looking for Davis, whom they had reason to believe was there. *Id.* at ¶ 13. Davis was not in the house, and according to Plaintiff, because he was not paroled to her address and was not supposed to be there, the four Doe Defendants had no probable cause to invade her home and privacy and search her house. *Id.*

On March 11, 2014, at approximately 7:45 p.m., while Plaintiff, with Myrell in the car, was giving Davis a ride home, she was pulled over by Defendant Parole Officers Tammy Gronau ("Gronau"), Mr. Green ("Green"), Mr. Maher ("Maher"), Ms. Delaney ("Delaney"), and Mr. Fregoe ("Fregoe"), along with Defendant Syracuse Police Officers John Doe Nos. 5 though 15. *Id.* at ¶ 14. Defendants Gronau and Green searched Plaintiff's car and found several empty beer cans and a folding knife that Plaintiff claims belonged to her. Defendants also stated that Myrell was not in a child safety seat, which Plaintiff contends is untrue. *Id.* Davis was taken into custody. *Id.* According to Plaintiff, the only reason the vehicle was stopped was that she and her son were with Davis. *Id.*

**\*5** On April 1, 2014, Plaintiff received a letter from Defendant Randy W. Blume (Blume"), Assistant Commissioner of the Onondaga County Correctional Facility, stating that due to the special conditions prohibiting Davis from having contact with her and her son, he was restricting Plaintiff from visiting or communicating with Davis by telephone while he was at the facility unless or until the conditions of parole were removed. *Id.* at ¶ 17.

### III. ANALYSIS

Plaintiff's Complaint contains ten causes of action for violation of Plaintiff and her son's right to privacy and freedom of association under the First Amendment; illegal search and seizure in violation of the Fourth Amendment; violation of Plaintiff and her son's right to life, liberty, family, and privacy protected under the Fifth Amendment; violation of Plaintiff and her son's right to privacy and other rights protected under the Ninth Amendment; violation of Plaintiff and her son's right to life, liberty, family, and privacy protected under the Fourteenth Amendment; intentional infliction of emotional distress; negligent infliction of emotional distress; negligence;

supervisory liability, including failure to train, supervise, and control employees, employers, agents and successors; and violation of 42 U.S.C. § 1983.[1] (Dkt. No. 1 at ¶¶ 19–101.) The allegations of wrongdoing by Defendants set forth in each of the causes of action appear to be virtually identical. *Id.*

[1]   42 U.S.C. § 1983 does not create any independent substantive rights, but rather serves as a vehicle to "redress ... the deprivation of [federal] rights established elsewhere." *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999).

### A. State of New York
Plaintiff has named the State of New York as a Defendant. The only allegations directed to the State in the Complaint are conclusory assertions of supervisory liability. (*See, e.g.,* Dkt. No. 1 at ¶ 23.) Plaintiff's claims against the State are barred by sovereign immunity. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The bar precludes claims against the State for both monetary and equitable relief. *See Edelman v. Jordan,* 415 U.S. 651, 667–69, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Therefore, the Court recommends that the action be dismissed with prejudice as against the State of New York on sovereign immunity grounds.

### B. Municipal Defendants
Plaintiff has named as Defendants the County of Onondaga, City of Jamesville,[2] and the City of Syracuse. The Onondaga County Department of Corrections and Syracuse City Police Department have also been named as Defendants. However, as explained in *Baptista v. Onondaga County Dep. of Corrections,* No. 9:04–CV–0600 (LEK/GHL), 2007 WL 911854, at * 5, 2007 U.S. Dist. LEXIS 20536, at * 13 (N.D.N.Y. Mar.22, 2007), the County of Onondaga Department of Corrections and the County of Onondaga "are one in the same the County of Onondaga, a municipal corporation of the State of New York ." Furthermore, "[a] police department is an administrative arm of [a] municipal corporation," and "cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity." *Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999) (citing *Loria v. Town of Irondequoit,* 775 F.Supp. 599, 606 (W.D.N.Y.1990); *see also Dexter v. City of Syracuse,* No. 5:14–CV–0363 (TJM/DEP), 2014 WL 2611384, at \*4, 2014 U.S. Dist. LEXIS 80008, at \*11 (N.D.N.Y. June 11, 2014). Therefore, any claims Plaintiff might have against the County of Onondaga Department

of Corrections and City of Syracuse Police Department are properly asserted against the County of Onondaga and City of Syracuse, respectively.

2     The Court takes judicial notice that Jamesville, New York is a hamlet located within the Town of DeWitt, not a city. (*See* http:// www.townofdewitt.com/LivingDeWitt.aspx last visited on March 24, 2015.)

**\*6** Pursuant to the standard for establishing municipality liability laid out in *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), in order to set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven,* 691 F.3d 72, 80 (2d Cir.2012) (citing *Monell,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611), *cert denied,* —— U.S. ——, 134 S.Ct. 125 (2013); *see also Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer. Second, the plaintiff must establish a causal connection or an 'affirmative link' between the policy and the deprivation of his constitutional rights.") (citing *Oklahoma v. Tuttle,* 471 U.S. 808, 824 n. 8, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)) (plurality opinion).

Plaintiff has failed to identify or allege any facts showing the existence of a municipal policy or custom of Onondaga County, the hamlet of Jamesville, or the City of Syracuse which resulted in the deprivation of her and her son's constitutional rights. A municipality may be liable for deprivation of constitutional rights under § 1983 with regard to policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 388–89, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). However, Plaintiff's conclusory allegations that Onondaga County, Jamesville, and the City of Syracuse failed to properly hire, supervise, and train subordinates, without supporting factual allegations of, among other things, a policy or custom pursuant to which the alleged action was undertaken, fails to state a claim against those municipalities that is plausible on its face. *See Trombley,* 550 U.S. at 570; *Hall v. Smith,* 170 F. App'x 105, 108 (11th

Cir.2006) (affirming dismissal of § 1983 claim against a municipality where plaintiff alleged no factual support for his conclusory statement that the municipality had a policy or custom of grossly inadequate supervision and training of its employees.)

Given the foregoing, the Court recommends that Plaintiff's § 1983 claims be dismissed as against Defendants County of Onondaga, Jamesville, and the City of Syracuse without prejudice; and be dismissed with prejudice as against the Onondaga County Department of Corrections and the Syracuse City Police Department, given that any claims Plaintiff may be able to plead with regard to the two departments would be properly asserted against the County of Onondaga and City of Syracuse.

### C. Plaintiffs' Official Capacity Claims For Money Damages Against the State Official Defendants

**\*7** Plaintiffs have asserted official capacity claims for money damages under 42 U.S.C. § 1983 against all of the Defendants. (Dkt. No. 1 at p. 9.) The immunity granted the states under the Eleventh Amendment extends beyond the states themselves to state agents and instrumentalities that are effectively arms of the state. (*Woods v. Rondout Valley Cent. School Dist. Bd. of Educ.,* 466 F.3d 232, 236 (2d Cir.2006). The Eleventh Amendment bars all money damages claims against state officials acting in their official capacities. *Kentucky v. Graham,* 473 U.S. 159, 167–68, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The Eleventh Amendment has been found to bar official capacity claims for money damages against New York Department of Correctional and Community Supervision ("DOCCS") officials and parole officers. *See Tolliver v. New York State Corrections Officers,* No. 99CIV.9555(JGK), 2000 WL 1154311, at \* 2, 2000 U.S. Dist. LEXIS 11531, at \* 7 (S.D.N.Y. Aug.14, 2000) ("All of the defendants in this case are state officials because they are employees of the New York State Department of Correctional Services."); *James v. Suffolk County Correctional Facility,* No. 13–CV–2344 (JFB)(SIL), 2014 WL 4659300, at \*4, 2014 U.S. Dist. LEXIS 131056, at \* 10–11 (E.D.N.Y. Sept. 17, 2014) (official capacity claims for money damages against parole officers are barred by the Eleventh Amendment).

Therefore, the Court recommends that Plaintiff's § 1983 claims for money damages against Defendants Anthony J. Annucci ("Annucci"), Acting Director of DOCCS, Tina M. Stanford ("Stanford"), Chair of the Board of Parole, and all of the Defendant Parole Officers, including Defendants John

Doe 1 through 4, in their official capacities be dismissed with prejudice on Eleventh Amendment grounds.

### D. Supervisory Liability

Defendants Annucci, Stanford, Tim Cowan ("Cowan"), Commissioner of the Onondaga County Department of Correction, and John Doe No. 16, Chief of the Syracuse City Police, have all been sued in their supervisory capacities by Plaintiff. [3] (*See, e.g.,* Dkt. No. 1 at ¶ 23.) [4] In the case of Defendants Annucci and Stanford, the subordinates include the Defendant Parole Officers, including Defendants John Doe 1 through 4. (Dkt. No. 1 at ¶ 23.) Blume is identified as Cowan's subordinate. *Id.* In the case of Defendant John Doe No. 16, the subordinates include Syracuse Police Officers Defendants John Doe Nos. 5 through 15. *Id.*

[3]   Plaintiff has recommended dismissal of Plaintiff's supervisory claims against the municipal Defendants under *Monell.*

[4]   Plaintiff has repeated the identical conclusory allegations of supervisory liability against the Defendants in each of her ten causes of action. (*See* Dkt. No. 1 at ¶¶ 23, 30, 38, 46, 54, 62, 69, 76, 83, 90.)

The law is clear that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676. ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*") "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis,* No. 9:11–CV–1317 (GTS/RFT), 2012 WL 651919, at *6, 2012 U.S. Dist. LEXIS 25367, at *22–23 (N.D.N.Y. Feb.28, 2012) (citing *McKinnon,* 568 F.2d at 934); *see also Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections ... in a § 1983 claim" (quoting *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985)). Therefore, "a plaintiff must ... allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

**\*8**  The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 maybe found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).

Plaintiff has alleged that Defendants Annucci, Stanford, Cowan, and John Doe 16 failed to properly hire, oversee, supervise, train, and control their subordinates. (Dkt. No. 1 at ¶ 23.) Vague and conclusory claims that a supervisory official has failed to provide proper training and supervision or created a specific policy, without facts showing personal involvement, are legally insufficient to state a claim under any of the categories identified in *Colon. See Bridgewater v. Taylor,* 832 F.Supp.2d 337, 348 (S.D.N.Y.2011); *White v. Fischer,* No. 9:09–CV–240 (DNH/DEP), 2010 WL 624081, at *6, 2010 U.S. Dist. LEXIS 15492, at *19 (N.D.N.Y. Feb.18, 2010) ("Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability."); *see also Pettus v. Morgenthau,* 554 F.3d 293, 300 (2d Cir.2009) (same).

Plaintiff has also parroted each of the *Colon* factors as grounds for supervisory liability. *Id.* "Conclusory statements and formulaic recitations of the Colon factors [that are] wholly unsupported by facts," present no factual support for a supervisory liability claim. *Eldridge v. Kenney,* No. 11–CV–6459–FPG, 2014 WL 2717982, at * 3, 2014 U.S. Dist. LEXIS 84437, at * 2–3 (W.D.N.Y. June 16, 2014).

In light of Plaintiff's failure to allege facts of a nonconlusory nature showing personal involvement by Annucci, Stanford, Cowan, and John Doe No. 16 in the alleged violations of Plaintiff and her son's constitutional rights, the Court recommends that Plaintiff's § 1983 claims be dismissed without prejudice as against those Defendants.

### E. Defendant Butera

Defendant Robert Butera (Butera") is identified as a Parole Officer in Plaintiff's Complaint. (Dkt. No. 1 at p. 4.) With the exception of Plaintiff's inclusion of Butera's name in the conclusory claims of wrongdoing in each of her causes of action, *id.* at ¶ 23, the Complaint is devoid of factual allegations regarding Butera. As noted above, personal involvement in a constitutional deprivation is a prerequisite to an award of damages under § 1983." *McKinnon,* 568 F.2d at 934; *see also Crichlow v. Fischer,* No. 12–cv–7774 (NSR), 2015 WL 678725, * 9, 2015 U.S. Dist. LEXIS 18812, at * 17 (S.D.N.Y. Feb. 17, 2015) (dismissing defendants from the case upon initial review under 28 U.S.C. § 1915(e) where the plaintiff made no factual allegations regarding personal involvement on their part in the violation of plaintiff's rights). The complete absence of factual allegations of wrongdoing by Bufera warrants dismissal of Plaintiff's state law claims as well. Therefore, the Court recommends that the case be dismissed without prejudice as against Defendant Butera.

### F. Defendant Blume

**\*9** The sole factual allegation in the Complaint against Defendant Blume, the Assistant Director of the Onondaga County Department of Corrections is that he informed Plaintiff that he was restricting Plaintiff from visiting or communicating with Davis by telephone while he was at the facility due to the special conditions prohibiting Davis from having contact with her and her son unless and until the condition of parole was removed. *Id.* at ¶ 17. Inasmuch as there are no factual allegations indicating that Blume was doing anything more than complying with special conditions of release to parol supervision that had been imposed by DOCCS, the Court recommends that the case be dismissed without prejudice as against him.

### G. Plaintiff's Ninth Amendment Claim

Plaintiff claims that the Defendants violated her and her son's right to privacy and other rights guaranteed under the Ninth Amendment. (Dkt. No. 1 at ¶ ¶ 42–49.) The Ninth Amendment provides that "[t]he enumeration in the Constitution of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const. amend. IX. The Ninth Amendment is a "rule of construction" and does not give rise to "individual rights." *Jenkins v. C.I.R.,* 483 F.3d 90, 92–93 (2d Cir.2007) (Ninth Amendment is not an independent source of individual rights but a rule of construction). Therefore, to the extent Plaintiff is asserting a § 1983 claim for an independent violation of the

Ninth Amendment, the Court recommends that the claim be dismissed with prejudice as against all of the Defendants.

### H. Plaintiff's State Law Claims for Negligence and Intentional and Negligent Infliction of Emotional Distress

Plaintiff has included state law causes of action for intentional infliction of emotional distress, negligent infliction of emotional distress, and negligence against the Defendants for denying her and her son the benefits that arise from familial association, for subjecting them to the unreasonable search of her home and car, and, in the case of the municipal defendants and Annucci, Stanford, Cowin, and John Doe No. 16, for failing to properly supervise their subordinates.

#### 1. *Intentional Infliction of Emotional Distress*
Under New York law, to state a claim for intentional infliction of emotional distress, a plaintiff must plead "(1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and injury, and (4) severe emotional distress." *Bender v. City of N.Y.,* 78 F.3d 787, 790 (2d Cir.1996). The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Conboy v. AT & T Corp.,* 241 F.3d 242, 258 (2d Cir.2001). The Court finds that the allegations in Plaintiff's Complaint do not show conduct making a plausible showing of intentional infliction of emotional distress by any of the Defendants and recommends that the claim be dismissed without prejudice as to all Defendants.

#### 2. *Negligence and Negligent Infliction of Emotional Distress*
**\*10** Although Plaintiff has alleged that the Parole Officer and Syracuse Police Department Defendants intentionally and/or negligently denied her and her son's right to association and subjected them to unreasonable searches and seizures, the factual allegations in the Complaint reveal that Plaintiff's claims are premised on intentional not negligent conduct. A claim for negligent infliction of emotional distress maybe established under either (1) the "bystander theory" or (2) the "direct duty theory." *Baker v. Dorfman,* 239 F.3d 415, 421 (2d Cir.2000). Both theories require an act of negligence and physical injury or the threat of danger, either to the plaintiff or to a close family member. *Id.* To recover under the "bystander theory," the plaintiff must be "threatened with physical harm

2015 WL 2120518

as a result of the defendant's negligence" and "consequently suffer[ ] emotional injury from witnessing the death or serious bodily injury of a member of [his or her] immediate family." *Mortise v. United States,* 102 F.3d 693, 696 (2d Cir.1966). To recover under the "direct duty" theory, a plaintiff must suffer an emotional injury from defendant's breach of a duty which unreasonably endangered [his or her] own physical safety." *Id.*

The Court finds that Plaintiff's Complaint fails to allege facts stating a plausible claim for either negligence or negligent infliction of emotional distress against Defendants and recommends that the claim be dismissed without prejudice as against all of the Defendants.

### I. Plaintiff's Surviving Claims

Plaintiff's Complaint asserts claims for violation of her and her son's First Amendment right of liberty in their family life and Fourteenth Amendment due process right to intimate association [5] as a result of the imposition and enforcement of the special conditions of release to parole supervision that prevent Plaintiff and her son from being with Davis, as well as her Fourth Amendment right to be free from unreasonable searches and seizures in connection with the search of her home in December of 2013 and the traffic stop and search of her car on March 11, 2014. (Dkt. No. 1 at pp. 13, 18, and 41.)

[5]     Plaintiff has also asserted a due process claim under the Fifth Amendment. (Dkt. No. 1 at p. 21.) However, the due process clause of the Fifth Amendment applies only to actions taken by the federal government, not state or local governments. *See Schweiker v. Wilson,* 450 U.S. 221, 227, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981); *see also Canfield v. Douglas County,* No. 14–cv–00461–KMT, 2014 WL 7186749, at * 5, 2014 U.S. Dist. LEXIS 173224, at * 12–13 (D.Col. Dec.16, 2014) (Fifth Amendment deprivations such as those challenging due process rights to familial association with no allegation of federal involvement are not actionable under the Fifth Amendment).

Mindful of the Second Circuit's instruction to liberally construe a *pro se* plaintiff's pleadings, *see Sealed Plaintiff,* 537 F.3d at 191, the Court recommends that Plaintiff be permitted to pursue her and her son's First, Fourth, and Fourteenth Amendment claims (first, second and fifth causes

of action) against Defendants Rigby, Gronau, Green, Maher, Delaney, Fregoe, Montford, and John Doe Nos. 1–15.

The Court expresses no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment.

**ACCORDINGLY,** it is hereby

**RECOMMENDED** that the case be dismissed with prejudice as against: (1) Defendant State of New York on sovereign immunity grounds; (2) Defendant Onondaga County Department of Corrections on the grounds it is one and the same with Defendant County of Onondaga; and (3) Defendant Syracuse City Police Department on the grounds that it is not an entity capable of being sued; and it is further

**\*11**   **RECOMMENDED** that the following claims be dismissed with prejudice: (1) Plaintiff's § 1983 claims for money damages against Defendants Annucci, Stanford, Rigby, Gronau, Green, Maher, Delaney, Fregoe, Montford, Butera, and John Doe Nos. 1–4 on Eleventh Amendment grounds; and (2) Plaintiff's claim for violation of her and her son's Fifth and Ninth Amendment rights for failure to state a claim; and it is further

**RECOMMENDED** that the case be dismissed for failure to state a claim, with leave to file an amended complaint as authorized by the District Court as against Defendants: (1) County of Onondaga; (2) Jamesville; (3) City of Syracuse; (4) Bufera; (5) Blume; (6) Cowin; (7) John Doe No. 16; and (8) Annucci and Stanford (except without leave to amend § 1983 official capacity claims for money damages); and it is further

**RECOMMENDED** that the District Court direct service on Defendants Rigby, Gronau, Green, Maher, Delaney, Fregoe, and Montford of the surviving claims for violation of Plaintiff and her son's First, Fourth, and Fourteenth Amendment rights; and it is further

**RECOMMENDED** that Defendants Rigby, Gronau, Green, Maher, Delaney, Fregoe, and Montford be required to file a formal response to the surviving claims as provided for in the Federal Rules of Civil Procedure subsequent to service of process; and it is further

**RECOMMENDED** that Plaintiff be directed to take reasonable steps to identify Defendants John Doe Nos. 1–15,

and, if necessary, make an appropriate motion seeking leave to amend her pleadings to add the proper party; and it is hereby

**ORDERED** that any paper sent by a party to the Court or the Clerk shall be accompanied by a certificate setting forth the date a true and correct copy of it was mailed to all opposing parties or their counsel. ***Any letter or other document received by the Clerk or the Court which does not include a certificate of service which clearly states that an identical copy was served upon all opposing parties or their attorneys is to be returned, without processing, by the Clerk.*** Plaintiff shall also comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All motions shall comply with the Local Rules of Practice of the Northern District; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report–Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with

*Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009) (per curiam). [Editor's Note: Attachments of Westlaw case copies deleted for online display.]

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

**\*12**  Dated: March 27, 2015.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 2120518

---

End of Document
© 2020 Thomson Reuters. No claim to original U.S. Government Works.

Hawthorne v. City of Albany, Not Reported in Fed. Supp. (2017)

2017 WL 6520774

2017 WL 6520774
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Darryl L. HAWTHORNE, Plaintiff,

v.

CITY OF ALBANY, et al., Defendants.

1:17-CV-00716 (GTS/TWD)
|
Signed 11/14/2017

**Attorneys and Law Firms**

DARRYL L. HAWTHORNE, 40 Anne Street, New York, New York 10038, Plaintiff, pro se.

**ORDER AND REPORT-RECOMMENDATION**

Therese Wiley Dancks, United States Magistrate Judge

**I. INTRODUCTION**

 **\*1** Plaintiff's amended complaint in this *pro se* civil rights action brought under 42 U.S.C. § 1983 is before the Court for initial review. [1] (Dkt. No. 8.) Plaintiff, Darryl L. Hawthorne, originally commenced this action against the City of Albany; Albany Police Officers Devin Anderson, Sean Perkins, and Alex Cheban; and Albany Detectives John Norris and Tyson Ruecker. [2] (Dkt. No. 1.) Plaintiff has added Albany Police Sergeant Christ as a Defendant in his amended complaint. (Dkt. No. 8.)

[1] Plaintiff submitted his amended complaint to the Clerk on October 6, 2017. (Dkt. No. 8.) On November 6, 2017, Plaintiff submitted 179 pages of supplemental exhibits to the amended complaint. (Dkt. Nos. 12, 12-1, 12-2, 12-3, 12-4, 12-5, and 12-6.) The Court has treated the supplemental exhibits as a part of Plaintiff's amended complaint in its initial review.

[2] Plaintiff has identified Norris and Ruecker as police officers in both his original and amended complaints. (Dkt. Nos. 1 at 1; 8 at 1.) However, both Norris and Ruecker have been identified as detectives with the Albany Police Department in

Plaintiff's submissions. (Dkt. Nos. 8-2 at 1; 8-3 at 2.)

The claims that survived initial review of Plaintiff's original complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii) are: (1) Plaintiff's Fourth Amendment claims of unreasonable search and seizure, excessive force, and false arrest asserted against Anderson and Perkins; (2) Plaintiff's Fourteenth Amendment due process claim for deprivation of property asserted against Anderson and Perkins; and (3) Plaintiff's false arrest claim against Ruecker. [3] (Dkt. No. 7 at 3. [4] )

[3] On initial review, the Court considered Plaintiff's claims that Defendants planted evidence and falsified documents as a part of his claim for false arrest. (*See* Dkt. No. 4 at 12.)

[4] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

The District Court dismissed Plaintiff's remaining claims on initial review, including: (1) Plaintiff's malicious prosecution claim against Anderson and Perkins; (2) Plaintiff's conspiracy claim against Ruecker; and (3) Plaintiff's claims against Cheban, Norris, and the City of Albany. (Dkt. No. 7 at 3.) The claims were dismissed without prejudice and with leave to amend. *Id.*

**II. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT**

Even when a plaintiff meets the financial criteria for *in forma pauperis*, 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)

Case 5:20-cv-00937-GTS-TWD    Document 8    Filed 10/19/20    Page 51 of 75

Hawthorne v. City of Albany, Not Reported in Fed. Supp. (2017)

2017 WL 6520774

(citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *See, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

**\*2** To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied*, 513 U.S. 836 (1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III. ANALYSIS OF PLAINTIFF'S AMENDED COMPLAINT

### A. Surviving Claims Against Anderson, Perkins, and Ruecker from Plaintiff's Original Complaint

In his amended complaint, Plaintiff has realleged the unreasonable search and seizure, excessive force, false arrest, and deprivation of property claims against Defendants Anderson and Perkins which survived the initial review of his original complaint. (Dkt. No. 8 at 14-15, 17-20.) Plaintiff has also realleged the false arrest claim against Ruecker that survived initial review. [5] *Id.* at 18-19.

[5]      The elements of a Fourth Amendment false arrest claim under § 1983 are: (1) the defendant intended to confine him; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

### B. Malicious Prosecution Claims Against Anderson, Perkins, and Ruecker

The elements of a Fourth Amendment malicious prosecution claim under § 1983 are substantially the same as the elements under New York law. *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003). To state a malicious prosecution claim under New York law, the plaintiff must allege facts plausibly showing: (1) the initiation of a criminal proceeding; (2) its termination favorably to plaintiff; (3) lack of probable cause; and (4) malice. *Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010). In addition, the Second Circuit requires that a plaintiff demonstrate there was a "post arraignment seizure," since a § 1983 malicious prosecution claim is "grounded ultimately on the Fourth Amendment's prohibition of unreasonable seizures." *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013); *see also Washington v. Cnty. of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004) ("[T]o sustain a § 1983 malicious prosecution claim, there must be a seizure or other perversion of proper legal procedures implicating claimant's personal liberty and privacy interests under the Fourth Amendment.") (internal quotation marks omitted).

**\*3** Plaintiff's malicious prosecution claim against Anderson and Perkins was dismissed on initial review because his original complaint was devoid of allegations showing that Plaintiff had been arraigned on criminal charges, there had been a post arraignment seizure, he had been prosecuted on the charges, and he had obtained a favorable outcome. (Dkt. No. 4 at 13.) Plaintiff has included an amended malicious prosecution claim against Anderson and Perkins and added a

Case 5:20-cv-00937-GTS-TWD    Document 8    Filed 10/19/20    Page 52 of 75

Hawthorne v. City of Albany, Not Reported in Fed. Supp. (2017)

2017 WL 6520774

malicious prosecution claim against Ruecker in his amended complaint. (Dkt. No. 8 at 14, 19.)

Plaintiff was arraigned on charges of criminal possession of a controlled substance and false impersonation the day following his arrest. *Id.* at 9. The trespass charge against him was dismissed by the court, and Plaintiff was released on his own recognizance. *Id.* Plaintiff was indicted on charges of criminal possession of a controlled substance in the third degree, a class B felony (N.Y. Penal Law § 220.16.16(1)) and criminal possession of a controlled substance in the fourth degree, a class C felony (N.Y. Penal Law § 220.16.09(1)) on June 19, 2005. (Dkt. No. 8-2 at 30-31.) The false impersonation charge was dismissed before trial. (Dkt. No. 8 at 10.) Plaintiff had a jury trial on the criminal possession charges in April of 2016 and was found not guilty by the jury. *Id.*; Dkt. No. 8-3 at 133-34.

Plaintiff was remanded into custody during the trial because he arrived late for jury selection. (Dkt. No. 8 at 10.) According to Plaintiff, the Judge remanded him because she and the prosecution believed they would have a better chance of having Plaintiff plead guilty if he were in jail and would have a better chance of obtaining a guilty verdict if the jury saw him in a jail jumpsuit. (Dkt. No. 8 at 11.)

The Court finds Plaintiff has alleged facts plausibly stating a claim for malicious prosecution under New York law. It is less clear whether being held in custody during his trial is sufficient for Plaintiff to satisfy the requirement of a post-arraignment seizure for a § 1983 malicious prosecution claim. Nonetheless, given that Plaintiff has adequately plead a state law malicious prosecution claim over which the District Court may elect to exercise supplemental jurisdiction and may be able to establish a malicious prosecution claim under § 1983, the Court recommends that Defendants Anderson, Perkins, and Ruecker be required to respond to Plaintiff's malicious prosecution claims.

### C. John Norris

Norris was named as a Defendant in Plaintiff's original complaint, and the Court recommended dismissal because there were no factual allegations in the complaint regarding Norris. (Dkt. No. 4 at 16.) In his amended complaint, Plaintiff alleges after he was strip searched at the precinct, Detectives Ruecker and Norris appeared "with sinister looks and smiles on their faces." (Dkt. No. 8 at 8.) They huddled with Anderson and Perkins whispering and the four then came over and told Plaintiff he was being charged with possession of crack cocaine. *Id.* Plaintiff alleges he turned to Anderson and said "you guys never found any drugs on me," and Anderson responded "well unless you have information about drugs or people that's (sic) buying or selling drugs, you're going to jail for drug possession." *Id.* Ruecker and Norris allegedly took Plaintiff for questioning. *Id.* Plaintiff claims Norris told him "the crack we have belongs to you. If you want to change that then you need to give us information about drugs in Albany and down in New York City, and individuals bringing drugs from New York City and other cities/states to Albany." *Id.* at 8-9. According to Plaintiff, he was charged with possession of a controlled substance, false impersonation, and trespass after denying any knowledge about drugs and refusing to be interrogated. (Dkt. No. 8 at 8-9.)

**\*4** Plaintiff has asserted § 1983 claims against Norris for false arrest and malicious prosecution, with both claims involving the alleged planting of drugs and the falsification of documents in completing the DD5 on the confidential informant who allegedly provided the information leading to Plaintiff's arrest. *Id.* at 20. Mindful of the Second Circuit's direction that a *pro se* plaintiff's pleadings be liberally construed, *see Sealed Plaintiff,* 537 F.3d 191, the Court recommends that Plaintiff's false arrest and malicious prosecution claims against Norris survive *sua sponte* review and require a response.

### D. Sergeant Christ

As noted above, Christ is newly named as a Defendant in Plaintiff's amended complaint. At Plaintiff's criminal trial, Anderson testified Christ was the booking sergeant at the time Plaintiff was brought to the precinct, and any time an officer goes into central booking, he or she has to advise the booking sergeant what is going on. (Dkt. No. 8-3 at 53.) Plaintiff alleges when Christ recognized him from an arrest in 2009, in which Anderson and Perkins had also planted crack cocaine on him and Christ had taken $3,000 from him, Christ allowed Plaintiff to be strip searched and subjected to an anal cavity search at the precinct. (Dkt. No. 8 at 17.) In his amended complaint, Plaintiff claims Christ was present during Plaintiff's strip and anal cavity searches and was at the precinct during his interrogation. (Dkt. No. 8 at 16.)

According to Plaintiff, Christ not only failed to supervise Anderson, Perkins, Ruecker, and Norris, but joined them in their wrongful conduct, including Plaintiff's false arrest and planting the drugs for which Plaintiff was charged. (Dkt. No. 8 at 16.) Plaintiff further alleges Christ failed to supervise Anderson while he was in the evidence room and while doing

Case 5:20-cv-00937-GTS-TWD   Document 8   Filed 10/19/20   Page 53 of 75

Hawthorne v. City of Albany, Not Reported in Fed. Supp. (2017)

2017 WL 6520774

drug testing, and Christ documented Plaintiff as having only $776 and kept the remaining $3,224. *Id.*

While recognizing that the factual allegations against Christ are somewhat sparse, the Court nonetheless finds that in light of Plaintiff's *pro se* status and the Court's duty to liberally construe his amended complaint, Christ should be required to respond to Plaintiff's § 1983 claims for false arrest and violation of Plaintiff's due process claim for deprivation of property in connection with the $3,000 he claims was taken by Christ.

### E. Alex Cheban

The Court recommended dismissal of Plaintiff's original complaint against Cheban because the sole factual allegations against him were that he was contacted by Anderson and Perkins to drive Plaintiff to the precinct and patted Plaintiff down before transporting him there. (Dkt. No. 4 at 11.)

Plaintiff's claim against Cheban relates to the alleged discovery of a plastic bag containing crack cocaine under the back seat of the car in which Cheban had transported Plaintiff to the precinct. [6] According to Anderson's trial testimony, he and Perkins did not strip search and conduct an anal cavity search on Plaintiff at Capitol Green as Plaintiff claims. (Dkt. No. 8-3 at 45-49, 74.) Anderson testified that they did search Plaintiff, including checking the several layers of clothing being worn by Plaintiff. *Id.* According to Anderson, while searching Plaintiff at Capitol Green, he saw a part of a plastic bag between Plaintiff's buttocks. *Id.* He then called for Cheban to transport Plaintiff to the precinct where he could be strip searched. *Id.*

[6]     Plaintiff has included allegations in his amended complaint that Cheban began to drive off as Plaintiff was alighting. (Dkt. No. 8 at 6.) However, Plaintiff has not alleged any injury as a result and has not stated a claim for negligence or an intentional tort.

**\*5** When no plastic bag was found during Plaintiff's strip and anal cavity searches at the precinct, Cheban was called back to the precinct so the car in which Plaintiff had been transported could be searched. *Id.* at 53-55. Anderson testified he found the plastic bag he had seen when he searched Plaintiff underneath the back seat where Plaintiff had been sitting. *Id.* at 56-57. Cheban testified he saw Perkins take the bag of drugs from under the backseat of the car where Plaintiff had been sitting. *Id.* at 99-100. According to Cheban,

he checked the interior of the car when he went on duty but did not check the back of the car after Plaintiff got out. *Id.*

Plaintiff claims Cheban was involved in planting the drugs under the back seat. (Dkt. No. 8 at 16.) The Court has construed Plaintiff's planting of drugs allegation as a part of Plaintiff's claim for false arrest against Anderson, Perkins, Ruecker, Christ, and Norris and finds that liberally construed, Plaintiff's amended complaint can be read to state claims for false arrest and malicious prosecution against Cheban for purposes of initial review. *See, e.g.*, *Paige-Bey v. City of New York*, No. 13-cv-7300 (SLT) (RER), 2016 WL 7217197, at *7-8 (E.D.N.Y. Dec. 12, 2016) [7] (allegations police officer planted evidence and perpetuated false testimony at trial sufficient to meet first element of a malicious prosecution claim at motion to dismiss stage).

[7]     Plaintiff will be provided with copies of unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Therefore, the Court recommends Plaintiff's false arrest and malicious prosecution claims against Norris survive *sua sponte* review and require a response.

### F. City of Albany

Plaintiff named the City of Albany as a Defendant in his original complaint based upon a claim that the City engaged in negligent hiring, retention, and training of it agents, servants, and employees, including the Defendant members of the Albany Police Department. (Dkt. No. 1 at 6.) The Court recommended dismissal of the claim against the City on the grounds that Plaintiff's complaint was devoid of the requisite factual allegations to support his claim (Dkt. No. 4 at 17-18), and Judge Suddaby adopted the recommendation. (Dkt. No. 7 at 2-3.)

Plaintiff, again relying solely on conclusory assertions, has not corrected the deficiencies in his claim against the City of Albany for negligent hiring, retention, and training. (*See* Dkt. No. 8 at 13.) *See Gray-Davis v. New York*, No. 5:14-CV-1490 (GTS/TWD), 2015 WL 2120518, at *6 (N.D.N.Y. May 5, 2015) (conclusory allegations of failure to properly hire, train, and supervise municipal employees "without supporting factual allegations of, among other things, a policy or custom pursuant to which the alleged action was undertaken, fail to state a claim against [a municipality] that is plausible on its face.")

Case 5:20-cv-00937-GTS-TWD    Document 8    Filed 10/19/20    Page 54 of 75

Hawthorne v. City of Albany, Not Reported in Fed. Supp. (2017)

2017 WL 6520774

Plaintiff has added a supervisory liability claim against the City of Albany for the actions of the Defendants. (Dkt. No. 8 at 13.) However, a municipality may not be held liable under § 1983 based on the theory of *respondeat superior, see Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 691 (1978), and Plaintiff has failed to allege facts showing the deprivation of his rights was caused by a governmental custom, policy, or usage of the City of Albany. *Id.* at 690-91.

In light of the foregoing, the Court recommends the amended complaint be dismissed against the City of Albany for failure to state a claim. Because Plaintiff has already been given the opportunity to amend his complaint, and the allegations in his amended complaint, construed liberally, give no indication that a valid claim might be stated if Plaintiff were given another opportunity to amend, *see Gomez,* 171 F.3d at 795, the Court recommends that the dismissal against the City of Albany be with prejudice.

**\*6  ACCORDINGLY**, it is hereby

**ORDERED** that the supplemental exhibits to the amended complaint submitted by Plaintiff (Dkt. Nos. 12, 12-1, 12-2, 12-3, 12-4, 12-5, and 12-6) be added to Plaintiff's amended complaint (Dkt. No. 8) and that the amended complaint and supplemental exhibits together be accepted as the operative pleading in the case; and it is hereby

**RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 8) be **DISMISSED WITH PREJUDICE** against Defendant City of Albany; and it is further

**RECOMMENDED** that Defendants Anderson and Perkins be required to respond to Plaintiff's claims for the unreasonable search and seizure, excessive force, false arrest, and malicious prosecution; and his due process claim for deprivation of property alleged in the amended complaint (Dkt. No. 8.); and it is further

**RECOMMENDED** that Defendants Ruecker, Norris, and Cheban be required to respond to Plaintiff's claims for the false arrest and malicious prosecution claims alleged in the amended complaint (Dkt. No. 8); and it is further

**RECOMMENDED** that Defendant Christ be required to respond to Plaintiff's claim for false arrest, and his due claim for deprivation of property alleged in the amended complaint (Dkt. No. 8); and it is hereby

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [8] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

[8]     If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2017 WL 6520774

---

**End of Document**                                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,

v.

BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION* [1]

[1]
At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

PITMAN, United States Magistrate Judge.

**\*1** TO THE HONORABLE BARBARA S. JONES, United States District Judge,

I. *Introduction*

By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants —Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request." [2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

[2]
Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious

2010 WL 5185047

physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson[3] v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at \*1–\*2.

3 It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at \*1, \*7.

  - In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at \*1–\*2.

  - Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United

States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). Nelson v. Scoggy, No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. Nelson v. Scoggy, No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

[4]
Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the Scoggy action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [sic ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." Merriweather v. Reynolds, 586 F.Supp.2d 548, 552 (D.S.C.2008), citing Ciarpaglini v. Saini, 352 F.3d 328, 330 (7th Cir.2003) and White v. Colorado, 157 F.3d 1226, 1231–32 (10th Cir.1998); see also Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's

history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

[5]
Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

Nelson v. Scoggy, supra, 2009 WL 5216955 at *4. Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

## IV. Conclusion

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's in forma pauperis status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

## V. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. See also Fed.R.Civ.P. 6(a). Such objections (and

responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155

(1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

 © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 3858398
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Shariff ABBAS, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 10–CV–0141S.
|
Signed Aug. 1, 2014.

**Attorneys and Law Firms**

Shariff Abbas, Flushing, NY, pro se.

**DECISION and ORDER**

WILLIAM M. SKRETNY, Chief Judge.

**INTRODUCTION**

*1 Plaintiff Shariff Abbas commenced this *pro se* action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq., and other federal laws, alleging violation of his rights while detained at the Buffalo Federal Detention Facility ("BFDF") in Batavia, the Albany County Jail and the Perry County Correctional Center ("PCCC") in Uniontown, Alabama. Currently before the Court for review pursuant to 28 U.S.C. § 1915(e)(2)(B) is plaintiff's amended complaint [1], submitted in response to the Court's Order filed on August 16, 2013 ("August 16 Order") (Docket No. 6), which reviewed plaintiff's original complaint (Docket No. 4), dismissed several of the claims asserted therein, and granted plaintiff leave to file an amended complaint. For the reasons set forth below, plaintiff's FTCA claims against the United States related to his treatment at the BFDF may proceed and his remaining claims will be dismissed.

[1] Plaintiff's amended complaint is accompanied by two voluminous bound volumes of exhibits captioned "Exhibit [sic] Part 1", containing a Table of Contents and exhibits 1–18 and "Exhibit Part 2", containing a Table of Contents and exhibits 19–40. Given the voluminous nature of the exhibits, numbering hundreds of pages, and

the manner in which they are bound, which would make scanning them very difficult, the Court has not required the Clerk's Office to scan them into the court's electronic filing system. They will instead be maintained in paper form in a separate file in the Clerk's Office. *See* note to Docket No. 6.

**DISCUSSION**

A. *Bivens Claims*

The August 16 Order directed, *inter alia,* that plaintiff's FTCA claims stemming from his detention at the Albany County Jail and the PCCC be dismissed; that plaintiff be granted leave to file an amended complaint adding *Bivens* [2] or other federal claims against individual deportation officers and other personnel at BFDF who he alleges violated his rights; and that in the even he failed to timely file an amended complaint as directed, the Court would issue an Order directing service of the complaint upon the United States as the sole defendant to his medical malpractice claims brought under the FTCA. (Docket No. 5).

[2] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

The August 16 Order noted that in addition to his FTCA claims, plaintiffs original complaint asserted a variety of violations of his constitutional rights by individual deportation officers and other personnel during his periods of detention at BFDF and that these claims would be actionable against individual defendants under the *Bivens* doctrine, which allows a plaintiff to pursue constitutional claims against federal officials in their individual capacities for actions taken under color of federal law. *See Lombardi v. Whitman,* 485 F.3d 73, 78 (2d Cir.2007) ("[W]here an individual 'has been deprived of a constitutional right by a federal agent acting under color of federal authority,' the individual may bring a so-called *Bivens* action for damages against that federal agent in an individual capacity, provided that Congress has not forbidden such an action and that the situation presents 'no special factors counseling hesitation in the absence of affirmative action by Congress.' ") (internal citations omitted) (*quoting Thomas v. Ashcroft,* 470 F.3d 491, 496 (2d Cir.2006). The Court determined, however, that the *Bivens* claims could not proceed because of plaintiff's failure to name the individual custody officers and other officials who are alleged to have violated his rights as defendants in

the caption of the complaint, as required by Rule 10(a) of the Federal Rules of Civil Procedure:

> **\*2** The Court cannot allow such *Bivens* claims to proceed, however, because of plaintiff's failure to name the individual custody officers and other officials who are alleged to have violated his rights as defendants in the caption of the complaint. Rule 10 of the Federal Rules of Civil Procedure provides that "[t]he title of the complaint must name all the parties" Fed.R.Civ.P. 10(a). Therefore, a party that is not named in the caption of a complaint or amended complaint is not a party to the action.

(August 16 Order at 16) (citations omitted). The Court proceeded to note that plaintiff's failure to name in the caption of the complaint the individual defendants against whom he wished to assert *Bivens* claims would make it infeasible for the Court to determine which of the individual custody officers mentioned in the body of the complaint should be deemed to be defendants to such claims, given the often ambiguous nature of his reference to such individuals. (*Id.* at 16–17). The Court therefore concluded that "[t]he way to remedy plaintiff's failure to name as defendants in the caption of his complaint those individuals against whom he may seek to assert *Bivens* claims, as suggested by the allegations set forth in the body of the complaint, is to afford him leave to file an amended complaint which conforms to the requirements of Rule 10(a)." (*Id.* at 17) (citations omitted). "Accordingly, plaintiff will be afforded the opportunity to file, as directed below, an amended complaint in which he shall name in the caption of the complaint, each of the individuals against whom he intends to assert a *Bivens* claim or claims, in a manner that conforms to the requirements of Rules 8(a) and 10(a) of the Federal Rules of Civil Procedure." (*Id.*).

The Court accordingly directed, in the Conclusion of the August 16 Order, that plaintiff be given leave to file an amended complaint conforming to the requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure, and the Court again explicitly advised plaintiff of his duty to list all defendants in the caption of the complaint:

> Plaintiff is reminded, as explained above, that if he wishes to assert *Bivens* or other claims against defendants other than the United States in the amended complaint, *he must name those individuals in the caption of the amended complaint* and set forth

specific allegations with respect to how those individuals violated his rights.

(*Id.* at 21). (emphasis added).

While plaintiff's amended complaint contains allegations that would support *Bivens* claims (*see* Amended Complaint, ¶¶ 17–42 *passim* ),[3] it does not name in the caption of the complaint any individuals against whom plaintiff is seeking to assert *Bivens* clams, nor does the section of the complaint captioned "PARTIES" list any individual defendants. While plaintiff does, in the section of the amended complaint captioned "CONCLUSION," set forth a list of "Federal Employees from (BFDF) Health Division" (Amended Complaint ¶ 57), which includes individuals mentioned elsewhere in the amended complaint in connection with plaintiff's allegations that would be relevant to *Bivens* claims, the individuals named therein are not listed as defendants in the caption of the amended complaint or in plaintiff's recital of the parties to this action at the beginning of the amended complaint; as noted *supra,* plaintiff lists only one defendant-the United States-in the complaint caption and in his recital of the parties. Moreover, plaintiff's statement of relief sought at the end of the amended complaint (captioned "PRAYER") demands judgment "against *the defendant.*" (*Id.* at p. 16) (emphasis added).[4]

3    Plaintiff divides his claims into two sections of the amended complaint, namely "Medical Malpractice" (Amended Complaint, p. 3–5, ¶¶ 8–16), which contains allegations supportive of his FTCA claims, and "U.S. D.H.S.-ICE Agency and Custody Officers Abuses" (*Id.* at p. 5–14, ¶¶ 17–56), which contains allegations supportive of his *Bivens* constitutional claims. The Court notes, however, that a number of the allegations set forth in the "Federal Agency and Custody Officers Abuses" section of the complaint are relevant to his FTCA malpractice claims. *See, e.g.,* Amended Complaint, ¶ 21.

4    Plaintiff's failure to include in the caption of the amended complaint the names of any defendants against whom he is asserting *Bivens* claims is not the only instance of his disregard of the Court's directives regarding the form and content of his

amended complaint. The August 16 Order noted that many of the *Bivens* claims that plaintiff's allegations would support against individuals identified in the body of the complaint appeared to be barred by the statute of limitations. August 16 Order at 18. The Court accordingly directed as follows:

> In the amended complaint that plaintiff will be given leave to file, as provided below, in which he must demonstrate either that his *Bivens* claims stemming from his incarceration at BFDF are timely or, if any such Bivens claims are untimely, he must allege facts demonstrating why equitable tolling should be applied to the statute of limitations periods for such claims.

(August 16 Order at 19). As noted *supra,* the August 16 Order provided that plaintiff would be given leave to file an amended complaint with respect to his *Bivens* claims, and plaintiff was further advised, in this regard, "that he should address the timeliness of any *Bivens* claims that he asserts in the amended complaint and any argument as to why the limitations period applicable to such claims should be equitably tolled." (August 16 Order at 21). However, plaintiff's amended complaint does not address the timeliness issue or offer any basis for equitable tolling of the limitations period. Given the Court's dismissal herein of the *Bivens* claims based upon plaintiff's failure to identify the defendants against whom he seeks to assert such claims, the Court need not further address the timeliness issue.

Plaintiff further disregarded the August 16 Order to the extent that he reasserts claims stemming from his detention at the Albany County Jail from February 21, 2006–March 21, 2006, and the Perry County Correctional Center ("PCCC") in Uniontown Alabama from August 5, 2006–February 9, 2007. (Amended Complaint at ¶¶ 14, 15, 28–40). The August 16 Order dismissed the claims stemming from plaintiff's incarceration at those facilities pursuant to 28 U.S.C. § 1406(a) for improper venue. (August 16 Order at 13–14). Those claims remain dismissed.

**\*3** The Court's duty to construe liberally the pleadings of *pro se* litigants does not absolve *pro se* litigants from the duty to comply with the requirements of the Federal

Rules of Civil Procedure and court orders issued pursuant to those rules. *See, e .g., Caidor v. Onondaga County,* 517 F.3d 601, 605 (2d Cir.2008) (noting that *pro se* litigants are required to familiarize themselves with procedural rules and comply with such rules); *McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d 121, 124 (2d Cir.1988) ("[W]hile *pro se* litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including *pro ses,* have an obligation to comply with court orders. When they flout that obligation they, like all litigants, must suffer the consequences of their actions.")). As discussed *supra,* this Court's previous order explained to plaintiff the requirement of Rule 10(a) that all defendants to an action be named and identified as such in the caption of the complaint, and the Court afforded him the opportunity to cure the defect in his initial complaint by filing an amended complaint naming all defendants. Plaintiff has inexplicably failed to comply with the Court's order and the requirement of Rule 10(a). Accordingly, to the extent that plaintiff seeks to bring *Bivens* claims against individual Custody Officers and other BFDF officials, *see* Amended Complaint, ¶ 58 ("Plaintiff want [sic] this Court to bring Justice against Federal Agency Employees who Violate constitutional law against Plaintiff's rights"), such claims must be dismissed in light of his failure to name those individuals as defendants in the caption of the amended complaint. *See, e.g., Ferdik v. Bonzelet,* 963 F.2d 1258, 1262–63 (9th Cir.1992) (dismissing action for refusal to comply with court orders to name defendants in the caption as required by Rule 10(a)).

Moreover, as explained in the August 16 Order (pp. 14–15), constitutional claims under *Bivens* cannot be brought against the only defendant named in the complaint, the United States. *See Robinson v. United States Bur. Of Prisons,* 244 F.Supp.2d 57, 66 (N.D.N.Y.2003) ("[A] *Bivens* action may not be maintained against the United States.") (citing *Washington v. DEA,* 183 F.3d 868, 872 n. 8 (8th Cir.1999). Nor can constitutional claims be asserted against the United States under the FTCA. *See Washington,* 183 F.3d at 873; *Russ v. United States,* 62 F.3d 201, 204 (7th Cir.1995) ("[C]onstitutional wrongs cannot be remedied through the FTCA,") (citing *FDIC v. Meyer,* 510 U.S. 471, 476, 114 S.Ct. 996, 1001–02, 127 L.Ed.2d 308(1994)).

Plaintiff having thus having failed to name a proper defendant to his *Bivens* claims, the Court concludes that his *Bivens* claims must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief can be granted.

B. *Treaty Claims*

The Conclusion section of the amended complaint invokes, as a basis for relief against defendant United States not raised in plaintiff's original complaint, treaties to which the United States is a signatory. Specifically, the amended complaint states "At such time and places the United States violates International Laws as A[sic] result the United States are not in compliance with Refugee Convention Requirements or The United Nations Convention against Torture Prohibitions." (Amended Complaint, § 57). It is well established that the United Nations Convention Against Torture and Other Cruel, Inhumane or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, 23 I.L.M. 1027, ("CAT") does not give rise to a private right of action. *Renkel v. United States,* 456 F.3d 640, 644 (6th Cir.2006) ("As the Articles [of CAT] are not self-executing, they do not create private rights of action; therefore, any private lawsuit seeking to enforce the United States' obligations under the Convention must be based on domestic law."); *Wolinski v, Junious,* 2012 U.S. Dist. LEXIS 65889, at *18–19,2012 WL 1657576 (E.D.Cal. May 10, 2012) ("The CAT does not give rise to a private right of action because it is not self-executing.) (citing *Akhtar v. Reno,* 123 F.Supp.2d 191, 196 (S.D.N.Y.2000),

**\*4** The United Nations Convention Relating to the Status of Refugees, adopted July 28, 1951, art. 26, 19 U.S.T. 6259, 6576, 189 U.N.T.S. 150, 172 ("Refugee Convention") likewise does not create a private right of action. *United States v. Casaran–Rivas,* 311 Fed. Appx. 269, 272 (11th Cir.2009) (unpublished) ("[A]rgument that the indictment violated the refugee Convention and CAT Treaty is without merit, as the Refuge[e] Convention and CAT Treaty are not self-executing, or subject to relevant legislation, and, therefore, do not confer upon aliens a private right of action to allege a violation of their terms."); *Reyes–Sanchez v. Ashcroft,* 261 F.Supp.2d 276, 288–89 (S.D.N.Y.2003) ("Because the Refugee Convention is not self-executing, it does not create individual rights.").

Accordingly, plaintiff's claims against the United States under CAT and Refugee Convention are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief may be granted.

C. *FTCA Claims*

The medical malpractice-related claims under the FTCA asserted by plaintiff in the amended complaint and stemming from his detention at BFDF may go forward against defendant United States. [5]

[5]    As explained in the August 16 Order, plaintiff's allegations of medical malpractice and the failure to properly treat his serious medical condition are clearly cognizable under the FTCA when asserted against the United States. (August 16 Order at 6).

### *ORDER*

IT IS HEREBY ORDERED, that plaintiff's *Bivens* claims are dismissed with prejudice;

FURTHER, that plaintiff's claims under CAT and the Refugee Convention are dismissed with prejudice;

FURTHER, that the Clerk of the Court is directed to complete, on plaintiff's behalf, and to issue, a summons for service of process on defendant United States of America;

FURTHER, the Clerk of the Court is directed to send copies of the Summons, Amended Complaint, [6] and this Order by certified mail to the following, pursuant to Rule 4(i) of the Federal Rules of Civil Procedure:

[6]    As explained in n. 1, *supra,* plaintiff's voluminous exhibits to the amended complaint are maintained in paper form in a separate file folder in the Clerk's Office.

• Attorney General of the United States, Main Justice Building, 10th and Constitution Avenues N.W., Washington, DC 20530;

• Civil Process Clerk, United States Attorney for the Western District of New York, United States Attorney's Office, USAO/WDNY, 138 Delaware Avenue, Buffalo, New York 14202.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 3858398

---

**End of Document**                    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 2375814
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Vidal WHITLEY, Plaintiff,
v.
Major KRINSER, Sgt. Robin Brown, Captain
Winters, Corporal Conklin, Deputy Johnson,
Lt. Prinzi, Corporal Carlo, Lt. Santillo,
Sgt. Garcia, Major Kasacey, Corporal
Peck, and Deputy Galling, Defendants.

No. 06-CV-0575F.
|
Aug. 15, 2007.

**Attorneys and Law Firms**

Vidal Whitley, Willard, NY, pro se.

**DECISION and ORDER**

WILLIAM M. SKRETNY, United States District Judge.

**INTRODUCTION**

 **\*1** By an Order dated February 8, 2007, plaintiff *pro se* Vidal Whitley was granted permission to file a second amended complaint in this action pursuant to 42 U.S.C. § 1983 to specifically address issues relating to defendants Kasacey, Krinser and Peck. For the reasons stated below, plaintiff's second amended complaint is dismissed and the amended complaint is allowed to go forward at this stage against all named defendants except as to defendants Krinser, Kasacey and Peck.

**DISCUSSION**

Section 1915(e) (2)(B) of 28 U.S.C. provides that the Court shall dismiss a case in which *in forma pauperis* status has been granted if, at any time, the Court determines that the action "(ii) fails to state a claim upon which relief may be granted." Based on its evaluation of the complaint, the Court finds that plaintiff's claims against defendants Krinser, Kasacey and Peck must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)

(B)(ii) because they fail to state a claim upon which relief may be granted. Despite direction to specify what Krinser, Kasacey and Peck were responsible for, plaintiff's second amended complaint does not allege sufficient facts to state claims against Krinser, Kasacey and Peck.

In addition, plaintiff was directed that his second amended complaint "should name in the caption all of the people plaintiff wishes to hold responsible for each violation. Plaintiff has alleged that people who are not named in the caption were responsible for violation his rights. However, if these people are not also named in the caption of the second amended complaint, they will not be defendants in the case." (Docket No. 11.) Because plaintiff has not named any additional defendants in the second amended complaint, has not included the allegations against the remaining defendants named in his amended complaint, and has failed to state a claim against Krinser, Kasacey and Peck, the second amended complaint is dismissed in its entirety. However, because of plaintiff's *pro se* status and his minimal literacy, the Court will deem the amended complaint the operative pleading in this case and allow it to proceed against all named defendants except Krinser, Kasacey and Peck.

**CONCLUSION**

For the reasons set forth above, plaintiff's claims against defendants Krinser, Kasacey and Peck are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and the amended complaint shall be served on the remaining defendants set forth in the caption above.

**ORDER**

IT HEREBY IS ORDERED, that the claims against Krinser, Kasacey and Peck are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B); and,

FURTHER, the Clerk of the Court is directed to correct the docket to reflect that Sgt. Robin Brown, Captain Winters, Corporal Conklin, Deputy Johnson, Lt. Prinzi, Corporal Carlo, Lt. Santillo, Sgt. Garcia and Deputy Galling are defendants in this action; and,

FURTHER, the Clerk of the Court is directed to cause the U.S. Marshal to serve the amended complaint (Docket No. 10) and this Order upon the remaining defendants, Sgt. Robin Brown,

2007 WL 2375814

Captain Winters, Corporal Conklin, Deputy Johnson, Lt. Prinzi, Corporal Carlo, Lt. Santillo, Sgt. Garcia and Deputy Galling.

**\*2**  SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 2375814

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

2018 WL 10550308
Only the Westlaw citation
is currently available.
United States District
Court, N.D. New York.

Zhordrack BLOODYWONE also known
as Zhordrack Blodywon, Plaintiff,
v.
Joseph BELLNIER, et al., Defendants.

9:18-CV-0615 (GTS/DJS)
|
Signed 10/17/2018

**Attorneys and Law Firms**

ZHORDRACK BLOODYWONE, 16-A-1980,
Plaintiff, pro se, Green Haven Correctional
Facility, P.O. Box 4000, Stormville, NY 12582.

**DECISION and ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District
Judge

## I. INTRODUCTION

**\*1** The Clerk has sent to the Court for review
a Complaint filed by pro se plaintiff Zhordrack
Bloodywone ("Plaintiff") pursuant to 42
U.S.C. § 1983 ("Section 1983"), asserting
claims arising out of his confinement in the
custody of the New York State Department
of Corrections and Community Supervision
("DOCCS"). Dkt. No. 1 ("Compl."). Plaintiff
has also filed motions for appointment of
counsel, default judgment, and a stay of the
proceedings. Dkt. Nos. 5, 6 and 19.

Plaintiff commenced this action in February
2018 in the United States District Court for
the Eastern District of New York ("Eastern
District") by filing a Complaint and In Forma
Pauperis Application. Dkt. Nos. 1 ("Compl.")
and 2 ("IFP Application"). By Order filed on
May 24, 2018, United States District Judge
Kiyo A. Matsumoto of the Eastern District
transferred this action to the Northern District
of New York ("Northern District"). Dkt. No.
11 ("Transfer Order"). A decision on Plaintiff's
IFP Application was reserved for the transferee
court. *Id.* at 4.

## II. IFP APPLICATION [1]

"28 U.S.C. § 1915 permits an indigent
litigant to commence an action in a federal
court without prepayment of the filing fee
that would ordinarily be charged." *Cash
v. Bernstein*, No. 09-CV-1922, 2010 WL
5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). [2]
"Although an indigent, incarcerated individual
need not prepay the filing fee at the time of
filing, he must subsequently pay the fee, to the
extent he is able to do so, through periodic
withdrawals from his inmate accounts." *Id.*
(citing 28 U.S.C. § 1915(b) and *Harris v. City
of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review of Plaintiff's IFP Application, the
Court finds that he has demonstrated sufficient
economic need. *See* 28 U.S.C. § 1915(a)(2).
Plaintiff has also filed the inmate authorization
form required in this District. *See* Dkt. No. 18.
Accordingly, the Court grants Plaintiff's IFP
Application.

## III. SUFFICIENCY OF THE COMPLAINT

### A. Governing Legal Standard

Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[3] Thus, even if a plaintiff meets the financial criteria to commence an action in forma pauperis, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action in forma pauperis. *See id.*

 *2 Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

Additionally, when reviewing a complaint, the court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

*Id.* (citing Twombly, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

### B. Summary of the Complaint [4]

In November 2016, while confined at Great Meadow Correctional Facility ("Great Meadow C.F."), Plaintiff was assaulted by Corrections Officer T. Bushey and a "gang" of corrections officers. Compl. at 4. The incident occurred in the "frisk area" as Plaintiff was waiting to visit with his family. [5] *Id.* Plaintiff suffered a swollen eye and twisted ankle and wrist. *Id.* Plaintiff's request for sick call was ignored. Dkt. No. 4 at 3.

On April 6, 2017, Plaintiff filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Southern District of New York ("Southern District") challenging his 2016 conviction in the New York State Supreme Court, Queens County. On April 28, 2017, the Southern District transferred the action to the Eastern District. *Bloodywone v. Marcy Corr. Fac.*, No. 1:17-CV-2797, Dkt. No. 1 (E.D.N.Y. Apr. 6, 2017). On April 4, 2018, the petition was dismissed, without prejudice, as premature. *Id.*, Dkt. No. 17 (E.D.N.Y. April 5, 2018). Judgment was entered accordingly. *Id.*, Dkt. No. 18. On April 23, 2018, Plaintiff filed a Notice of Appeal with the Second Circuit. *Id.*, Dkt. No. 20.

**\*3** In May 2017, Plaintiff was confined in DOCCS custody at Great Meadow C.F. [6] Compl. at 4. Plaintiff claims that defendants DOCCS, Commissioner Joseph Bellnier ("Bellnier") and Superintendent Christopher Miller ("Miller") violated an Order issued by Judge Matsumoto on May 9, 2017 directing that he be released. *Id.*

While confined at Great Meadow C.F., Plaintiff refused a TB test and, as a result, he was punished by starvation, isolation, and denied visitation. *Id.* In April 2018, Plaintiff was transferred to Green Haven Correctional Facility. Dkt. No. 8.

Plaintiff seeks an Order releasing him from DOCCS' custody. Compl. at 5. Construing the Complaint liberally, Plaintiff also asserts Eighth Amendment claims related to his confinement. *See generally,* Compl. For a complete statement of Plaintiff's claims and the facts he relies on in support of those claims, reference is made to the Complaint.

### C. Nature of Action

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at \*2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[ Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). " Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established

elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

The Court will construe the allegations in the Complaint with the utmost leniency. *See, e.g.,* *Haines v. Kerner,* 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

## IV. ANALYSIS

### A. Request for Release

Plaintiff is presently in DOCCS' custody and was in DOCCS' custody when he filed this civil action. *See generally,* Compl. Plaintiff filed this civil rights action seeking to be released from custody. Construing the Complaint liberally, Plaintiff alleges that defendants violated his Fourteenth Amendment rights by refusing to obey a court order providing for his release. *See* Compl. at 5. Plaintiff claims that his petition for habeas relief was granted and that defendants are illegally detaining him in violation of a Court Order. *See id.* As discussed *supra,* the Eastern District dismissed Plaintiff's habeas petition, without prejudice, because Plaintiff had not exhausted his state remedies. *See Bloodywone v. Marcy Corr. Fac.,* No. 1:17-CV-2797, Dkt. No. 17 (E.D.N.Y. Apr. 4, 2018). In the Order, the Court noted:

> Throughout the submissions before the Court, Petitioner appears confused about the status of his criminal case. (*See e.g.* Petition, EOF No. 15 at 2 (stating that

the S.D.N.Y. dismissed the charges in 17-CV-2557) and Letter, EOF No. 12 at 1 (requesting release pursuant to an order in this case.)) The court clarifies and advises Mr. Bloodywone that there is no order in this case. Civil Docket Number 1:17-CV-2797, authorizing Mr. Bloodywone's release. Nor is there any order in this case when it was before the S.D.N.Y., Civil Docket Number 17-CV-2557, that dismissed the charges against petitioner. Mr. Bloodywone presented any state court decision that resulted in, nor has the Court's review of state court records revealed, any alteration to the convictions at issue in this case.

**\*4** *Bloodywone v. Marcy Corr. Fac.*, No. 1:17-CV-2797, Dkt. No. 17 at 5.

On April 23, 2018, Plaintiff filed an appeal in the Second Circuit. *See Bloodywone v. Marcy Corr. Fac., et al.,* No. 18-1250, Dkt. No. 1 (2d Cir. 2018). The appeal is pending. *Id.*, Dkt. No. 37. Accordingly, Plaintiff's Fourteenth Amendment claims lack merit.

Additionally, because Plaintiff seeks to be released, *see* Compl. at 5, his claims are dismissed without prejudice pursuant to *Heck v. Humphrey*, 512. U.S. 477 (1984), on the

ground that habeas corpus is his sole federal remedy. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); *see also Channer v. Mitchell*, 43 F.3d 786, 787 (2d Cir. 1994) ("habeas corpus—not a § 1983 action— provides the sole federal remedy where a state prisoner challenges the fact or duration of his imprisonment[.]"); *Jenkins v. Daubert*, 179 F.3d 19, 23 (2d Cir. 1999) ("[W]here the fact or duration of a prisoner's confinement is at issue, § 1983 is unavailable, and only [habeas relief under 28 U.S.C.] § 2254(b) with its exhaustion requirement may be employed."). The Court will not sua sponte convert this action into a petition for habeas corpus relief. *See Romer v. Travis*, No. 00 CIV 8671, 2001 WL 220115, at *3 (S.D.N.Y. Jan. 31, 2001) ("Conversion, initially justified because it harmlessly assisted the prisoner-movant in dealing with legal technicalities, may result in a disastrous deprivation of a future opportunity to have a well-justified grievance adjudicated."). Although Plaintiff styles his pleading as a civil rights "complaint," § 1983 does not provide a remedy for Plaintiff's claims.

### B. Eighth Amendment Claims

Construing the Complaint liberally, Plaintiff alleges that he was subjected to the excessive use of force, his medical needs were deliberately ignored, and his conditions of confinement were unconstitutional. *See generally*, Compl.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the alleged constitutional violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly

negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)* (citing *Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986))*.[7] Plaintiff cannot premise Section 1983 liability on a defendant's position in the prison hierarchy. *See Colon, 58 F.3d at 874.* "A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates." *Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001)* (citations and internal quotations omitted).

**\*5** Plaintiff has not alleged any facts indicating that Bellnier, Miller, Commissioner Anthony Annucci ("Annucci"), Superintendent Phil Melecio ("Melecio"), and Superintendent Matthew Thoms ("Thoms") directly participated in the alleged excessive force incident, the deprivation of medical care, the conditions of confinement or had any personal knowledge of the alleged constitutional violations. It appears that Plaintiff has named defendants solely because of defendants' positions within DOCCS, which is insufficient to demonstrate personal involvement. Indeed, while Plaintiff names Annucci, Melecio, and Thoms in the list of parties, the Complaint is void of any reference to these individuals. In the absence of factual allegations sufficient to plausibly suggest

that defendants were personally involved in conduct that violated Plaintiff's constitutional rights, the Complaint fails to state a cognizable claim against them and is subject to dismissal. *See Cipriani v. Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, \*1 (N.D.N.Y. Feb. 20, 2007)* ("[d]ismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff") (citation omitted).

Based upon the foregoing, the Court finds that the Complaint fails to state a claim against upon which relief may be granted. Thus, defendants, and all claims against them, are subject to dismissal without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.[8]

## V. MOTION FOR COUNSEL

Plaintiffs bringing civil actions have no constitutional right to the appointment of counsel. *See, e.g., United States v. Coven, 662 F.2d 162, 176 (2d Cir. 1981).* However, pursuant to 28 U.S.C. § 1915(e), the court may request an attorney to represent an indigent party. 28 U.S.C. § 1915(e)(1) (authorizing the court to "request an attorney to represent any person unable to afford counsel.").[9] Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin, 114 F.3d 390, 392-93 (2d Cir. 1997).* Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

[The Court] should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

**\*6** *Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers,* 802 F.2d 58, 61 (2d Cir. 1986)) (internal quotation marks omitted). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe,* No. 93-CV-1449 (TJM) 899 F.Supp. 972, 974 (N.D.N.Y. Oct. 16, 1995) (citing *Hodge,* 802 F.2d at 621). The Court must consider the issue of appointment carefully because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available

for a deserving cause." [10] *Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170, 172 (2d Cir. 1989).

In the present case, the Court has found that the Complaint is insufficient and that he must file an amended pleading for this action to proceed. Since Plaintiff has failed to establish that his claim is likely to be of substance, the Court denies his motion for appointment of counsel without prejudice. After the Court has accepted an amended complaint for filing, defendants have responded to the allegations in Plaintiff's amended complaint, and the parties have undertaken discovery, Plaintiff may choose to file a new motion for appointment of counsel, at which time the Court may be better able to determine whether such appointment is warranted in this case. Plaintiff is advised that any future motion for appointment of counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector. *See Terminate Control Corp.,* 28 F.3d at 1341; *Cooper v. Sargenti Co., Inc.,* 877 F.2d 170, 172, 174 (2d Cir. 1989). Thus, Plaintiff's motion for the appointment of counsel (Dkt. No. 19) is denied.

## VI. MOTION FOR DEFAULT

Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestly v. Headminder, Inc.,* 647 F.3d 497, 504 (2d Cir. 2011). First, under Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P. 55(a); *see also* Local Rule 55.1. Second, under Rule 55(b)(2) the plaintiff must "apply to the court for entry of a default judgment." *Priestly,* 647 F.3d at 505; *see also* Local

Rule 55.2(b). "The dispositions of motions for entries of defaults and default judgments ... are left to the sound discretion of the district court because it is in the best position to assess the circumstances of the case and to evaluate the good faith of the parties." *Shah v. New York State Dep't Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (citation omitted). There is a "strong preference for resolving disputes on the merits." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

As an initial matter, Plaintiff's failure to request an entry of default by the Clerk of the Court in accordance with Rule 55(a) of the Federal Rules of Civil Procedure prior to filing his motion for entry of a default judgment requires that his motion be denied. *See American Alliance Ins. Co., Ltd. v. Eagle In. So.*, 92F. 3d 57, 59 (2nd Cir. 1996). However, even if the Court were to construe Plaintiff's application as one seeking entry of default, because the Complaint is dismissed without prejudice, Plaintiff's request is denied because defendants are not in default.

## VII. MOTION FOR PURSUANT TO 28 U.S.C. § 2101(f)

**\*7** Plaintiff moves for a "stay (bail pending appeal)" pursuant to 28 U.S.C. § 2101(f). *See* Dkt. No. 5. Because 28 U.S.C. § 2101 relates to appeals to the United States Supreme Court, [11] the Court assumes Plaintiff moves for a stay pending the Second Circuit's decision of his appeal in *Bloodywone v. Marcy Corr. Fac.*, No. 18-1250 (2d Cir. 2018).

In deciding a motion for a stay pending appeal, the Court considers whether: (1) the applicant

will be irreparably injured absent a stay; (2) issuance of the stay will substantially injure the other parties interested in the proceeding; (3) the stay applicant has made a strong showing that he is likely to succeed on the merits; and (4) the stay is in the public interest. *In re World Trade Center Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007).

Because the Complaint is dismissed, Plaintiff's motion for a stay of proceedings is denied as moot.

## VIII. CONCLUSION
**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's in forma pauperis application (Dkt. No. 17) is **GRANTED**; [12] and it is further

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by Plaintiff as his current location, with a copy of Plaintiff's Inmate Authorization, and notify the official that this action has been filed and that Plaintiff is required to pay the Northern District of New York the statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of Plaintiff's Inmate Authorization to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED**, that pursuant to the Court's review under 28 U.S.C. § 1915A, Plaintiff's claims are **DISMISSED without prejudice** for

failure to comply with the pleading standards and state a claim; and it is further

**ORDERED** that if Plaintiff wishes to proceed with this action, he must file a signed amended complaint that cures the pleading defects identified above in this Decision and Order; and it is further

**ORDERED** that, upon Plaintiff's full compliance with this Decision and Order, the Clerk shall return the file to this Court further review; and it is further

**ORDERED** that if Plaintiff fails to fully comply with the terms of this Decision and Order **within thirty (30) days** from its filing date, the Clerk shall enter Judgment indicating that this action is **DISMISSED, without further order of this Court**, pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim

upon which relief may be granted; and it is further

 **\*8 ORDERED** that Plaintiff's motion for the appointment of counsel (Dkt. No. 19) is **DENIED**; and it is further

**ORDERED** that Plaintiff's motion for a default judgment (Dkt. No. 6) is **DENIED**; and it is further

**ORDERED** that Plaintiff's motion for a stay (Dkt. No. 5) is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.

### All Citations

Slip Copy, 2018 WL 10550308

---

## Footnotes

1    On May 29, 2018, the case was administratively closed due to Plaintiff's failure to submit a certified IFP Application and required Inmate Authorization Form. Dkt. No. 13. On August 23, 2018, after Plaintiff provided a second IFP Application and Inmate Authorization Form, the case was reopened. Dkt. Nos. 17, 18, 20.

2    Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

3    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." 🔖 *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

4    The Complaint includes exhibits. *See* Dkt. Nos. 4, 9, 15. To the extent that the exhibits are relevant to the incidents described in the Complaint, the Court will consider the Complaint as well as any documents attached as exhibits. *See* 🔖 *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

5    From November 2016 until October 2017, Plaintiff was not permitted to visit with his family. Dkt. No. 9 at 3.

6    From January 2017 until March 2017, Plaintiff was confined at Marcy Correctional Facility. Dkt. No. 9 at 2.

7    The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See* 🔖 *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that Iqbal may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*"); *see also* 🔖 *Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]") (citing 🔖 *Grullon*, 720 F.3d at 139).

8    In the Complaint, Plaintiff refers to T. Bushey. *See* Compl. at 4; Dkt. No. 4 at 3. Plaintiff does not, however, identify this individual as a defendant in the caption of his Complaint or in the list of parties. Rule 10(a) of the Federal Rules of Civil Procedure requires that all defendants be listed in the caption of the complaint. The rule provides that, "the title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). A party not named in the caption of the complaint is not a party to the action. *Abbas v. U.S.*, No. 10-CV-0141, 2014 WL 3858398, at *2 (W.D.N.Y. Aug. 1, 2014) (the failure to name a party in the caption makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims). "If people are not also named in the caption of the [ ] complaint, they will not be defendants in the case." *See Whitley v. Krinser*, No. 06-CV-0575, 2007 WL 2375814, at *1 (W.D.N.Y. Aug. 15, 2007); *Robles v. Armstrong*, No. 3:03-CV-1634, 2006 WL 752857, at *1 n.1 (D. Conn. Mar. 17, 2006) ("The plaintiff refers to John Doe/Jane Doe of the Correctional Managed Health Care Program and John Doe/Jane Doe Members of the Revitalization Committee in the body of the amended complaint. Because the

John and Jane Does are not listed in the caption of the amended complaint, they are not defendants and the court does not consider claims against them.").

9   Actual appointment of counsel is contingent upon the availability of pro bono counsel to accept an appointment. "If no [one] agrees to represent the plaintiff, there is nothing more the Court can do." *Rashid v. McGraw*, No. 01CIV10996, 2002 WL 31427349, at *1 n.1 (S.D.N.Y. Oct. 29, 2002).

10   The court is authorized only to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see Mallard v. United States District Court*, 490 U.S. 296, 298 (1989). Section 1915(e) does not, however, permit a federal court to require an unwilling attorney to represent an indigent litigant in a civil case. *See Mallard*, 490 U.S. at 298, 309.

11   Subsection (f) provides:

In any case in which the final judgment or decree of any court is subject to review by the Supreme Court on writ of certiorari, the execution and enforcement of such judgment or decree may be stayed for a reasonable time to enable the party aggrieved to obtain a writ of certiorari from the Supreme Court. The stay may be granted by a judge of the court rendering the judgment or decree or by a justice of the Supreme Court, and may be conditioned on the giving of security, approved by such judge or justice, that if the aggrieved party fails to make application for such writ within the period allotted therefor, or fails to obtain an order granting his application, or fails to make his plea good in the Supreme Court, he shall answer for all damages and costs which the other party may sustain by reason of the stay.

12   Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

---

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.