UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SAYVION D. BLOUNT,

                                  Plaintiff,

                                                                    5:20-CV-0937
v.                                                                  (GTS/TWD)

COUNTY OF ONONDAGA, et al.,

                                  Defendants.
_____

APPEARANCES:

SAYVION D. BLOUNT
     Plaintiff, *pro se*
DIN 20-A-1115
Fishkill Correctional Facility
P.O. Box 1245
Beacon, NY 12508

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

## I.    INTRODUCTION

On October 19, 2020, this Court granted Sayvion D. Blount's ("Plaintiff") motion to proceed *in forma pauperis* and recommended his Complaint brought pursuant to 28 U.S.C. § 1983, against the City of Syracuse, the County of Onondaga, the Hon. Mary Anne Doherty, Timothy Roulan, Joseph Centra, Janelle N. Ecker, Hon. Thomas J. Miller, Assistant District Attorney ("ADA") Colin Lynch, Ian Duquette, and Andrew Torrance be *sua sponte* dismissed in its entirety pursuant to 28 U.S.C. § 1915(e); and that Plaintiff's claims against Judge Doherty, Judge Miller, and ADA Lynch be dismissed with prejudice based on the doctrine of absolute immunity; and that Plaintiff's remaining Section 1983 claims be dismissed without prejudice and

with leave to amend for failure to state a claim.  (Dkt. No. 8.)  It was further recommended that the District Court decline to exercise supplemental jurisdiction over any state law claims.  *Id.* Plaintiff filed objections to the Report- Recommendation and an "Amendment to the Complaint."  (Dkt No. 13, 14.)

By Decision and Order entered March 15, 2021, the Honorable Glenn T. Suddaby, Chief United States District Judge, accepted and adopted the Report-Recommendation in its entirety, and Plaintiff's "Amendment to the Complaint" was rejected and stricken from the docket.  (Dkt. No. 15.)  Plaintiff was afforded thirty (30) days to file an Amended Complaint that cured the pleading defects identified in that Decision and Order (and the Report-Recommendation).  *Id.*  It was further ordered that failure to do so would result in Plaintiff's Section 1983 claims being *sua sponte* dismissed with prejudice (and his state law claims would be dismissed without prejudice to refiling in state court within the governing time period).  *Id.*

Plaintiff's timely-filed Amended Complaint (Dkt. No. 16) has been referred to this Court for review of its pleading sufficiency pursuant to 28 U.S.C. § 1915(e).  (Dkt. No. 15.)  For the reasons set forth below, the Court recommends the Amended Complaint (Dkt. No. 16) be *sua sponte* dismissed in its entirety and without further leave to amend for failure to state a claim.

## II.    SUFFICIENCY OF THE AMENDED COMPLAINT

### A.    Standard of Review

28 U.S.C. § 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[1]

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A.

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation."  *Id*. In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.

---

[1]  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

A *pro se* litigant's pleadings are held to a less strict standard than attorney drafted pleadings. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, *pro se* litigants are held to a lesser pleading standard than other parties."). Because plaintiff is proceeding *pro se*, the Court construes her pleadings "to raise the strongest arguments that they suggest." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (internal quotation marks omitted); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). However, this "does not exempt a [*pro se* litigant] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). Moreover, a court should not dismiss a *pro se* complaint "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## B.    Analysis

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. (Dkt. No. 16.) To state a claim under Section 1983, a plaintiff must show that the challenged conduct was committed by a person acting under color of state law and that such conduct "deprived [him] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

After carefully reviewing the Amended Complaint, the Court finds Plaintiff has failed to cure the pleading defects identified in Judge Suddaby's Decision and Order (and the Report-Recommendation). As a threshold issue, the Amended Complaint fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure and Chief Judge Suddaby's Decision & Order. Plaintiff was previously advised that "[a] party not named in the caption of the complaint is not a party to the action." (Dkt. No. 8 at 5 n.4.) *See also Bloodywone v. Bellnier*, No. 9:18-CV-0615 (GTS/DJS), 2018 WL 10550308, at 5 n.8 (N.D.N.Y. Oct. 17, 2018) (citing *Abbas v. United States*, No. 10-CV-0141, 2014 WL 3858398, at *2 (W.D.N.Y. Aug. 1, 2014) (the failure to name a party in the caption makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims")); *Whitley v. Krinser*, No. 06-CV-0575, 2007 WL 2375814, at *1 (W.D.N.Y. Aug. 15, 2007) ("If people are not also named in the caption of the [ ] complaint, they will not be defendants in the case."). The Amended Complaint lacks a caption and a demand for relief. Plaintiff was "respectfully reminded that such an Amended Complaint must be a *complete pleading* that does not incorporate by reference his original Complaint." (Dkt. No. 15 at 8, emphasis added.) He was "also respectfully advised that he should use numbered paragraphs to separate each alleged occurrence as required by Fed. R. Civ. P. 10(b)[,]" yet largely failed to do so. *See id.* Construed liberally, the Amended Complaint lists six "claims." (Dkt. No. 16 at 6-7.[2]) The Court addresses each in turn.

---

[2] Page references to documents identified by docket number refer to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

1.      **Judge Doherty**

In the First Claim, Plaintiff alleges Judge Doherty "acted outside her judicial capacity violating [his] 8th and 14th Amendment right to due process in a criminal proceeding[.]" (Dkt. No. 16 at 8.) As set forth above, Plaintiff's Section 1983 claims against Judge Doherty were "*sua sponte* **DISMISSED with prejudice** based on absolute immunity and failure to state a claim pursuant to 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A[.]" (Dkt. No. 15 at 8.) Consequently, any such claims against Judge Doherty are not properly before the Court.

In any event, the factual allegations of the Amended Complaint, like the original Complaint, plausibly suggest that, at the time of the events giving rise to Plaintiff's claims, Judge Doherty was acting within the scope of her judicial capacity (however much he disagrees with her actions) and, therefore, she is entitled to absolute immunity. (*See* Dkt. No. 16 at 1, 2, 8.) Therefore, to the extent that Plaintiff's Amended Complaint attempts to bring Section 1983 claims against Judge Doherty, the Court again recommends dismissal with prejudice based on absolute immunity and failure to state a claim pursuant to 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

2.      **Ian Duquette and Andrew Torrance**

In his Second Claim, Plaintiff alleges Ian Duquette and Andrew Torrance, identified as private citizens and *not* members of the Syracuse Police Department, "acted under color of state law" and violated his constitutional rights "when acting in tandem with the Syracuse Police voluntarily assaulted [Plaintiff] in an attempt to vigilantly conduct a citizen's arrest" causing

Plaintiff's physical injuries, emotional distress, and mental anguish.  (Dkt. No. 16 at 1, 3, 8.[3])
He states he has a "right to be free from assault" and a right to "equal protection."  *Id*.

    As noted, to state a claim under Section 1983, the plaintiff must allege both that the
defendant has violated plaintiff's rights under either the Constitution or laws of the United
States and that the defendant acted "under color of state law."  *See Rae v. City of Suffolk*, 693 F.
Supp. 2d 217, 223 (E.D.N.Y. 2010).  Private conduct is beyond the reach of Section 1983 "no
matter how discriminatory or wrongful" that conduct may be.  *See American Mfrs. Mut. Ins. Co.
v. Sullivan*, 526 U.S. 40, 49-50 (1999).  To establish state action, Plaintiff must show that the
person who caused his constitutional deprivation "'may fairly be said to be a state actor.'"
*Grogan v. Blooming Grove Volunteer Ambulance Corps*, 768 F.3d 259, 264 (2d Cir. 2014)
(quoting *Cranley v. Nat'l Life Ins. Co. of Vt*., 318 F.3d 105, 111 (2d Cir. 2003)).  State action
requires a showing that "the 'allegedly unconstitutional conduct is fairly attributable to the
State.'"  *Id*. (quoting *Sullivan*, 526 U.S. at 50).  When a plaintiff contends that a private actor
violated his rights, the plaintiff proves state action "by demonstrating that 'there is such a close
nexus between the State and the challenged action' that seemingly private behavior 'may be
fairly treated as that of the State itself.'"  *Id*. (quoting *Brentwood Acad. v. Tenn. Secondary Sch.
Athletic Ass'n*, 531 U.S. 288, 295 (2001)).

    Here, Plaintiff claims that on Septmeber 22, 2019, these two private individuals
"believing that [Plaintiff] had just committed a crime based off the information given to them
by another person, vigilantly came and found [him] at the Gas Station, reporting that a crime
had been committed, then came into the Gas Station and assaulted [Plaintiff] with closed fist

---

    [3]  Plaintiff notes that either Duquette or Torrance is a member of the U.S. Army Reserve
Corp.  (Dkt. No. 16 at 8.)

punching, tackling [him] to the floor and continued to punch and kick [him] and obstruct [his] breathing until the Syracuse Police arrived to the scene." (Dkt. No. 16 at 3.) However, none of Plaintiff's allegations transform the alleged actions taken by Duquette and Torrance into "state action." The allegations of assault occurred prior to the arrival of the Syracuse Police and "it is well-established that private citizens may effectuate arrests without becoming state actors." *Forbes v. City of N.Y.*, No. 05-CV-7331 (NRM), 2008 WL 3539936, at *5 (S.D.N.Y. Aug. 12, 2008) (collecting cases); *see also Walters v. Suffolk Cty.*, No. 09-CV-556 (MKB), 2014 WL 940734, at *8 (E.D.N.Y. Mar. 11, 2014) (collecting cases in support of the proposition that "[d]etaining a supposed criminal while police respond does not expose a private actor to § 1983 liability").

Therefore, the Court recommends dismissing Plaintiff's Section 1983 claims brought against Duquette and Torrance for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). Because Plaintiff has already been given the opportunity to amend, the Court recommends such dismissal be with prejudice. (*See* Dkt. No. 15 at 8-9.)

### 3.    Syracuse Police Department

In his Third Claim, Plaintiff alleges the Syracuse Police Department violated his rights under the constitutional rights and denied him "equal protection." (Dkt. No. 16 at 8.) However, under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (dismissing Secition 1983 claim brought against the Lynbrook Police Department); *see also La Grande v. Town of Bethlehem Police Dep't*, No. 1:08-CV-0738 (LEK/DRH), 2009 WL 2868231, at *2 (N.D.N.Y. Sept. 1, 2009) ("Since the Bethlehem Police Department cannot be sued pursuant to

42 U.S.C. § 1983, [the plaintiff's] [c]omplaint is dismissed as against the Town of Bethlehem

Police Department."); *Jenkins v. Liadka*, No. 5:10-CV-1223 (GTS/DEP), 2012 WL 4052286, at

*5 (N.D.N.Y. Sept. 13, 2012) ("Because the Syracuse Police Department is merely an

administrative arm of the City of Syracuse, it is not a proper defendant.").

Therefore, the Court recommends dismissing Plaintiff's Section 1983 claims brought

against the Syracuse Police Department for failure to state a claim pursuant to 28 U.S.C. §

1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  Because better pleading would not cure this defect,

the Court recommends such dismissal be with prejudice.

### 4.    City of Syracuse

In his Fourth Claim, Plaintiff alleges the "City of Syracuse is liable for the deprivation of

his constitutional rights due to policies or customs that ha[ve] resulted in the inadequate training,

supervision, and luring of the Syracuse police who responded to the scene and call on September

22, 2019, at the Syracuse Gas Station on or near Almond Street and Erie Blvd. at approximately

12:00 p.m. in which [Plaintiff] was physically assaulted and obstructed of breathing inside the

Gas Station by Ian Duquette and Andrew Torrance resulting in [his] multiple injuries amounting

to deliberate indifference to [his] constitutional rights."  *Id.*  Plaintiff claims the City of Syracuse

is liable for the actions taken by the Syracuse Police Department and individual officers

responding to the scene.  *Id.* at 7.

Pursuant to the standard for establishing municipal liability laid out in *Monell v. Dep't of

Soc. Servs. of the City of New York*, 436 U.S. 658 (1978), in order to set forth a cognizable claim

for municipal liability under Section 1983, a plaintiff must plead and prove that a deprivation of

his constitutional rights "was caused by a governmental custom, policy, or usage of the

municipality."  *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436

U.S. 658); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer.").  A municipality may be liable for deprivation of constitutional rights under Section 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact.  *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989).  A plaintiff must also establish a causal connection – an affirmative link–between the policy and the deprivation of his constitutional rights.  *Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985) (plurality opinion).  Indeed, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it "may not be held liable on a theory of *respondeat superior*."  *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000).

Critically, "a prerequisite to municipal liability under *Monell* is an underlying constitutional violation by a state actor."  *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 567 (S.D.N.Y. 2010).  As the Second Circuit has noted, "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."  *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *see also id*. (noting that once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [is] entirely correct").

Here, although Plaintiff asserts that the allegedly wrongful acts or omissions on the part of unidentified Syracuse police officers are attributable to a municipal policy or custom, nothing

in his Amended Complaint suggests facts in support of such a conclusion. *See Nielsen v. City of Rochester*, 58 F. Supp. 3d 268, 277 (W.D.N.Y. 2014) (conclusory allegations which merely recite the elements for stating a *Monell* claim are insufficient to state a claim for municipal liability) (citing, *inter alia*, *Genovese v. Town of Southhampton*, 92 F. Supp. 2d 8, 25 (E.D.N.Y. 2013)). "Custom denotes persistent and widespread practices, and thus proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*[.]" *Ahern v. City of Syracuse*, 411 F. Supp. 2d 132, 139 (N.D.N.Y. 2006) (punctuation and citation omitted). As the Second Circuit has made clear, "isolated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (citing *Villante v. Dep't of Corr.*, 786 F.2d 516, 519 (2d Cir. 1986)); *see also Henderson v. Town of Greenwich*, 317 F. App'x 46, 47 (2d Cir. 2009) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*.") (quoting *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985)).

Therefore, the Court recommends dismissal of Plaintiff's Section 1983 claims against the City of Syracuse for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). Because Plaintiff has already been given the opportunity to amend, the Court recommends such dismissal be with prejudice. (*See* Dkt. No. 15 at 8-9.)

### 5. Onondaga County Sheriff's Department

In his "Fifth Claim," Plaintiff alleges the Onondaga County Sheriff's Department "was deliberately indifferent to [his] medical needs amounting to unconstitutional conditions of confinement when on 9/22/19 [Plaintiff] came to the Justice Center visibly injured due to being

assaulted where [he] again was assaulted by a sheriff's deputy by use of excessive force, then denied medical attention." *Id.* at 7.

However, as discussed in Part II.B.3 above, under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued. *See also Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (dismissing claims against county sheriff's department) (citations omitted); *see also Lukes v. Nassau Cty. Jail*, No. 12-CV-1139, 2012 WL 1965663, at *2 (E.D.N.Y. May 29, 2012) (dismissing claims against the Nassau County Jail because it "is an administrative arm of Nassau County, without a legal identity separate and apart from the County").

Therefore, the Court recommends that Plaintiff's Section 1983 against the Onondaga County Sheriff's Department be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

### 6. County of Onondaga

In his "Sixth Claim," Plaintiff alleges the County of Onondaga is "liable for the actions and inactions taken due to no supervision, improper training and customs and actions taken by the Onondaga County's Sheriff's deputies and medial staff members on 9-22-19 when [he] entered the Justice Center injured from assault denying [him] medical attention and after being assaulted again by use of excessive force by a deputy deprived [him] medical attention again." (Dkt. No. 16 at 6.) However, for reasons discussed in Part II.B.4 above, the Court finds Plaintiff's claims against the County of Onondaga fail to state a claim upon which relief may be granted. Although Plaintiff invokes terms used in *Monell*, such as "custom" and "practice," he fails to allege any facts tending to show that the County of Onondaga caused any claimed

constitutional violation.  The absence of any facts supporting an unconstitutional policy, practice, or custom by the County of Onondaga, or a failure to supervise or train, precludes *Monell* liability.

Therefore, the Court recommends dismissal of Plaintiff's Section 1983 claims against the County of Onondaga for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).  Because Plaintiff has already been given the opportunity to amend, the Court recommends such dismissal be with prejudice.  (*See* Dkt. No. 15 at 8-9.)

### 7.    State Law Claims

A federal court may, in its discretion, exercise supplemental jurisdiction over a state law claim, but only to the extent it is accompanied by a claim over which the court has original jurisdiction.  *See* 28 U.S.C. § 1367 ("[E]xcept [in limited circumstances], in any civil action of which the district courts have original jurisdiction, the district court shall have supplemental jurisdiction over all other claims that are so related[.]").

In light of the above recommendations, the Court also recommends declining to exercise supplemental jurisdiction over any purported state law claims.  *See Kolari v. New York Presbyterian Hosp.*, 455 F.3d 118, 120 (2d Cir. 2006) (district court has discretion to decline to exercise supplemental jurisdiction over state law claims because all claims over which the federal court has jurisdiction have been dismissed).

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Plaintiff's Amended Complaint (Dkt. No. 16) be *sua sponte* **DISMISSED IN ITS ENTIRETY AND WITHOUT FURTHER LEAVE TO AMEND** for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b); and it is further

**RECOMMENDED** that Plaintiff's Section 1983 claims be *sua sponte* **DISMISSED WITH PREJUDICE** and that his state law claims be **DISMISSED WITHOUT PREJUDICE** to refiling in state court within the governing time period; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[4]  Such objections shall be filed with the Clerk of the Court.  <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**</u>.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a).

Dated: May 18, 2021
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[4]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

2018 WL 10550308
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Zhordrack BLOODYWONE also known
as Zhordrack Blodywon, Plaintiff,
v.
Joseph BELLNIER, et al., Defendants.

9:18-CV-0615 (GTS/DJS)
|
Signed 10/17/2018

**Attorneys and Law Firms**

ZHORDRACK BLOODYWONE, 16-A-1980, Plaintiff, pro se, Green Haven Correctional Facility, P.O. Box 4000, Stormville, NY 12582.

**DECISION and ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District Judge

**I. INTRODUCTION**

**\*1** The Clerk has sent to the Court for review a Complaint filed by pro se plaintiff Zhordrack Bloodywone ("Plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 1 ("Compl."). Plaintiff has also filed motions for appointment of counsel, default judgment, and a stay of the proceedings. Dkt. Nos. 5, 6 and 19.

Plaintiff commenced this action in February 2018 in the United States District Court for the Eastern District of New York ("Eastern District") by filing a Complaint and In Forma Pauperis Application. Dkt. Nos. 1 ("Compl.") and 2 ("IFP Application"). By Order filed on May 24, 2018, United States District Judge Kiyo A. Matsumoto of the Eastern District transferred this action to the Northern District of New York ("Northern District"). Dkt. No. 11 ("Transfer Order"). A decision on Plaintiff's IFP Application was reserved for the transferee court. *Id.* at 4.

**II. IFP APPLICATION** [1]

[1]     On May 29, 2018, the case was administratively closed due to Plaintiff's failure to submit a certified

IFP Application and required Inmate Authorization Form. Dkt. No. 13. On August 23, 2018, after Plaintiff provided a second IFP Application and Inmate Authorization Form, the case was reopened. Dkt. Nos. 17, 18, 20.

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein,* No. 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). [2] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir. 2010)).

[2]     Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

Upon review of Plaintiff's IFP Application, the Court finds that he has demonstrated sufficient economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization form required in this District. *See* Dkt. No. 18. Accordingly, the Court grants Plaintiff's IFP Application.

**III. SUFFICIENCY OF THE COMPLAINT**

**A. Governing Legal Standard**

Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (I) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [3] Thus, even if a plaintiff meets the financial criteria to commence an action in forma pauperis, it is the

court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action in forma pauperis. *See id.*

3    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

**\*2** Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

Additionally, when reviewing a complaint, the court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95-CV-4768, 1998 WL 832708, at \*1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

**B. Summary of the Complaint** [4]

4    The Complaint includes exhibits. *See* Dkt. Nos. 4, 9, 15. To the extent that the exhibits are relevant to the incidents described in the Complaint, the Court will consider the Complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

In November 2016, while confined at Great Meadow Correctional Facility ("Great Meadow C.F."), Plaintiff was assaulted by Corrections Officer T. Bushey and a "gang" of corrections officers. Compl. at 4. The incident occurred in the "frisk area" as Plaintiff was waiting to visit with his family. [5] *Id.* Plaintiff suffered a swollen eye and twisted ankle and wrist. *Id.* Plaintiff's request for sick call was ignored. Dkt. No. 4 at 3.

5    From November 2016 until October 2017, Plaintiff was not permitted to visit with his family. Dkt. No. 9 at 3.

On April 6, 2017, Plaintiff filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Southern District of New York ("Southern District") challenging his 2016 conviction in the New York State Supreme Court, Queens County. On April 28, 2017, the Southern District transferred the action to the Eastern District. *Bloodywone v. Marcy Corr. Fac.*, No. 1:17-CV-2797, Dkt. No. 1 (E.D.N.Y. Apr. 6, 2017). On April 4, 2018, the petition was dismissed, without prejudice, as premature. *Id.*, Dkt. No. 17 (E.D.N.Y. April 5, 2018). Judgment was entered accordingly. *Id.*, Dkt. No. 18. On April 23, 2018, Plaintiff filed a Notice of Appeal with the Second Circuit. *Id.*, Dkt. No. 20.

**\*3** In May 2017, Plaintiff was confined in DOCCS custody at Great Meadow C.F. [6] Compl. at 4. Plaintiff

claims that defendants DOCCS, Commissioner Joseph Bellnier ("Bellnier") and Superintendent Christopher Miller ("Miller") violated an Order issued by Judge Matsumoto on May 9, 2017 directing that he be released. *Id.*

[6]      From January 2017 until March 2017, Plaintiff was confined at Marcy Correctional Facility. Dkt. No. 9 at 2.

While confined at Great Meadow C.F., Plaintiff refused a TB test and, as a result, he was punished by starvation, isolation, and denied visitation. *Id.* In April 2018, Plaintiff was transferred to Green Haven Correctional Facility. Dkt. No. 8.

Plaintiff seeks an Order releasing him from DOCCS' custody. Compl. at 5. Construing the Complaint liberally, Plaintiff also asserts Eighth Amendment claims related to his confinement. *See generally,* Compl. For a complete statement of Plaintiff's claims and the facts he relies on in support of those claims, reference is made to the Complaint.

## C. Nature of Action

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990)); *see also Myers v. Wollowitz,* No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

The Court will construe the allegations in the Complaint with the utmost leniency. *See, e.g.,* *Haines v. Kerner,* 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

## IV. ANALYSIS

### A. Request for Release

Plaintiff is presently in DOCCS' custody and was in DOCCS' custody when he filed this civil action. *See generally,* Compl.

Plaintiff filed this civil rights action seeking to be released from custody. Construing the Complaint liberally, Plaintiff alleges that defendants violated his Fourteenth Amendment rights by refusing to obey a court order providing for his release. *See* Compl. at 5. Plaintiff claims that his petition for habeas relief was granted and that defendants are illegally detaining him in violation of a Court Order. *See id.* As discussed *supra*, the Eastern District dismissed Plaintiff's habeas petition, without prejudice, because Plaintiff had not exhausted his state remedies. *See Bloodywone v. Marcy Corr. Fac.,* No. 1:17-CV-2797, Dkt. No. 17 (E.D.N.Y. Apr. 4, 2018). In the Order, the Court noted:

> Throughout the submissions before the Court, Petitioner appears confused about the status of his criminal case. (*See e.g.* Petition, EOF No. 15 at 2 (stating that the S.D.N.Y. dismissed the charges in 17-CV-2557) and Letter, EOF No. 12 at 1 (requesting release pursuant to an order in this case).) The court clarifies and advises Mr. Bloodywone that there is no order in this case. Civil Docket Number 1:17-CV-2797, authorizing Mr. Bloodywone's release. Nor is there any order in this case when it was before the S.D.N.Y., Civil Docket Number 17-CV-2557, that dismissed the charges against petitioner. Mr. Bloodywone presented any state court decision that resulted in, nor has the Court's review of state court records revealed, any alteration to the convictions at issue in this case.

**\*4** *Bloodywone v. Marcy Corr. Fac.,* No. 1:17-CV-2797, Dkt. No. 17 at 5.

On April 23, 2018, Plaintiff filed an appeal in the Second Circuit. *See Bloodywone v. Marcy Corr. Fac., et al.,* No. 18-1250, Dkt. No. 1 (2d Cir. 2018). The appeal is pending. *Id.,* Dkt. No. 37. Accordingly, Plaintiff's Fourteenth Amendment claims lack merit.

Additionally, because Plaintiff seeks to be released, *see* Compl. at 5, his claims are dismissed without prejudice

pursuant to *Heck v. Humphrey*, 512. U.S. 477 (1984), on the ground that habeas corpus is his sole federal remedy. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); *see also Channer v. Mitchell*, 43 F.3d 786, 787 (2d Cir. 1994) ("habeas corpus —not a § 1983 action—provides the sole federal remedy where a state prisoner challenges the fact or duration of his imprisonment[.]"); *Jenkins v. Daubert*, 179 F.3d 19, 23 (2d Cir. 1999) ("[W]here the fact or duration of a prisoner's confinement is at issue, and only [habeas relief under 28 U.S.C.] § 2254(b) with its exhaustion requirement may be employed."). The Court will not sua sponte convert this action into a petition for habeas corpus relief. *See Romer v. Travis*, No. 00 CIV 8671, 2001 WL 220115, at *3 (S.D.N.Y. Jan. 31, 2001) ("Conversion, initially justified because it harmlessly assisted the prisoner-movant in dealing with legal technicalities, may result in a disastrous deprivation of a future opportunity to have a well-justified grievance adjudicated."). Although Plaintiff styles his pleading as a civil rights "complaint," § 1983 does not provide a remedy for Plaintiff's claims.

### B. Eighth Amendment Claims

Construing the Complaint liberally, Plaintiff alleges that he was subjected to the excessive use of force, his medical needs were deliberately ignored, and his conditions of confinement were unconstitutional. *See generally*, Compl.

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435

(2d Cir. 2003); *Wright*, 21 F.3d at 501. In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the alleged constitutional violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)). [7] Plaintiff cannot premise Section 1983 liability on a defendant's position in the prison hierarchy. *See Colon*, 58 F.3d at 874. "A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (citations and internal quotations omitted).

[7]     The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that Iqbal may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*"); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]") (citing *Grullon*, 720 F.3d at 139).

**\*5** Plaintiff has not alleged any facts indicating that Bellnier, Miller, Commissioner Anthony Annucci ("Annucci"), Superintendent Phil Melecio ("Melecio"), and Superintendent Matthew Thoms ("Thoms") directly participated in the alleged excessive force incident, the deprivation of medical care, the conditions of confinement

or had any personal knowledge of the alleged constitutional violations. It appears that Plaintiff has named defendants solely because of defendants' positions within DOCCS, which is insufficient to demonstrate personal involvement. Indeed, while Plaintiff names Annucci, Melecio, and Thoms in the list of parties, the Complaint is void of any reference to these individuals. In the absence of factual allegations sufficient to plausibly suggest that defendants were personally involved in conduct that violated Plaintiff's constitutional rights, the Complaint fails to state a cognizable claim against them and is subject to dismissal. *See Cipriani v. Buffardi*, No. 06–CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb. 20, 2007)* ("[d]ismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff") (citation omitted).

Based upon the foregoing, the Court finds that the Complaint fails to state a claim against upon which relief may be granted. Thus, defendants, and all claims against them, are subject to dismissal without prejudice pursuant to *28 U.S.C. § 1915(e) (2)(B)* and *28 U.S.C. § 1915A(b)* for failure to state a claim upon which relief may be granted. [8]

[8]    In the Complaint, Plaintiff refers to T. Bushey. *See* Compl. at 4; Dkt. No. 4 at 3. Plaintiff does not, however, identify this individual as a defendant in the caption of his Complaint or in the list of parties. *Rule 10(a) of the Federal Rules of Civil Procedure* requires that all defendants be listed in the caption of the complaint. The rule provides that, "the title of the complaint must name all the parties." *Fed. R. Civ. P. 10(a)*. A party not named in the caption of the complaint is not a party to the action. *Abbas v. U.S.*, No. 10-CV-0141, 2014 WL 3858398, at *2 (W.D.N.Y. Aug. 1, 2014)* (the failure to name a party in the caption makes it "infeasible for the Court to determine which of the individual officers mentioned in the body of the complaint should be deemed to be defendants to which claims). "If people are not also named in the caption of the [ ] complaint, they will not be defendants in the case." *See Whitley v. Krinser*, No. 06-CV-0575, 2007 WL 2375814, at *1 (W.D.N.Y. Aug. 15, 2007)*; *Robles v. Armstrong*, No. 3:03-CV-1634, 2006 WL 752857, at *1 n.1 (D. Conn. Mar. 17, 2006)* ("The plaintiff refers to John Doe/Jane Doe of the Correctional Managed Health Care Program and John Doe/Jane Doe Members of the Revitalization Committee in

the body of the amended complaint. Because the John and Jane Does are not listed in the caption of the amended complaint, they are not defendants and the court does not consider claims against them.").

## V. MOTION FOR COUNSEL

Plaintiffs bringing civil actions have no constitutional right to the appointment of counsel. *See, e.g., United States v. Coven*, 662 F.2d 162, 176 (2d Cir. 1981). However, pursuant to *28 U.S.C. § 1915(e)*, the court may request an attorney to represent an indigent party. *28 U.S.C. § 1915(e)(1)* (authorizing the court to "request an attorney to represent any person unable to afford counsel."). [9] Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion:

> [The Court] should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

**\*6** *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)) (internal quotation marks omitted). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, No. 93-CV-1449 (TJM) 899 F.Supp. 972, 974 (N.D.N.Y. Oct. 16, 1995) (citing *Hodge*, 802 F.2d at 621). The Court must consider the issue of appointment carefully because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a

deserving cause." [10] *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).

[9]        Actual appointment of counsel is contingent upon the availability of pro bono counsel to accept an appointment. "If no [one] agrees to represent the plaintiff, there is nothing more the Court can do." *Rashid v. McGraw*, No. 01CIV10996, 2002 WL 31427349, at *1 n.1 (S.D.N.Y. Oct. 29, 2002).

[10]        The court is authorized only to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see Mallard v. United States District Court*, 490 U.S. 296, 298 (1989). Section 1915(e) does not, however, permit a federal court to require an unwilling attorney to represent an indigent litigant in a civil case. *See Mallard*, 490 U.S. at 298, 309.

In the present case, the Court has found that the Complaint is insufficient and that he must file an amended pleading for this action to proceed. Since Plaintiff has failed to establish that his claim is likely to be of substance, the Court denies his motion for appointment of counsel without prejudice. After the Court has accepted an amended complaint for filing, defendants have responded to the allegations in Plaintiff's amended complaint, and the parties have undertaken discovery, Plaintiff may choose to file a new motion for appointment of counsel, at which time the Court may be better able to determine whether such appointment is warranted in this case. Plaintiff is advised that any future motion for appointment of counsel must be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector. *See Terminal Control Corp.*, 28 F.3d at 1341; *Cooper v. Sargenti Corp., Inc.*, 877 F.2d 170, 172, 174 (2d Cir. 1989). Thus, Plaintiff's motion for the appointment of counsel (Dkt. No. 19) is denied.

## VI. MOTION FOR DEFAULT

Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestly v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, under Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P. 55(a); *see also* Local Rule 55.1. Second, under Rule 55(b)(2) the plaintiff must "apply to the court for entry of a default judgment." *Priestly*, 647 F.3d at 505; *see also* Local Rule 55.2(b). "The dispositions of motions for entries of defaults and default judgments ... are left to the sound discretion of the district court because it is in

the best position to assess the circumstances of the case and to evaluate the good faith of the parties." *Shah v. New York State Dep't Civ. Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) (citation omitted). There is a "strong preference for resolving disputes on the merits." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

As an initial matter, Plaintiff's failure to request an entry of default by the Clerk of the Court in accordance with Rule 55(a) of the Federal Rules of Civil Procedure prior to filing his motion for entry of a default judgment requires that his motion be denied. *See American Alliance Ins. Co., Ltd. v. Eagle In. So.*, 92F. 3d 57, 59 (2nd Cir. 1996). However, even if the Court were to construe Plaintiff's application as one seeking entry of default, because the Complaint is dismissed without prejudice, Plaintiff's request is denied because defendants are not in default.

## VII. MOTION FOR PURSUANT TO 28 U.S.C. § 2101(f)

**\*7** Plaintiff moves for a "stay (bail pending appeal)" pursuant to 28 U.S.C. § 2101(f). *See* Dkt. No. 5. Because 28 U.S.C. § 2101 relates to appeals to the United States Supreme Court, [11] the Court assumes Plaintiff moves for a stay pending the Second Circuit's decision of his appeal in *Bloodywone v. Marcy Corr. Fac.*, No. 18-1250 (2d Cir. 2018).

[11]        Subsection (f) provides:
            In any case in which the final judgment or decree of any court is subject to review by the Supreme Court on writ of certiorari, the execution and enforcement of such judgment or decree may be stayed for a reasonable time to enable the party aggrieved to obtain a writ of certiorari from the Supreme Court. The stay may be granted by a judge of the court rendering the judgment or decree or by a justice of the Supreme Court, and may be conditioned on the giving of security, approved by such judge or justice, that if the aggrieved party fails to make application for such writ within the period allotted therefor, or fails to obtain an order granting his application, or fails to make his plea good in the Supreme Court, he shall answer for all damages and costs which the other party may sustain by reason of the stay.

In deciding a motion for a stay pending appeal, the Court considers whether: (1) the applicant will be irreparably injured absent a stay; (2) issuance of the stay will substantially

injure the other parties interested in the proceeding; (3) the stay applicant has made a strong showing that he is likely to succeed on the merits; and (4) the stay is in the public interest. *In re World Trade Center Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007).

Because the Complaint is dismissed, Plaintiff's motion for a stay of proceedings is denied as moot.

## VIII. CONCLUSION
**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's in forma pauperis application (Dkt. No. 17) is **GRANTED**; [12] and it is further

[12]   Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by Plaintiff as his current location, with a copy of Plaintiff's Inmate Authorization, and notify the official that this action has been filed and that Plaintiff is required to pay the Northern District of New York statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and it is further

**ORDERED** that the Clerk of the Court provide a copy of Plaintiff's Inmate Authorization to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED**, that pursuant to the Court's review under 28 U.S.C. § 1915A, Plaintiff's claims are **DISMISSED without**

**prejudice** for failure to comply with the pleading standards and state a claim; and it is further

**ORDERED** that if Plaintiff wishes to proceed with this action, he must file a signed amended complaint that cures the pleading defects identified above in this Decision and Order; and it is further

**ORDERED** that, upon Plaintiff's full compliance with this Decision and Order, the Clerk shall return the file to this Court further review; and it is further

**ORDERED** that if Plaintiff fails to fully comply with the terms of this Decision and Order **within thirty (30) days** from its filing date, the Clerk shall enter Judgment indicating that this action is **DISMISSED, without further order of this Court**, pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**\*8  ORDERED** that Plaintiff's motion for the appointment of counsel (Dkt. No. 19) is **DENIED**; and it is further

**ORDERED** that Plaintiff's motion for a default judgment (Dkt. No. 6) is **DENIED**; and it is further

**ORDERED** that Plaintiff's motion for a stay (Dkt. No. 5) is **DENIED**; and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.

### All Citations

Slip Copy, 2018 WL 10550308

---

2014 WL 3858398
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Shariff ABBAS, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 10–CV–0141S.
|
Signed Aug. 1, 2014.

**Attorneys and Law Firms**

Shariff Abbas, Flushing, NY, pro se.

**DECISION and ORDER**

WILLIAM M. SKRETNY, Chief Judge.

### INTRODUCTION

 *1 Plaintiff Shariff Abbas commenced this *pro se* action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 et seq., and other federal laws, alleging violation of his rights while detained at the Buffalo Federal Detention Facility ("BFDF") in Batavia, the Albany County Jail and the Perry County Correctional Center ("PCCC") in Uniontown, Alabama. Currently before the Court for review pursuant to 28 U.S.C. § 1915(e)(2)(B) is plaintiff's amended complaint [1], submitted in response to the Court's Order filed on August 16, 2013 ("August 16 Order") (Docket No. 6), which reviewed plaintiff's original complaint (Docket No. 4), dismissed several of the claims asserted therein, and granted plaintiff leave to file an amended complaint. For the reasons set forth below, plaintiff's FTCA claims against the United States related to his treatment at the BFDF may proceed and his remaining claims will be dismissed.

[1]   Plaintiff's amended complaint is accompanied by two voluminous bound volumes of exhibits captioned "Exhibit's [sic] Part 1", containing a Table of Contents and exhibits 1–18 and "Exhibit Part 2", containing a Table of Contents and exhibits 19–40. Given the voluminous nature of the exhibits, numbering hundreds of pages, and

the manner in which they are bound, which would make scanning them very difficult, the Court has not required the Clerk's Office to scan them into the court's electronic filing system. They will instead be maintained in paper form in a separate file in the Clerk's Office. *See* note to Docket No. 6.

### DISCUSSION

A. *Bivens Claims*

The August 16 Order directed, *inter alia,* that plaintiff's FTCA claims stemming from his detention at the Albany County Jail and the PCCC be dismissed; that plaintiff be granted leave to file an amended complaint adding *Bivens* [2] or other federal claims against individual deportation officers and other personnel at BFDF who he alleges violated his rights; and that in the even he failed to timely file an amended complaint as directed, the Court would issue an Order directing service of the complaint upon the United States as the sole defendant to his medical malpractice claims brought under the FTCA. (Docket No. 5).

[2]   *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

The August 16 Order noted that in addition to his FTCA claims, plaintiffs original complaint asserted a variety of violations of his constitutional rights by individual deportation officers and other personnel during his periods of detention at BFDF and that these claims would be actionable against individual defendants under the *Bivens* doctrine, which allows a plaintiff to pursue constitutional claims against federal officials in their individual capacities for actions taken under color of federal law. *See Lombardi v. Whitman,* 485 F.3d 73, 78 (2d Cir.2007) ("[W]here an individual 'has been deprived of a constitutional right by a federal agent acting under color of federal authority,' the individual may bring a so-called *Bivens* action for damages against that federal agent in an individual capacity, provided that Congress has not forbidden such an action and that the situation presents 'no special factors counseling hesitation in the absence of affirmative action by Congress.' ") (internal citations omitted) (*quoting Thomas v. Ashcroft,* 470 F.3d 491, 496 (2d Cir.2006). The Court determined, however, that the *Bivens* claims could not proceed because of plaintiff's failure to name the individual custody officers and other officials who are alleged to have violated his rights as defendants in

the caption of the complaint, as required by Rule 10(a) of the Federal Rules of Civil Procedure:

> **\*2** The Court cannot allow such *Bivens* claims to proceed, however, because of plaintiff's failure to name the individual custody officers and other officials who are alleged to have violated his rights as defendants in the caption of the complaint. Rule 10 of the Federal Rules of Civil Procedure provides that "[t]he title of the complaint must name all the parties" Fed.R.Civ.P. 10(a). Therefore, a party that is not named in the caption of a complaint or amended complaint is not a party to the action.

(August 16 Order at 16) (citations omitted). The Court proceeded to note that plaintiff's failure to name in the caption of the complaint the individual defendants against whom he wished to assert *Bivens* claims would make it infeasible for the Court to determine which of the individual custody officers mentioned in the body of the complaint should be deemed to be defendants to such claims, given the often ambiguous nature of his reference to such individuals. (*Id.* at 16–17). The Court therefore concluded that "[t]he way to remedy plaintiff's failure to name as defendants in the caption of his complaint those individuals against whom he may seek to assert *Bivens* claims, as suggested by the allegations set forth in the body of the complaint, is to afford him leave to file an amended complaint which conforms to the requirements of Rule 10(a)." (*Id.* at 17) (citations omitted). "Accordingly, plaintiff will be afforded the opportunity to file, as directed below, an amended complaint in which he shall name in the caption of the complaint, each of the individuals against whom he intends to assert a *Bivens* claim or claims, in a manner that conforms to the requirements of Rules 8(a) and 10(a) of the Federal Rules of Civil Procedure." (*Id.*).

The Court accordingly directed, in the Conclusion of the August 16 Order, that plaintiff be given leave to file an amended complaint conforming to the requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure, and the Court again explicitly advised plaintiff of his duty to list all defendants in the caption of the complaint:

> Plaintiff is reminded, as explained above, that if he wishes to assert *Bivens* or other claims against defendants other than the United States in the amended complaint, *he must name those individuals in the caption of the amended complaint* and set forth

specific allegations with respect to how those individuals violated his rights.

(*Id.* at 21). (emphasis added).

While plaintiff's amended complaint contains allegations that would support *Bivens* claims (*see* Amended Complaint, ¶¶ 17–42 *passim* ),[3] it does not name in the caption of the complaint any individuals against whom plaintiff is seeking to assert *Bivens* clams, nor does the section of the complaint captioned "PARTIES" list any individual defendants. While plaintiff does, in the section of the amended complaint captioned "CONCLUSION," set forth a list of "Federal Employees from (BFDF) Health Division" (Amended Complaint ¶ 57), which includes individuals mentioned elsewhere in the amended complaint in connection with plaintiff's allegations that would be relevant to *Bivens* claims, the individuals named therein are not listed as defendants in the caption of the amended complaint or in plaintiff's recital of the parties to this action at the beginning of the amended complaint; as noted *supra,* plaintiff lists only one defendant-the United States-in the complaint caption and in his recital of the parties. Moreover, plaintiff's statement of relief sought at the end of the amended complaint (captioned "PRAYER") demands judgment "against *the defendant.*" (*Id.* at p. 16) (emphasis added).[4]

3      Plaintiff divides his claims into two sections of the amended complaint, namely "Medical Malpractice" (Amended Complaint, p. 3–5, ¶¶ 8–16), which contains allegations supportive of his FTCA claims, and "U.S. D.H.S.-ICE Agency and Custody Officers Abuses" (*Id.* at p. 5–14, ¶¶ 17–56), which contains allegations supportive of his *Bivens* constitutional claims. The Court notes, however, that a number of the allegations set forth in the "Federal Agency and Custody Officers Abuses" section of the complaint are relevant to his FTCA malpractice claims. *See, e.g.,* Amended Complaint, ¶ 21.

4      Plaintiff's failure to include in the caption of the amended complaint the names of any defendants against whom he is asserting *Bivens* claims is not the only instance of his disregard of the Court's directives regarding the form and content of his

amended complaint. The August 16 Order noted that many of the *Bivens* claims that plaintiff's allegations would support against individuals identified in the body of the complaint appeared to be barred by the statute of limitations. August 16 Order at 18. The Court accordingly directed as follows:

> In the amended complaint that plaintiff will be given leave to file, as provided below, in which he must demonstrate either that his *Bivens* claims stemming from his incarceration at BFDF are timely or, if any such Bivens claims are untimely, he must allege facts demonstrating why equitable tolling should be applied to the statute of limitations periods for such claims.

(August 16 Order at 19). As noted *supra,* the August 16 Order provided that plaintiff would be given leave to file an amended complaint with respect to his *Bivens* claims, and plaintiff was further advised, in this regard, "that he should address the timeliness of any *Bivens* claims that he asserts in the amended complaint and any argument as to why the limitations period applicable to such claims should be equitably tolled." (August 16 Order at 21). However, plaintiff's amended complaint does not address the timeliness issue or offer any basis for equitable tolling of the limitations period. Given the Court's dismissal herein of the *Bivens* claims based upon plaintiff's failure to identify the defendants against whom he seeks to assert such claims, the Court need not further address the timeliness issue.

Plaintiff further disregarded the August 16 Order to the extent that he reasserts claims stemming from his detention at the Albany County Jail from February 21, 2006–March 21, 2006, and the Perry County Correctional Center ("PCCC") in Uniontown Alabama from August 5, 2006–February 9, 2007. (Amended Complaint at ¶¶ 14, 15, 28–40). The August 16 Order dismissed the claims stemming from plaintiff's incarceration at those facilities pursuant to [28 U.S.C. § 1406(a)](#) for improper venue. (August 16 Order at 13–14). Those claims remain dismissed.

**\*3** The Court's duty to construe liberally the pleadings of *pro se* litigants does not absolve *pro se* litigants from the duty to comply with the requirements of the Federal Rules of Civil Procedure and court orders issued pursuant to those rules. *See, e .g., [Caidor v. Onondaga County,](#)* [517 F.3d 601, 605 (2d Cir.2008)](#) (noting that *pro se* litigants are required to familiarize themselves with procedural rules and comply with such rules); *[McDonald v. Head Criminal Court Supervisor Officer,](#)* [850 F.2d 121, 124 (2d Cir.1988)](#) ("[W]hile *pro se* litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including *pro ses,* have an obligation to comply with court orders. When they flout that obligation they, like all litigants, must suffer the consequences of their actions.")). As discussed *supra,* this Court's previous order explained to plaintiff the requirement of [Rule 10(a)](#) that all defendants to an action be named and identified as such in the caption of the complaint, and the Court afforded him the opportunity to cure the defect in his initial complaint by filing an amended complaint naming all defendants. Plaintiff has inexplicably failed to comply with the Court's order and the requirement of [Rule 10(a).](#) Accordingly, to the extent that plaintiff seeks to bring *Bivens* claims against individual Custody Officers and other BFDF officials, *see* Amended Complaint, ¶ 58 ("Plaintiff want [sic] this Court to bring Justice against Federal Agency Employees who Violate constitutional law against Plaintiff's rights"), such claims must be dismissed in light of his failure to name those individuals as defendants in the caption of the amended complaint. *See, e.g., [Ferdik v. Bonzelet,](#)* [963 F.2d 1258, 1262–63 (9th Cir.1992)](#) (dismissing action for refusal to comply with court orders to name defendants in the caption as required by [Rule 10(a)](#)).

Moreover, as explained in the August 16 Order (pp. 14–15), constitutional claims under *Bivens* cannot be brought against the only defendant named in the complaint, the United States. *See [Robinson v. United States Bur. Of Prisons,](#)* [244 F.Supp.2d 57, 66 (N.D.N.Y.2003)](#) ("[A] *Bivens* action may not be maintained against the United States.") (citing *[Washington v. DEA,](#)* [183 F.3d 868, 872 n. 8 (8th Cir.1999).](#) Nor can constitutional claims be asserted against the United States under the FTCA. *See [Washington,](#)* [183 F.3d at 873;](#) *[Russ v. United States,](#)* [62 F.3d 201, 204 (7th Cir.1995)](#) ("[C]onstitutional wrongs cannot be remedied through the FTCA,") (citing *[FDIC v. Meyer,](#)* [510 U.S. 471, 476, 114 S.Ct. 996, 1001–02, 127 L.Ed.2d 308(1994)](#)).

Plaintiff having thus having failed to name a proper defendant to his *Bivens* claims, the Court concludes that his *Bivens* claims must be dismissed pursuant to [28 U.S.C. § 1915(e)(2) (B)](#) for failure to state a claim on which relief can be granted.

### B. *Treaty Claims*

The Conclusion section of the amended complaint invokes, as a basis for relief against defendant United States not raised in plaintiffs original complaint, treaties to which the United States is a signatory. Specifically, the amended complaint states "At such time and places the United States violates International Laws as A[sic] result the United States are not in compliance with Refugee Convention Requirements or The United Nations Convention against Torture Prohibitions." (Amended Complaint, § 57). It is well established that the United Nations Convention Against Torture and Other Cruel, Inhumane or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, 23 I.L.M. 1027, ("CAT") does not give rise to a private right of action. *Renkel v. United States,* 456 F.3d 640, 644 (6th Cir.2006) ("As the Articles [of CAT] are not self-executing, they do not create private rights of action; therefore, any private lawsuit seeking to enforce the United States' obligations under the Convention must be based on domestic law."); *Wolinski v, Junious,* 2012 U.S. Dist. LEXIS 65889, at *18–19,2012 WL 1657576 (E.D.Cal. May 10, 2012) ("The CAT does not give rise to a private right of action because it is not self-executing.) (citing *Akhtar v. Reno,* 123 F.Supp.2d 191, 196 (S.D.N.Y.2000),

**\*4** The United Nations Convention Relating to the Status of Refugees, adopted July 28, 1951, art. 26, 19 U.S.T. 6259, 6576, 189 U.N.T.S. 150, 172 ("Refugee Convention") likewise does not create a private right of action. *United States v. Casaran–Rivas,* 311 Fed. Appx. 269, 272 (11th Cir.2009) (unpublished) ("[A]rgument that the indictment violated the refugee Convention and CAT Treaty is without merit, as the Refuge[e] Convention and CAT Treaty are not self-executing, or subject to relevant legislation, and, therefore, do not confer upon aliens a private right of action to allege a violation of their terms."); *Reyes–Sanchez v. Ashcroft,* 261 F.Supp.2d 276, 288–89 (S.D.N.Y.2003) ("Because the Refugee Convention is not self-executing, it does not create individual rights.").

Accordingly, plaintiff's claims against the United States under CAT and Refugee Convention are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim on which relief may be granted.

### C. *FTCA Claims*

The medical malpractice-related claims under the FTCA asserted by plaintiff in the amended complaint and stemming from his detention at BFDF may go forward against defendant United States. [5]

[5]     As explained in the August 16 Order, plaintiff's allegations of medical malpractice and the failure to properly treat his serious medical condition are clearly cognizable under the FTCA when asserted against the United States. (August 16 Order at 6).

### *ORDER*

IT IS HEREBY ORDERED, that plaintiff's *Bivens* claims are dismissed with prejudice;

FURTHER, that plaintiff's claims under CAT and the Refugee Convention are dismissed with prejudice;

FURTHER, that the Clerk of the Court is directed to complete, on plaintiff's behalf, and to issue, a summons for service of process on defendant United States of America;

FURTHER, the Clerk of the Court is directed to send copies of the Summons, Amended Complaint, [6] and this Order by certified mail to the following, pursuant to Rule 4(i) of the Federal Rules of Civil Procedure:

[6]     As explained in n. 1, *supra,* plaintiff's voluminous exhibits to the amended complaint are maintained in paper form in a separate file folder in the Clerk's Office.

• Attorney General of the United States, Main Justice Building, 10th and Constitution Avenues N.W., Washington, DC 20530;

• Civil Process Clerk, United States Attorney for the Western District of New York, United States Attorney's Office, USAO/ WDNY, 138 Delaware Avenue, Buffalo, New York 14202.

SO ORDERED.

### All Citations

Not Reported in F.Supp.3d, 2014 WL 3858398

---

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2021 Thomson Reuters. No claim to original U.S. Government Works.

2007 WL 2375814

2007 WL 2375814
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Vidal WHITLEY, Plaintiff,
v.
Major KRINSER, Sgt. Robin Brown, Captain
Winters, Corporal Conklin, Deputy Johnson,
Lt. Prinzi, Corporal Carlo, Lt. Santillo,
Sgt. Garcia, Major Kasacey, Corporal
Peck, and Deputy Galling, Defendants.

No. 06-CV-0575F.
|
Aug. 15, 2007.

**Attorneys and Law Firms**

Vidal Whitley, Willard, NY, pro se.

**DECISION and ORDER**

WILLIAM M. SKRETNY, United States District Judge.

**INTRODUCTION**

*\*1* By an Order dated February 8, 2007, plaintiff *pro se* Vidal Whitley was granted permission to file a second amended complaint in this action pursuant to 42 U.S.C. § 1983 to specifically address issues relating to defendants Kasacey, Krinser and Peck. For the reasons stated below, plaintiff's second amended complaint is dismissed and the amended complaint is allowed to go forward at this stage against all named defendants except as to defendants Krinser, Kasacey and Peck.

**DISCUSSION**

Section 1915(e) (2)(B) of 28 U.S.C. provides that the Court shall dismiss a case in which *in forma pauperis* status has been granted if, at any time, the Court determines that the action "(ii) fails to state a claim upon which relief may be granted." Based on its evaluation of the complaint, the Court finds that plaintiff's claims against defendants Krinser, Kasacey and Peck must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)

(B)(ii) because they fail to state a claim upon which relief may be granted. Despite direction to specify what Krinser, Kasacey and Peck were responsible for, plaintiff's second amended complaint does not allege sufficient facts to state claims against Krinser, Kasacey and Peck.

In addition, plaintiff was directed that his second amended complaint "should name in the caption all of the people plaintiff wishes to hold responsible for each violation. Plaintiff has alleged that people who are not named in the caption were responsible for violation his rights. However, if these people are not also named in the caption of the second amended complaint, they will not be defendants in the case." (Docket No. 11.) Because plaintiff has not named any additional defendants in the second amended complaint, has not included the allegations against the remaining defendants named in his amended complaint, and has failed to state a claim against Krinser, Kasacey and Peck, the second amended complaint is dismissed in its entirety. However, because of plaintiff's *pro se* status and his minimal literacy, the Court will deem the amended complaint the operative pleading in this case and allow it to proceed against all named defendants except Krinser, Kasacey and Peck.

**CONCLUSION**

For the reasons set forth above, plaintiff's claims against defendants Krinser, Kasacey and Peck are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and the amended complaint shall be served on the remaining defendants set forth in the caption above.

**ORDER**

IT HEREBY IS ORDERED, that the claims against Krinser, Kasacey and Peck are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B); and,

FURTHER, the Clerk of the Court is directed to correct the docket to reflect that Sgt. Robin Brown, Captain Winters, Corporal Conklin, Deputy Johnson, Lt. Prinzi, Corporal Carlo, Lt. Santillo, Sgt. Garcia and Deputy Galling are defendants in this action; and,

FURTHER, the Clerk of the Court is directed to cause the U.S. Marshal to serve the amended complaint (Docket No. 10) and this Order upon the remaining defendants, Sgt. Robin Brown,

2007 WL 2375814

Captain Winters, Corporal Conklin, Deputy Johnson, Lt. Prinzi, Corporal Carlo, Lt. Santillo, Sgt. Garcia and Deputy Galling.

**\*2**  SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2007 WL 2375814

---

**End of Document**                           © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Forbes v. City of New York, Not Reported in F.Supp.2d (2008)

2008 WL 3539936

KeyCite Yellow Flag - Negative Treatment

Distinguished by  Ortolaza ex rel. E. v. Capitol Region Education Council,
D.Conn.,  May 24, 2019

2008 WL 3539936
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Daniel FORBES and Julie Forbes, Plaintiffs,

v.

The CITY OF NEW YORK, Police Sergeant Michael
Power, Shield No. 2712, Police Officer Thomas
Brennan, Shield No. 7903, John Does, Richard
Roes, Lincoln Center for the Performing Arts, Inc.,
Richard Green, Lincoln Center Assistant Director
of Security, John Dejesus, Lincoln Center Security
Sergeant, Jose Felipe, Lincoln Center Security
Officer; Michael Moes; Paul Poes, Defendants.

No. 05 Civ. 7331(NRB).
|
Aug. 12, 2008.

**Attorneys and Law Firms**

Jeffrey A. Rothman, Esq., New York, NY, for Plaintiffs.

Kenneth M. Labbate, Esq., Mound Cotton Wollan &
Greengrass, New York, NY, for the Lincoln Center
Defendants.

Morgan D. Kunz, Esq., Law Department, City of New York,
New York, NY, for the City of New York Defendants.

**MEMORANDUM and ORDER**

NAOMI REICE BUCHWALD, District Judge.

**\*1**  Plaintiffs Daniel and Julie Forbes brought this action
pursuant to 42 U.S.C. § 1983 alleging violations of their
First and Fourth Amendment rights. The complaint also
contains various state law claims. Before this Court is the
Lincoln Center for the Performing Arts ("Lincoln Center"),
Richard Green, John DeJesus, and Jose Felipe's (collectively
the "Lincoln Center Defendants") motion to dismiss the
complaint as against them under Fed.R.Civ.P. 12(b). For the
reasons set forth below, the motion is denied.

*BACKGROUND*

**I. Procedural History**

The instant motion was previously briefed and submitted to
Chief Judge Kimba Wood, who dismissed the case against the
Lincoln Center Defendants by an Order dated May 25, 2007.
On June 12, 2007, plaintiffs filed a motion for reconsideration
and on January 8, 2008 Chief Judge Wood recused herself
due to a newly discovered conflict of interest. The case was
transferred here and plaintiff petitioned to vacate Chief Judge
Wood's May 25, 2007 Order on the grounds that the potential
conflict of interest existed at the time of her decision. We
granted plaintiff's request, thereby mooting the motion for
reconsideration. *See* Order Granting Vacatur, Feb. 5, 2008
(citing *Liljeberg v. Health Services Acquisition Corp.,* 486
U.S. 847, 859–60 (1988) (finding that vacatur is appropriate
regardless of "whether or not the judge actually knew of facts
creating an appearance of impropriety")). Pursuant to that
order, the Lincoln Center Defendants renewed their motion to
dismiss.

**II. Factual Allegations**

This case arises from events that occurred during a free
concert performed by the folk singer Arlo Guthrie on the night
of August 21, 2004 at Damrosch Park, which is located on
the grounds of Lincoln Center. [1] Damrosch Park is owned
by the City but is managed by Lincoln Center pursuant
to a licensing agreement, which requires Lincoln Center to
provide "maintenance and security services to the Public
Areas [including Damrosch Park] situated within the Lincoln
Center Complex for and on behalf of the City ...." Decl. of
Kenneth M. Labbate in Supp. of Lincoln Center Defs.' Mot.
to Dismiss Ex. 2. The agreement also gives Lincoln Center
the exclusive right to schedule "festival events" in Damrosch
Park during July, August, and September. *See id.*

[1]    All facts are taken from the First Amended
       Complaint (Compl.) and accepted as true.

According to the complaint, the proper context in which to
view the events in question is the political season of 2004:

        The concert plaintiffs were attending
        at Damrosch Park was being held
        approximately one week before the

start of the Republican National Convention, and in the midst of highly-publicized litigation between the CITY OF NEW YORK and a[n] [anti-Iraq War] group named United for Peace and Justice, who were seeking access to Central Park's Great Lawn for a rally at the end of their planned march for August 28, 2004. The reason given by the CITY OF NEW YORK for denying the group a permit to use the Great Lawn was that the proposed rally would severely damage the grass.

**\*2** Compl. ¶ 20. [2] Thus, the atmosphere at the concert was politically charged, with performers and audience members announcing their views about the Iraq War. In response to the jeer of one audience member—who allegedly told an anti-Iraq War performer to "[g]o back to Canada you dirty red"— plaintiff Daniel Forbes decided to chime in to "balance the political scales." *Id.* at ¶¶ 17–18. During a break between songs, he stated: "Central Park is not a grass museum. Open the Park. The Constitution is more important than grass." *Id.* ¶ 18.

[2]     The group's lawsuit was dismissed. *United for Peace and Justice v. Bloomberg,* 783 N.Y.S.2d 255, 5 Misc.3d 845, (Sup.Ct. N.Y. County 2004).

After making this remark, Daniel Forbes was approached by a Lincoln Center security guard who told him that he would have to remain silent or leave. [3] Daniel Forbes told the guard "not to be ridiculous" and continued to listen to the concert. According to the complaint, Daniel Forbes was later approached by another Lincoln Center security guard who asked Mr. Forbes to come speak to him in the aisle at the end of the row in which plaintiffs were sitting. Mr. Forbes obliged, was told again to be quiet or leave, responded by citing his constitutional right to express his views, and returned to his seat. Thereafter, according to the complaint, "a group of approximately six to eight uniformed [Lincoln Center security guards] amassed in the aisle adjacent to the row where plaintiffs were sitting and glared in plaintiffs' direction." *Id* .¶ 25. Defendant Green, who was not in uniform but identified himself as the head of Lincoln Center security, then asked Daniel Forbes to come to the aisle to speak with him. Mr. Forbes declined but invited Green to come into

the audience and take an empty seat next to him. According to the complaint, Green then walked away but the other security guards remained in the aisle close to plaintiffs. Then, according to the complaint, after an unstated period of time, four uniformed New York City police officers arrived at the aisle adjacent to the row where plaintiffs were seated. Defendant Sergeant Michael Power allegedly spoke with the Lincoln Center security guards who were still in the aisle. After the Lincoln Center security guards "made an indication in the direction" of the plaintiffs, Sergeant Power asked Daniel Forbes to come speak with him in the aisle. *Id.* ¶ 30. Mr. Forbes again declined but invited Sergeant Power to take the seat next to him if he wished to talk. As the concert continued, the police officers allegedly asked some audience members to leave plaintiffs' row and the officers removed some chairs that were between the aisle and plaintiffs' seats. When the concert ended, the officers allegedly charged plaintiffs, knocking down Mrs. Forbes. An officer allegedly held her on the ground while others tackled Mr. Forbes, handcuffed him, and took him to the 20th Precinct.

[3]     The Complaint alleges upon information and belief that this guard was either defendant DeJesus or defendant Felipe.

Mr. Forbes was held for approximately one hour and was issued two summonses: one for disorderly conduct and one for trespassing. Supporting affidavits for both of these summonses were signed by defendant DeJesus, a Lincoln Center security guard. In addition, while retrieving Mr. Forbes at the precinct, Mrs. Forbes was allegedly told by a police officer that defendant Felipe (another Lincoln Center security guard) had called the police regarding Mr. Forbes.

**\*3** Plaintiffs allege that no other concert goers were arrested or "harassed" by Lincoln Center security that night and believe that Mr. Forbes' comment about the Great Lawn struck a nerve of Lincoln Center because of its relationship with the City as it relates to Central Park and the Great Lawn. Specifically, the complaint alleges that under regulations proposed by the New York City Department of Parks and Recreation in 2005, "resident organizations of the Lincoln Center [were to be] granted privileged access to the Great Lawn of Central Park. Of only six large events ... that [were to] be permitted [under the regulation] in that traditional public space every year, four [were to] be exclusively allocated to The New York City Philharmonic and the Metropolitan Opera." *Id.* ¶ 11. From this policy, plaintiffs impute a conspiracy between the Lincoln Center defendants and the

City of New York to chill speech in favor of greater access to the Great Lawn. In turn, plaintiffs assert that Mr. Forbes was harassed, assaulted, and arrested pursuant to this policy —*i.e.,* to shut him up in order to avoid public scrutiny of the Lincoln Center's resident organizations' "privileged" access to the Great Lawn.

## *DISCUSSION*

### I. Motion to Dismiss Standard

In considering a Rule 12(b)(6) motion to dismiss, this Court must accept as true the facts alleged in the amended complaint, drawing all reasonable inferences in plaintiffs' favor. *Bolt Elec ., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995). Though the amended complaint "does not need detailed factual allegations" to survive a motion to dismiss, plaintiffs cannot rely on a "formulaic recitation of the elements of a cause of action" and must, at a minimum, sufficiently plead the facts underlying the claim "to raise the right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly,* 550U.S. 544, 127 S.Ct. 1955, 1965 (2007) (internal citations omitted). In other words, to state a claim, the complaint must contain enough facts to suggest that the allegations are "plausible." *See id.; In re AOL Time Warner, Inc. Sec. Litig.,* 503 F.Supp.2d. 666, 670 (S.D.N.Y.2007) ("[T]he touchstone for a well-pleaded complaint under Federal Rules of Civil Procedure 8(a) and 12(b)(6) is plausibility.").

### II. State Action

The Lincoln Center defendants claim that plaintiffs' Section 1983 claims must be dismissed for failure to sufficiently allege that the Lincoln Center defendants acted "under color of" state law. This requirement emanates from the distinction between "state action subject to Fourteenth Amendment scrutiny and private conduct (however exceptionable) that is not." *Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295 (2001). In other words, "[t]he ultimate issue in determining whether a person [may bring] suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?' " *Rendell–Baker v. Kohn,* 457 U.S. 830, 838 (1982) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982)).

*4 There is no "simple line" that can be used to delineate what is, or what is not, state action:

> What is fairly attributable [to the state] is a matter of normative judgment, and the criteria lack rigid simplicity. From the range of circumstances that could point toward the State behind an individual face, no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government.

*Brentwood,* 531 U.S. at 295. Courts are tasked with determining whether there exists "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.' " *Id.* (quoting *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 351 (1974)). While the determination is "necessarily a fact-bound inquiry," *Lugar,* 457 U.S. at 939, which requires "sifting facts and weighing circumstances" unique to each case, *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 722 (1961), the Supreme Court has "identified a host of facts that can bear" on state action. *Brentwood,* 521 U.S. at 296. These facts, or factors, are not necessarily separate and may overlap depending on the context. Accordingly, we must view the facts of this case in their totality rather than putting plaintiffs' allegations to a series of tests. Nonetheless, before conducting this broad, flexible analysis, we survey the individual factors that could support a finding of state action in this case.

### A. Background State Action Factors

#### 1. Public Function

We start with the public function factor. Under this concept, a private entity may be considered a state actor if it performs a function "traditionally the exclusive prerogative of the State." *Jackson,* 419 U.S. at 353. This factor is quite narrow and only a few functions have been held to be public. *See Doe v. Harrison,* 254 F.Supp.2d 338, 343 (S.D.N.Y.2003). However, two functions that have been characterized as public in some contexts are of potential relevance to this case.

2008 WL 3539936

### a. The Operation of a Public Park

The first relevant public function is the maintenance and operation of a public park. In *Evans v. Newton,* the Supreme Court examined a privately controlled park's desire to enforce a racially discriminatory covenant and concluded that the "public character of th[e] park require[d] that it be treated as a public institution," thereby invalidating the covenant. 382 U.S. 296, 302 (1966). The Court noted that "[m]ass recreation through the use of parks is plainly in the public domain." *Id.* However, in *Flagg Brothers, Inc. v. Brooks,* the Court expressed doubts that *Evans* stood for the proposition that "the operation of a park for recreational purposes is an exclusively public function." 436 U.S. 149, 159 n. 8 (1978). And we are aware of no case that found state action solely based on on the cited portion of *Evans.*

### b. Police Function

**\*5** The second public function of import to this case is the exercise of police authority. *See Flagg Bros.,* 436 U.S. at 163–64. In *Griffin v. Maryland,* a security officer who was employed by a private park was deemed to be a state actor because he had been deputized as a special deputy sheriff by the municipality, carried a badge, and identified himself as a deputy sheriff. 368 U.S. 130, 135 (1964). However, the Supreme Court has never held that municipalities are not able to delegate some police functions to private entities. Indeed, it is well-established that private citizens may effectuate arrests without becoming state actors. *See Carey v. Continental Airlines, Inc.,* 823 F.2d 1402, 1404 (10th Cir.1987); *cf. Doe v. Rosenberg,* 996 F.Supp. 343, 356 (S.D.N.Y.1998) ("Private commitment [to a hospital] is no more state action than a citizen's arrest ....") (citing *Spencer v. Lee,* 864 F.2d 1376, 1380 (7th Cir.1989)). Thus, *Griffin,* like *Evans,* is properly limited to its facts and, in turn, the public function doctrine does not generally provide a strong foundation for a finding of state action.

### 2. Joint Action

The next factor encompassed by plaintiffs' state action allegations is joint action. *See Dennis v. Sparks,* 449 U.S. 24, 27 (1980) ("[T]o act 'under color of state law for § 1983 purposes ... [i]t is enough that [the private party] is a willful participant in joint action with the State or its agents."). This factor is a more frequent basis for a finding of state action and has, for example, reappeared in the context of arrests. *See, e.g., Murray v. Wal–Mart, Inc.,* 874 F.2d 555, 559 (8th Cir.1989); *Smith v. Brookshire Brothers, Inc.,* 519 F.2d 93,

94 (5th Cir.1975). The touchstone of joint action is often a "plan, prearrangement, conspiracy, custom, or policy" shared by the private actor and the police. *See Ginsberg v. Healey Car & Truck Leasing, Inc.,* 189 F.3d 268, 272 (2d Cir.1999); *see also Smith,* 510 F.2d at 94–95 (finding state action evidence showed a "pre-arranged plan" whereby the police officers would arrest alleged shoplifters detained at a store without any independent investigation). The Supreme Court has also explained joint action through the concept of a "meeting of the minds" between law enforcement and private individuals. *See Adickes v. Kress & Co.,* 398 U.S. 144, 158 (1970). In *Adickes,* a white teacher was refused service at a Mississippi restaurant because she was with her black students, and she was subsequently arrested by a police officer outside the restaurant for vagrancy. Because the defendants had not adequately rebutted her claim that the restaurant employee and the police officer had communicated—albeit tacitly—to "reach[ ] an understanding" to violate her rights, the Court refused to grant summary judgment. *Id.* at 152. In sum, the joint action factor epitomizes the flexible and nuanced state action analysis laid out in *Brentwood.* The entire nature of the relationship between the state and the individual alleged to be a state actor—not merely the outward manifestations of that relationship—is to be considered. *See Brentwood,* 531 U.S. at 301 (recognizing that state action can occur through "winks and nods").

### 3. Entwinement

**\*6** The final state action factor of relevance to this case is the entwinement concept, which is best represented by *Brentwood* itself. In that case, the Supreme Court considered whether an association of public and private schools organized to regulate interscholastic sports was a state actor. Because the vast majority (84 percent) of the association's members were public schools, represented by public school officials in their official capacity, who "d[id] not merely control but overwhelmingly perform[ed] all but the purely ministerial acts by which the Association exists and functions in practical terms," the association was sufficiently entwined with its public school members to be a state actor for the purposes of § 1983. *Id.* at 299–300. Entwinement, therefore, can be said to exist where a purportedly private entity takes on a public character in its composition or operations.[4] Often, this factor is stated alternatively with reference to the concepts of "symbiosis", "interdependence," and "entanglement," which are discussed below.

4    For example, the Second Circuit has found evidence of "pervasive entwinement" when the following requirements are met: "(1) the government created the corporate entity by special law, (2) the government created the entity to further governmental objectives, and (3) the government retains 'permanent authority to appoint a majority of the directors of the corporation' ...." *Hack v. President and Fellows of Yale College,* 237 F.3d 81, 84 (2d Cir.2000) (quoting *Lebron v. National Railroad Passenger Corp .,* 513 U.S. 374, 400 (1995)).

**B. Analysis of Plaintiff's Theories**

Borrowing from the above aspects of the state action doctrine, plaintiffs argue that the Lincoln Center defendants acted "under color of" state law by (1) serving as agents of the City in their "stewardship" of Damrosch Park and (2) conspiring with the police officers who arrived at the scene to restrict Michael Forbes's speech and arrest him. In this way plaintiffs essentially present a public function argument and a joint action argument, with the entwinement concept overlaying both to unite the whole. While we agree with plaintiffs that it is not necessary to neatly cabin their arguments within the public function, joint action, and entwinement theories, separating the different aspects of plaintiffs' arguments along public function and joint action axes—as plaintiffs themselves have done—is useful in this particular case as it allows for a clear delineation between the viable and non-viable portions of plaintiffs' state action allegations.

**1. Lincoln Center's "Stewardship" of The Park: Public Function and Symbiosis**

Plaintiff's "stewardship" argument is a macro view; it is based on allegations about the overall relationship between the City and the Lincoln Center Defendants as it pertains to Damrosch Park. To plaintiffs, the essential component is the Licensing Agreement between the City and Lincoln Center, which requires Lincoln Center to provide security in Damrosch Park "on behalf of and as an agent of the City of New York" and also gives Lincoln Center exclusive scheduling rights for "festival events" in the park during July, August, and September. Pls. Br. 5; Decl. of Kenneth M. Labbate in Supp. of Lincoln Center Defs.' Mot. to Dismiss Ex. 2. 5 Despite Lincoln Center's substantial role in the park, we nonetheless find that these provisions cannot, by their own terms, support a finding of state action in this case.

5    Beyond this document, plaintiffs cite *Hotel Employees & Restaurant Employees Union, Local 100 of New York, N.Y. & Vicinity, AFL CIO v. City of New York Department of Parks & Recreation ("H.E.R.E.''),* 311 F.3d 534 (2d Cir.2002), which involved speech restrictions on Lincoln Center's grounds. Although the Court in *H.E.R.E.* did not conduct a state action analysis, the case sheds further light on how the operations of the Lincoln Center complex are apportioned between the City and the private organizations residing within Lincoln Center.

**\*7** First, as noted, the Supreme Court has cast doubt on the theory—emanating from *Evans*—that "the operation of a park for recreational purposes is an exclusively public function." 6 *See Flagg Brothers,* 436 U.S. at 159 n. 8. Second, it is well-established that a lease agreement between a private party and the government is not sufficient to create state action by itself. *See Lansing v. City of Memphis,* 202 F.3d 821, 382 (6th Cir.2000). Third, providing general security services, such as crowd control, in Damrosch Park does not make the Lincoln Center defendants state actors. 7 *See Wade v. Byles,* 83 F.3d 902, 906 (7th Cir.1996) (finding that the performance of security duties, including the power to arrest, on public property did not render a private security guard a state actor). Thus, we find that plaintiffs have not sufficiently alleged state action along the public function dimension.

6    We also note that it is possible to further distinguish this case from *Evans,* where the private entity owned the park, because Lincoln Center does not appear to have complete control of Damrosch Park and arguably, does not operate it for "recreational purposes" as the term appears to have been used in *Evans. See Evans,* 382 U.S. at 302 (discussing "mass recreation").

7    Plaintiffs emphasize that, under the Licensing Agreement, the Lincoln Center act as an "agent" of the City. Pls. Br. 5–6. We reject the idea that this contractual definition has a significant impact on the state action question. As plaintiffs themselves repeatedly note, the state action analysis is functional as it looks beyond simple categories or tests to evaluate the entire scope of the interactions at issue. *See* Pls. Br. 11; *Brentwood,* 531 U.S. at 295.

However, in fairness, plaintiffs "stewardship" claim is broader than a simple public function argument. Plaintiffs also assert that, through the Licensing Agreement, the City and Lincoln Centered entered into a "symbiotic" relationship. This concept originating in *Burton v. Wilmington Parking Authority* and is closely related to the "entwinement" concept of *Brentwood.* In *Burton,* the Supreme Court found that a private restaurant's discriminatory policy constituted state action because the restaurant was located in a public parking building and the "profits earned by discrimination not only contribute to, but also are indispensable elements in, the financial success of a governmental agency" (which had constructed the building). *See Burton,* 365 U.S. at 724.

While at least one case in this district has used the symbiotic relationship concept to deny a motion to dismiss where a licensing agreement between a city and a private entity confers mutual benefits, *see Gibbs–Alfano v. Ossining Boat & Canoe Club, Inc.,* 47 F.Supp.2d 506, 513 (S.D.N.Y.1999), the weight of authority suggests that *Burton* itself is highly circumscribed authority. *See Khulumani v. Barclay Nat. Bank Ltd.,* 504 F.3d 254, 314 n. 8 (2d Cir.2007); *Perkins v. Londonderry Basketball Club,* 196 F.3d 13, 20–21 (1st Cir.1999); *Young v. Halle Housing Assocs., L.P.,* 152 F.Supp.2d 355, 363 (S.D.N.Y.2001).* When courts do apply the symbiosis factor, they often examine whether the government has control over the private actor's "day-to-day" operations and whether the government shares in any profits the private entity has generated *from the challenged conduct. See Perkins,* 196 F.3d at 21 ("[T]his [latter] factor implicates only profits arising from the challenged conduct, rather than from the relationship as a whole .); *Murphy v. New York Racing Ass'n, Inc.,* 76 F.Supp.2d 489, 495–96 (S.D.N.Y.1999) ("[T]he most important aspect of *Burton's* holding, according to subsequent Supreme Court opinions, is its holding that "profits earned by discrimination not only contribute [d] to, but also [were] indispensable elements in, the financial success of a governmental agency.") (quoting *Burton,* 365 U.S. at 724 and citing *Rendell–Baker v. Kohn,* 457 U.S. 830, 843 (1982)). In this way, "symbiosis" applies only where the alleged relationship has clear nexus with the conduct alleged to be unconstitutional. [8]

[8]    In *Gibbs–Alfano,* where a "mutually beneficial relationship" was found and where the city had a lease arrangement with a private entity somewhat similar to the agreement in this case, such a nexus existed. The yacht club defendant in that case excluded an interracial couple, thereby violating the non-discrimination provision of the lease. But, when informed of the yacht club's actions, the city did nothing and continued to enjoy the benefits of the license agreement. *See Gibbs–Alfano,* 47 F.Supp.2d at 513.

**\*8**   Accordingly, in this case, while the Licensing Agreement certainly confers benefits on each party, [9] this overall relationship cannot be the crux of plaintiffs' state action claim. Instead, plaintiffs are required to allege state action with respect to the operation of Damrosch Park and the alleged speech restrictions imposed by the Lincoln Center Defendants. In this respect, we conclude that they not have mustered enough force behind their complaint. First, the Licensing Agreement does not grant the City an oversight role in the "festival events" Lincoln Center can schedule in Damrosch Park. Second, there is no allegation that the City benefits financially from these events, let alone from any alleged speech restrictions imposed by Lincoln Center. As such, without specific allegations suggesting that the City has "insinuated itself" into Lincoln Center's management of Damrosch Park and the alleged chilling of speech, more specifically, culling state action from the provisions of the Licensing Agreement would threaten to render any lessee of state property a state actor, *Cf. Hadges v. Yonkers Racing Corp.,* 918 F.2d 1079, 1082 (2d Cir.1990) ("To be sure, the State gains greater revenues if [the defendant corporation] prospers. If this link were sufficient to forge a symbiotic relationship between [the defendant] and the State, however, the actions of every successful corporation within the State would qualify as state action.").

[9]    *See generally H.E.R.E.,* 31 F.3d at 540 (discussing the history of Lincoln Center, which "was conceived as part of an urban renewal project").

In sum, plaintiffs' "stewardship" allegations—to the extent they are based on the Licensing Agreement and related documents submitted with the parties' motion papers—are not enough to defeat the Lincoln Center defendants' motion to dismiss. Put differently, we do not find it possible to deem Lincoln Center a state actor based solely on its overall relationship with the City. Rather, the specific interactions between the City and the Lincoln Center defendants are the key to state action analysis in this case.

**2. Lincoln Center Defendants Conspiracy With the Police: Joint Action and Entwinement**

Having determined that plaintiffs' state action allegations must rise or fall based on allegations surrounding the night in question, we turn to plaintiffs' second theory: that a conspiracy between Lincoln Center and the police existed to chill speech in support of greater access to the Great Lawn in Central Park. This theory relies on the joint action factor which, as noted, is a stronger basis for state action than the public function or symbiosis theories. Not infrequently, courts find joint action where, pursuant to a *prearranged custom, practice, or policy,* the police rely disproportionately on an otherwise private actor's "say-so" to make an arrest. *See Bartholomew v. Lee,* 889 F.2d 62, 63 (5th Cir.1989). Such a policy is different from a situation in which a private actor merely reports criminal activity to police officers, who act accordingly. *See Ginsberg,* 189 F.3d at 272.

 **\*9** In this case, plaintiffs allege that, based on an agreement between the City and Lincoln Center to chill speech urging greater access to the Great Lawn, the police would arrest those who advocated greater access to the Great Lawn and were identified by the Lincoln Center Defendants. While we are skeptical that plaintiffs will ultimately be able to prove this conspiracy, we conclude that they have made sufficient allegations to survive the motion to dismiss.

As an initial matter, the complaint alleges that Mr. Forbes was singled out despite the fact that many other members of the audience were outspoken. Compl. ¶ 19. While the complaint would be stronger if it also alleged that the Lincoln Center security guards or the police specifically warned him about the content of his speech, this allegation of disparate treatment is enough to raise an inference that it was the content of Mr. Forbes's speech that triggered the events in question.

Next, the alleged interactions between the Lincoln Center security guards are consistent with the general pattern present in many joint action cases involving arrests. To review, plaintiffs' basic story is that after Mr. Forbes's comment about the Great Lawn, the Lincoln Center security guard defendants repeatedly approached Mr. Forbes to tell him to be quiet and hovered ominously in the aisle near his seat. Compl. ¶¶ 21, 24, 25–26. Then, with the Lincoln Center security guards remaining in the aisle, police officers arrived at the scene and were directed towards Mr. Forbes by the Lincoln Center security guards. *Id.* ¶¶ 30–32. The police officers then allegedly began to remove concert-goers and their chairs from the row in which plaintiffs were sitting and then arrested Mr. Forbes, knocking Mrs. Forbes over in the process. Although the complaint does not allege specifics about the

communications between the Lincoln Center defendants and the police, the allegation that the two sets of defendants huddled together and "an indication in the direction" of plaintiffs was made by the Lincoln Center security staff, *id.* ¶ 30, raises an inference that the police relied on the Lincoln Center security guards' assessment of the situation. Moreover, it is alleged that defendant Felipe, a Lincoln Center security guard, called the police to seek assistance with Mr. Forbes. *Id.* ¶ 38. More importantly, the summonses issued against Mr. Forbes do not reflect that the complaining officer personally observed the conduct that led to Mr. Forbes' arrest.[10] *Id.* ¶ 40; Decl. of Jeffrey A. Rothman in Opp. to Lincoln Center Defs. Mot. to Dismiss Ex. A. Instead, supporting affidavits for the summonses were signed by defendant DeJesus, another Lincoln Center security guard. *Id.* ¶ 41.

[10]    On the forms, the line "I personally observed the commission of the offense charged above" is crossed out on the first page. However, the same language appears on the second page of the forms and is not crossed out.

It must be emphasized again that "[w]here a private person merely seeks the assistance of the police to quell a disturbance, the private party is not 'jointly engaged' in the police officer's conduct so as to render it a state actor under § 1983." *Liver v. Hair Anew,* No. 99 Civ. 11117(SAS), 2000 WL 223828, at \*2 (S.D.N.Y. Feb. 25, 2000). Nonetheless, plaintiffs' allegations do contain the pivotal elements present in many joint action cases. Given plaintiffs' allegations that Lincoln Center and the City shared an interest in keeping protests about the use of the Great Lawn to a minimum because of Lincoln Center's "privileged" access,[11] *id.* ¶ 42, the above fact pattern is consistent with joint action based on a mutual understanding or a "meeting of the minds." *See Adickes,* 398 U.S. at 158; *see also Ginsberg,* 189 F.3d at 271; *Murray,* 874 F.2d at 559; *Smith,* 519 F.2d at 94.

[11]    The Lincoln Center defendants assert that, because plaintiffs "fail to make any allegation that there is a *legal relationship* between [Lincoln Center] and the New York Philharmonic or the Metropolitan Opera," the conspiracy allegation collapses on itself. We find this argument disingenuous. There can be no disputing that Lincoln Center and its resident organizations share the same broad mission and rely on each other for their respective well-being. Some of the organizations housed at Lincoln Center also share financial interests with

Lincoln Center. For example, the fact the Lincoln Center and the New York Ballet share a layer of insurance coverage was the reason Chief Judge Wood chose to recuse herself from this matter. Given this, the details of the relationship between Lincoln Center and the New York Philharmonic and the Metropolitan Opera are not of consequence at this stage.

**\*10** In addition, plaintiffs are correct to note that many state action cases of this ilk are decided on summary judgment or after. *See, e.g., Ginsberg,* 189 F.3d 268 (summary judgment); *Murray,* 874 F.2d 555 (bench trial). Subject to the limitation discussed below, plaintiffs should be able to develop the record. But plaintiffs should also realize that we arrive at this conclusion only by drawing all reasonable inferences in their favor. Given type of communications between the City defendants and the Lincoln Center defendants that will be needed to allow plaintiffs' conspiracy theory to survive summary judgment, we are skeptical that plaintiffs will be able to overcome that hurdle. We reiterate that joint action usually depends on a customary plan or policy evidenced by a pattern of conduct. The contours of this prearrangement—in both theory and practice—remain extremely vague at this point.

Before concluding, however, we address the entwinement concept that appears as part of plaintiffs' allegations that a conspiracy between the City and the Lincoln Center Defendants explains the actions taken against plaintiffs. Plaintiffs rely on *Wickersham v. City of Columbia,* 481 F.3d 591 (8th Cir.2007), to argue that the two sets of defendants were so "entangled" as to create state action. In that case, the Eighth Circuit affirmed the grant of an injunction permitting a non-profit group to engage in expressive conduct at an airshow put on by a private organization. Because City of Columbia police officers were placed at the disposal of the private entity and actively enforced the entity's speech restrictions, the court found—under both joint action and "pervasive entangle[ment]," [12]—that the organizer of the airshow "was a state actor when it interfered with appellees' expressive activities." *Id.* at 599.

[12] The use of the adjective "pervasive" before "entanglement" indicates that the *Wickersham* Court was using entanglement as a synonym for the term "entwinement" discussed in *Brentwood. See Brentwood,* 531 U.S. at 291 (stating its holding in terms of "pervasive entwinement").

While *Wickersham* is analogous to this case along the joint action axis of the state action map (for the reasons discussed above), we do not think the "entanglement" concept applies here. There was virtually total entanglement in *Wickersham:* for example, there was no private security force at all and the head of the police force testified that he would do whatever the head of the private organization directed, even if it meant "remov[ing] someone on account of that person's race ...." *Id.* at 595. This structure revealed that, like the scholastic athletic association in *Brentwood* (which was overwhelmingly composed of public officials acting in their official capacity), the lines between the private and public entities were so blurred that the private party and the state constituted *one* actor for all intents and purposes. This is not the case here. As the complaint and the Licensing Agreement itself make clear, the Lincoln Center security forces and the City police operate in different spheres rather than as one unit. For example, the complaint indicates that the police responded to the scene as back-up for the Lincoln Center security guards. Thus, while the private and public entities certainly worked together, it cannot be said that they became a single united entity sufficient to trigger the entanglement/ entwinement concept.

## C. Limited Discovery

**\*11** The result of the foregoing has been to separate the viable aspects of plaintiffs' state action allegations from the legally insufficient. While we are fully aware that it is not always necessary to make such a delineation, the state action claim in this case only presents a viable joint action theory and does find support from the public function, symbiosis, or entanglement/entwinement concepts. Accordingly, discovery in this case shall be limited to the joint action aspect of plaintiffs' case. This is not to say that a document request, written discovery request, or deposition question may not touch upon the public function, symbiosis, or entanglement/ entwinement concepts in some way. However, based on this opinion, only the claims (1) that the City and Lincoln Center shared a desire to chill speech in support of greater access to the Great Lawn, and (2) that the police and the Lincoln Center Defendants entered into an agreement to enforce such speech restrictions—as opposed to the overall relationship between the City and Lincoln Center—should be the focus of discovery. Sweeping attempts to explore the entire relationship between the City and Lincoln Center will be rejected.

## IV. State Law Claims

2008 WL 3539936

We also deny the Lincoln Center Defendants' motion to dismiss plaintiffs' state law claims against them. Because we have not dismissed plaintiffs' Section 1983 claims and because the strength of many of these claims—for example, the false arrest and malicious prosecution claims—will depend on the evidence relating to whether the Lincoln Center defendants acting jointly with the police, we will explore them, if necessary, upon a motion summary judgment. [13]

[13]   The complaint contains a count of civil conspiracy but plaintiffs concede that it is not viable as a separate cause of action. *See* Pls. Br. 24. To the extent necessary, it is dismissed as a separate cause of action.

### *CONCLUSION*

For the foregoing reasons, the Lincoln Center defendants' motion to dismiss is denied.

**IT IS SO ORDERED**

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 3539936

---

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Walters v. Suffolk County, Not Reported in F.Supp.3d (2014)
Case 5:20-cv-00937-GTS-TWD    Document 17    Filed 05/18/21    Page 37 of 67
2014 WL 940734

2014 WL 940734
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Kenneth A. WALTERS, Plaintiff,

v.

SUFFOLK COUNTY, Nabil Saleh, Po Miller,
Doctor Cara Choy, Nurse Joanne Williams, John
Does (1–5) and Jane Does (1–5), Defendants.

No. 09–CV–556 (MKB).
|
Signed March 11, 2014.

**Attorneys and Law Firms**

Kenneth A. Walters, Shirley, NY, pro se.

Nabil Saleh, Lake Ronkonkoma, NY, pro se.

Brian C. Mitchell, Susan A. Flynn, Hauppauge, NY, Ralph
Pernick, New York State Attorney General, Mineola, NY, for
Defendants.

### *MEMORANDUM & ORDER*

MARGO K. BRODIE, District Judge.

**\*1** Plaintiff Kenneth A. Walters commenced the above-
captioned action, *pro se,* on February 9, 2009. On May 20,
2010, Plaintiff filed a Second Amended Complaint alleging
what appear to be violations of the Fourth and Fourteenth
Amendments. On June 7, 2013, Defendants Cara Choy and
Joanne Williams moved to dismiss the Second Amended
Complaint for insufficient service of process pursuant to Rule
12(b)(5) of the Federal Rules of Civil Procedure. On May
24, 2013, Defendant Suffolk County moved for summary
judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure. In serving its motion for summary judgment,
Suffolk County included a supplemental Notice to *Pro S* e
Litigants letter in compliance with Rule 56.2 of the Local
Rules of the United States District Courts for the Southern and
Eastern Districts of New York ("Local Rules") and reminded
Plaintiff that his response was due by June 12, 2013. (Docket
Entry No. 109.) Plaintiff did not respond to the motion for
summary judgment but has opposed the motion to dismiss the
Second Amended Complaint by Choy and Williams. At oral

argument on February 21, 2014, the Court, on consent of the
parties, converted Defendant Nabil Saleh's letter dated June
25, 2013, (Docket Entry No. 100), to a motion for summary
judgment and heard testimony from Saleh. The Court also
granted Suffolk County's motion for summary judgment at
oral argument. The Court explains below its grant of summary
judgment as to Suffolk County and decides the remaining
motions.

**I. Background**

**a. Defendants Named in Plaintiff's Complaints**
On February 9, 2009, Plaintiff commenced this action against
Suffolk County, the Suffolk County Police Department, Stony
Brook Medical Center, Police Officer Miller, Registered
Nurse Jane Doe and Registered Nurse John Doe, alleging,
*inter alia,* that Plaintiff was the victim of excessive force by
Officer Miller. (Docket Entry No. 1.) Plaintiff also alleged
that Suffolk County failed to train and supervise its officers
and operated with depraved indifference to its officers'
use of excessive force. (*Id.*) On May 20, 2010, Plaintiff
filed a Second Amended Complaint against Steven Levy,
individually and in his official capacity, Richard Dormer,
individually and in his official capacity, Police Officer Scott
Miller, [1] individually and in his official capacity, Police
Officer O'Brien, individually and in his official capacity,
Doctor Cara Choy, individually and in her official capacity,
Nurse Joanne Williams, individually and in her official
capacity, Nabil Saleh, John Does (1–5) and Jane Does (1–5).
(Docket Entry No. 49 ("Second Am. Compl.").) Although the
Second Amended Complaint did not name Suffolk County as
a Defendant in the caption, it did include language in the body
of the complaint alleging municipal liability. (Suffolk Cnty.
56.1 ¶ 3.)

[1]      Police Officer Scott Miller is incorrectly identified
         as "Sean" Miller in Plaintiff's Second Amended
         Complaint and other documents in the record.

**b. History of Service as to Defendants Choy and
Williams**
By Memorandum and Order dated June 4, 2009, the
Honorable Joanna Seybert, previously assigned to this action,
directed "the New York State Attorney General's Office to
ascertain the full names of the unidentified medical staff
whom Plaintiff seeks to sue and the addresses where each may
be served." *Walters v. Suffolk Cnty.,* No. 09–CV–0556, 2009
WL 1605415, at \*4 (E.D.N.Y. June 4, 2009). Judge Seybert

ordered that the State Attorney General comply within 45 days. *Id.* Plaintiff notified Magistrate Judge E. Thomas Boyle, by letter dated August 24, 2009, that the State Attorney General's office ("State Attorney General") had yet to comply with the Court's June 4, 2009 Order. (Docket Entry No. 16.) By letter dated September 25, 2009, Plaintiff notified Judge Seybert of the State Attorney General's noncompliance. (Docket Entry No. 20.) At an initial pretrial conference, held on November 4, 2009, Judge Boyle ordered the State Attorney General to provide Plaintiff with "copies of all his SUNY SB Medical records relating to his admission through the ER on 1/26/09." (Minute Entry Dated Nov. 9, 2009.) On December 10, 2009, Judge Boyle again ordered the Attorney General to provide the names of medical staff by February 26, 2010. (Minute entry dated Dec. 10, 2009.)

**\*2** By letter dated February 27, 2010, the State Attorney General finally provided Plaintiff with a spreadsheet of the names and addresses of Stony Brook University Medical Center staff who provided care to Plaintiff. (Docket Entry No. 95.) However, the spreadsheet did not include an address for Doctor Cara Choy or Nurse Joanne Williams. (*Id.*) Based on the information provided, on May 20, 2010, Plaintiff filed a Second Amended Complaint, naming Choy and Williams as Defendants. (Second Am. Compl. ¶¶ 8–9.) Thereafter, Defendants Choy and Williams, through their counsel, Assistant Attorney General Ralph Pernick, fully participated in pretrial litigation. Not until February 28, 2013, did Choy and Williams serve Plaintiff with a motion to dismiss. (Docket Entry No. 81.)

### c. Substance of Plaintiff's Second Amended Complaint

According to the allegations in Plaintiff's Second Amended Complaint, Plaintiff was arrested on January 26, 2008. (Second Am. Compl. ¶ 13.) Plaintiff was attacked and beaten by Nabil Saleh and rendered unconscious. (*Id.* ¶¶ 13, 16.) While Plaintiff was unconscious, the Suffolk County Police Department dispatched Officers Miller and O'Brien to the scene. (*Id.* ¶ 16.)

Saleh told the officers that he was "arresting" Plaintiff for breaking into a store. (*Id.* ¶ 17.) Officer Miller kicked Plaintiff in the head, chest, and back in an effort to wake him. (*Id.* At some point Plaintiff was transferred to Stony Brook University Medical Center ("Hospital"). (*Id.* ¶ 19.) Choy and Williams placed catheters in Plaintiff's urinary tract and probed and poked Plaintiff mechanically in an effort to wake Plaintiff. (*Id.* ¶ 20.) Plaintiff alleges that Choy and Williams believed Plaintiff to be playing "possum" due to statements

given to them by Officer Miller. (*Id.*) Plaintiff was admitted to the Hospital and was in the Hospital for three days. (*Id.*)

## II. Discussion

### a. Motion to Dismiss Pursuant to Rule 12(b)(5)—Choy and Williams

It is undisputed that Plaintiff has failed to serve the Second Amended Complaint on Choy and Williams. As a result, Choy and Williams moved to dismiss for insufficient service of process pursuant to Rule 12(b)(5).

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Dynegy Midstream Servs., L.P. v. Trammochem,* 451 F.3d 89, 94 (2d Cir.2005) (quoting *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987)). "[W]hen a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano,* 604 F.3d 732, 752 (2d Cir.2010) (quoting *Burda Media, Inc. v. Viertel,* 417 F.3d 292, 298 (2d Cir.2005)); *Khan v. Khan,* 360 F. App'x 202, 203 (2d Cir.2010) (same). Under Rule 4(m), if service is not effected within 120 days, a court shall grant an extension where a plaintiff has shown good cause. Fed.R.Civ.P. 4(m); *see also Zapata v. City of New York,* 502 F.3d 192, 196 (2d Cir.2007). If a plaintiff fails to show good cause, Rule 4(m) allows courts, in their discretion, to dismiss the action or direct that service be effected within a specified time. *Id.; see also Meilleur v. Strong,* 682 F.3d 56, 61 (2d Cir.2012) ("district courts have discretion to grant extensions, and may do so even in the absence of 'good cause' "); *Zapata,* 502 F.3d at 196 (same); *Bogle–Assegai v. Connecticut,* 470 F.3d 498, 508 (2d Cir.2006) (same); *Ostrow v. Parker,* No. 13–CV–3155, 2014 WL 66572, at \*3 (E.D.N.Y. Jan.7, 2014) (same) (citing *Sciotti v. Saint Gobain Containers,* No. 06–CV–6422, 2007 WL 4180737, at \*4 (W .D.N.Y. Nov. 20, 2007)); *Alsaidi v. City of New York,* No. 12–CV–5771, 2013 WL 4052880, at \*3 (E.D.N.Y. Aug.12, 2013) (same).

### i. Plaintiff has Shown Good Cause

**\*3** The Second Circuit has made clear that district courts have discretion to determine whether good cause exists under Rule 4(m). *See Zapata,* 502 F.3d at 197 ("After all, the district court's determinations on whether good cause is present (and, if so, how long an extension would be appropriate) are exercises of discretion."); *Thompson v. Maldonado,* 309 F.3d 107, 110 (2d Cir.2002) ("Although we have not

previously determined the standard of review applicable to Rule 4(m) dismissals for failure to serve process, we join our sister circuits in reviewing such dismissals for abuse of discretion."). In determining good cause, courts in this Circuit have looked at (1) a plaintiff's reasonable efforts to serve defendants, and (2) whether defendants have been prejudiced by the delay. *See Visco v. Brentwood Union Free Sch. Dist.,* No. 13–CV–0011, 2014 WL 66548, at *3 (E.D.N.Y. Jan. 8, 2014) ("The following two factors are relevant in a Court's evaluation of good cause: (1) the reasonableness and diligence of plaintiff's efforts to serve; and (2) the prejudice to defendants from the delay." (quoting *Husowitz v. Am. Postal Workers Union,* 190 F.R.D. 53, 57 (E.D.N.Y.1999))); *Vaher v. Town of Orangetown, N.Y.,* 916 F.Supp.2d 404, 419 (S.D.N.Y.2013) (same); *Smith v. Ford Motor Co.,* No. 07–CV–422S, 2009 WL 2448472, at *2 (W.D.N.Y. Aug.7, 2009) (same).

Under the circumstances here, Plaintiff has made reasonable efforts to serve Choy and Williams. Pursuant to Rule 4(m), Plaintiff should have served Choy and Williams by September 21, 2010. According to Choy and Williams, Plaintiff was aware that he had failed to serve them as they included an improper service affirmative defense in their Answer to the Second Amended Complaint and in their initial pretrial order provisions. (Choy and Williams Mot. to Dismiss Mem. 2–4.) According to Plaintiff, the fault lies with Choy and Williams' counsel for never complying with the Court's June 4, 2009 Order to provide the names and addresses of the medical staff in question. (Pl. Opp'n Mem. 2.)

Subsequent to receiving their names and filing a Second Amended Complaint, Plaintiff made no effort to ensure service on Choy and Williams. The Court recognizes that "[w]hile there is 'an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... such protection 'does not exempt a party from compliance with relevant rules of procedural and substantive law....' " *Johnson v. DHS/ICE,* No. 13–CV–0288A, 2013 WL 6669232, at *3 (W.D.N.Y. Dec.18, 2013) (quoting *Sellers v. Royal Bank of Canada,* No. 12–CV–1577, 2013 WL 1222668, at *1 (S.D.N.Y. March 21, 2013)). Plaintiff knew that he could communicate with the Court by letter—he had effectively done so on prior occasions. Yet, Plaintiff failed to notify the Court of any problems concerning the service of Choy and Williams. Nonetheless, Plaintiff relied on the Court's June 4, 2009 Order which directed the Attorney General to provide Plaintiff *and* the Court with the names and addresses of the medical staff in question within 45 days so that the Court could issue summonses and direct service. *Walters,* 2009 WL 1605415, at *4. Given the clear language of the Court's June 4, 2009 Order, it was reasonable for Plaintiff to rely on said Order even in the face of Choy and Williams' affirmative defense that they were not served with process. The Court finds that under the circumstances, Plaintiff did take reasonable efforts to direct service.

**\*4** With respect to prejudice, the Court finds that Choy and Williams have not been prejudiced by the delay in service. Choy and Williams have participated, without issue, in all stages of pretrial litigation. Furthermore, Choy and Williams failed to move to dismiss the Second Amended Complaint pursuant to Rule 12(b)(5) until three years after Plaintiff filed the Second Amended Complaint. Finally, in neither their initial nor reply memorandum did Choy and Williams argue that they were prejudiced by the delay.

After assessing Plaintiff's reasonable efforts and any possible prejudice against Choy and Williams, the Court finds that Plaintiff has sufficiently shown good cause. [2] However, even absent such a showing, as discussed below, the Court would grant a discretionary extension.

[2] The Court is aware that, as a basic principle, courts in this Circuit agree that "[g]ood cause is generally found only in exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control[,]" *E. Refractories Co. v. Forty Eight Insulations, Inc.,* 187 F.R.D. 503, 505 (S.D.N.Y.1999) (citation and internal quotation marks omitted); *see also Park Plus, Inc. v. Ardeon Realty Corp.,* No. 13–CV–6917, 2014 WL 338543, at *1 (S.D.N.Y. Jan.28, 2014) (same); *Beauvoir v. U.S. Secret Serv.,* 234 F.R.D. 55, 56 (E.D.N.Y.2006) (same), and Plaintiff's *pro se* status is not grounds for an automatic extension of time to serve the complaint, *see G4 Concept Mktg., Inc. v. MasterCard Int'l,* 670 F.Supp.2d 197, 199 (W.D.N.Y.2009) ("[I]gnorance of the law, even in the context of *pro se* litigants, does not constitute good cause under Rule 4(m) .... " (alterations in original) (citations and internal quotation marks omitted)); *Madden v. Town of New Haven,* No. 07–CV–111, 2008 WL 2483295, at *2 (D. Vt. June 17, 2008) (stating that "*pro se* status alone does not constitute good cause"). However, as

discussed above, the State Attorney General was ordered to provide the names and addresses to the Court and the Court ordered that, upon receipt of the information, the Clerk of the Court was to issue summonses and copies of the complaint for service by the United States Marshal for the Eastern District of New York without prepayment of fees. *See Walters v. Suffolk Cnty.,* No. 09–CV–0556, 2009 WL 1605415, at *5 (E.D.N.Y. June 4, 2009). Under these circumstances, the Court is presented with the exceptional situation where Plaintiff's failure to serve process was the result of circumstances beyond his control.

### ii. The Court Will Exercise its Discretion to Extend the Time for Service

Even if Plaintiff had not shown good cause, this Court would nevertheless exercise its discretion and extend the time for Plaintiff to serve Choy and Williams. In determining whether to exercise a discretionary extension under Rule 4(m), courts in this Circuit have agreed upon the importance of four factors: "(1) whether any applicable statutes of limitations would bar the action once re-filed; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether defendant attempted to conceal the defect in service; and [ (4) ]whether defendant would be prejudiced by extending plaintiff's time for service." *Park Plus, Inc. v. Ardeon Realty Corp.,* No. 13–CV–6917, 2014 WL 338543, at *2 (S.D.N.Y. Jan.28, 2014) (quoting *Vaher,* 916 F.Supp. at 420); *Abdul–Hakim Bey v. Hylton,* No. 12–CV–5875, 2013 WL 6642034, at *7 (S.D.N.Y. Dec.16, 2013) (same) (quoting *Songhorian v. Lee,* No. 11–CV–36CM, 2012 WL 6043283, at *4 (S.D.N.Y. Dec.3, 2012)); *Johnson,* 2013 WL 6669232, at *3 (same); *Purzak v. Long Island Hous. Servs., Inc.,* No. 12–CV–1747, 2013 WL 5202711, at *5 (E.D.N.Y. Sept.13, 2013) (same) (quoting *Carroll v. Certified Moving & Storage, Co.,* No. 04–CV–4446, 2005 WL 1711184, at *2 (E.D .N.Y. July 19, 2005)).

Here, the balance of the factors weigh in favor of the Court granting a discretionary extension. It is clear from the record that Choy and Williams did not conceal the defect in service, consequently, the third factor disfavors Plaintiff. Turning to the other factors, the first favors Plaintiff as a dismissal would effectively bar recovery.[3] "[C]ourts have consistently considered the fact that the statute of limitations has run on a plaintiff's claim as a factor favoring the plaintiff in a Rule 4(m) analysis." *Purzak,* 2013 WL 5202711, at *6 (quoting *Carroll,* 2005 WL 1711184, at *2); *Park Plus,* 2014 WL

338543, at *2 (finding that this factor weighed in plaintiff's favor where the statute of limitations would bar recovery of a portion of the damages alleged); *Ostrow,* 2014 WL 66572, at *4 (finding that this factor did not weigh in plaintiffs' favor where there was no statute of limitations issue). The second factor also favors Plaintiff as there is no dispute that Choy and Williams had actual notice of the claims asserted in the Second Amended Complaint. *See Jordan v. Forfeiture Support Assocs.,* No. 11–CV–3001, 2013 WL 828496, at *10 (S.D.N.Y. Mar. 5, 2013) (granting extension of time where "it is undisputed that defendant received plaintiff's pleadings"). Finally, the fourth factor favors Plaintiff as Choy and Williams have not shown prejudice. Choy and Williams argue that an extension should not be granted because Plaintiff is not likely to succeed on the merits. (Choy and Williams Mot. to Dismiss Mem. 8–10.) The Court declines to address the merits of Plaintiff's action against Choy and Williams at this time. Although Choy and Williams "will be burdened with the obligation to defend this lawsuit if the extension is granted ... that does not rise to the level of prejudice necessary to tip the balance of this factor in [Defendants'] favor." *Lumbermens Mut. Cas. Co. v. Dinow,* No. 06–CV–3881, 2009 WL 2424198, at *4 (E.D.N.Y. Aug.6, 2009); *see also Purzak,* 2013 WL 5202711, at *7 (same) (quoting *Jordan,* 2013 WL 828496, at *10).

[3]    Plaintiff was arrested on January 26, 2008 and the statute of limitations for a § 1983 action is three years, *see Jones v. City of New York Agencies,* —— F. App'x ——, ——, 2014 WL 185023, at *1 (2d Cir. Jan.17, 2014) ("New York's general personal injury statute of limitations applies to § 1983 claims."). Because Plaintiff's claim arises from events over six years old, his claim would be barred by the statute of limitations and a dismissal of Plaintiff's action will result in an absolute bar to recovery.

**\*5** The Court finds that upon review of the factors set forth above, the equities tip in Plaintiff's favor. Accordingly, the motion to dismiss on behalf of Choy and Williams is denied and Plaintiff is granted 30 days to serve the summons and Second Amended Complaint upon Choy and Williams.

### b. Eleventh Amendment Immunity—Choy and Williams

The Eleventh Amendment protects state officials acting in their official capacities from suits for money damages. *See Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct.

3099, 87 L.Ed.2d 114 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity."); *Jones v. New York State Metro D.D.S.O.,* —— F. App'x ——, ——, 2013 WL 5646015, at *2 (2d Cir. Oct.17, 2013) (holding that "sovereign immunity precludes asserting the claims against [state employees] in their official capacity"); *Mary Jo C. v. New York State & Local Ret. Sys.,* 707 F.3d 144, 151–52 (2d Cir.2013) ("[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." (citation and internal quotation marks omitted)); *Dube v. State Univ. of New York,* 900 F.2d 587, 595 (2d Cir.1990) (noting that a state official acting in her official capacity may only be sued to enjoin conduct that violates the federal Constitution). In the Court's June 4, 2009 Order, claims against then-unnamed Stony Brook Medical Center personnel sued in their official capacities for money damages were dismissed. *Walters,* 2009 WL 1605415, at *3. In Plaintiff's Second Amended Complaint, Choy and Williams were named in their official and personal capacities. Although not raised by Choy and Williams, the Court dismisses sua sponte Plaintiff's § 1983 claims against these individuals in as much as they are being sued in their official capacities for money damages. *See Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.,* 466 F.3d 232, 238 (2d Cir.2006) (recognizing that courts may raise the issue of Eleventh Amendment immunity sua sponte).

### c. Motions for Summary Judgment

### i. Standard of Review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Kwan v. Andalex Grp. LLC,* 737 F.3d 834, 843 (2d Cir.2013); *Kwong v. Bloomberg,* 723 F.3d 160, 164–65 (2d Cir.2013); *Redd v. N.Y. Div. of Parole,* 678 F.3d 166, 174 (2d Cir.2012); *Doninger v. Niehoff,* 642 F.3d 334, 344 (2d Cir.2011). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.,* 444 F.3d 158, 162 (2d Cir.2006) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. The "mere existence of a scintilla of evidence"

is not sufficient to defeat summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.,* 221 F.3d 394, 398 (2d Cir.2000). "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996). "Even in the absence of a response, defendants are entitled to judgment only if the material facts demonstrate their entitlement to judgment as a matter of law." *Brownlee v. Graham,* No. 12–CV–400, 2013 WL 5939697, at *1 (N.D.N.Y. Nov.5, 2013).

**\*6** A *pro se* plaintiff's submission "must be construed liberally to raise the strongest arguments it suggests." *Ford v. Palmer,* 539 F. App'x 5, 6 (2d Cir.2013) (quoting *Walker v. Schult,* 717 F.3d 119, 124 (2d Cir.2013)); *see also Ross v. Westchester Cnty.,* No. 10–CV–3937, 2013 WL 5178354, at *4 (S.D.N.Y. Sept. 16, 2013) ("In considering the summary judgment motion, the Court liberally construes all submissions by the *pro se* plaintiff...."). However, a *pro se* plaintiff still must satisfy the usual requirements of summary judgment. *See Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir.2003) (noting that the liberal construction of *pro se* submissions "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." (citation and internal quotation marks omitted)). When facing a summary judgment motion against a party proceeding *pro se,* the court may conduct "an assiduous review of the record" to determine whether any triable issues of fact exist. *See Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 73 (2d Cir.2001) (quoting *Monahan v. New York City Dep't of Corrections,* 214 F.3d 275, 292 (2d Cir.2000)).

### ii. Defendant Suffolk County

Plaintiff cannot maintain any claim against Suffolk County because Plaintiff has not shown that any alleged constitutional violation occurred pursuant to a municipal policy or custom. A municipality can be liable under § 1983 only if a plaintiff can show an underlying constitutional violation and that a municipal policy or custom caused the constitutional violation. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir.2011) ("[T]o establish municipal liability under § 1983, a plaintiff must prove that action pursuant to official municipal policy caused the alleged constitutional injury." (citation and internal quotation marks

omitted)). "[L]ocal governments are responsible only for their own illegal acts. They are not vicariously liable under § 1983 for their employees' actions." *Connick v. Thompson,* 563 ——U.S. ——, ——, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) (citations and internal quotation marks omitted). *See also Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993) (recognizing that a plaintiff must offer "proof of ... a [municipal] custom or policy in order to permit recovery on claims against individual municipal employees in their official capacities, since such claims are tantamount to claims against the municipality itself"), *overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

Plaintiff failed to respond to Suffolk County's motion for summary judgment and the Court granted the motion at oral argument on February 21, 2014. In reaching its decision the Court considered the allegations of Plaintiff's Second Amended Complaint, treating the Complaint as an affidavit for summary judgment purposes, and determined that Plaintiff failed to present any dispute as to any material fact concerning a municipal policy or custom. Liberally construing the pleadings, Plaintiff only makes two allegations that could support municipal liability. First, Plaintiff alleges that Officers Miller and O'Brien were acting under the authority of the Suffolk County Police Department and were, or should have been, under the direct supervision of Dormer, Suffolk County Police Commissioner. (Second Am. Compl. ¶ 22.) Second, Plaintiff alleges that Officers Miller and O'Brien were acting under the direct supervisory authority of Levy, Suffolk County Executive. (*Id.* ¶ 23.) These allegations do not speak to any municipal policy or custom, but rather to isolated incidents. *See Reynolds v. Giuliani,* 506 F.3d 183, 207 (2d Cir.2007) (to successfully impose municipal liability a plaintiff must show that his constitutional violation "occurred as a result of a [municipal] policy rather than as a result of isolated misconduct by a single actor." (citation omitted)); *see also Tuttle,* 471 U.S. at 823–24 ("[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an ... unconstitutional municipal policy," or that such a "policy was attributable to a municipal policymaker.") Plaintiff's allegations are conclusory and undercut by the earlier—and successful—motion for summary judgment on behalf of Dormer and Levy where the Court dismissed all claims against them. (Minute Entry dated Nov. 29, 2012.)

*7 To the extent that Plaintiff attempts to allege failure to train or failure to supervise claims against Suffolk County, such claims also fail. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick,* 563 —— U.S. at ——, 131 S.Ct. at 1359. "[A] municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* "Deliberate indifference may be inferred where the need for more or better supervision to protect against constitutional violations was obvious, but the policymaker fail[ed] to make meaningful efforts to address the risk of harm to plaintiffs." *Cash,* 654 F.3d at 334 (alteration in original) (citations and internal quotation marks omitted). "Specifically, *Monell'* s policy or custom requirement is satisfied where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds,* 506 F.3d at 192.

Plaintiff offers no evidence concerning Suffolk County's training or lack thereof nor does Plaintiff present any evidence that Suffolk County's policymakers ignored "the risk that its employees would unconstitutionally apply its policies without more training." *Amnesty America v. Town of West Hartford,* 361 F.3d 113, 129 (2d Cir.2004). Any claim based on a failure to train or failure to supervise is therefore dismissed as unsupported by anything other than unsubstantiated allegations.

### iii. Defendant Nabil Saleh

Plaintiff argues that Saleh acted as an "agent" of the of the Suffolk County Police Department. (Second Am. Compl. ¶ 7.) In order to sustain a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.2010) (quoting *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994)). "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (citation and internal quotation marks omitted). The actions of a private entity may be deemed state action only if there "is a sufficiently close nexus between

the State and the challenged action of the [ ] entity so that the action of the latter may be fairly treated as that of the State itself." *Id.* at 52 (citation and internal quotation marks omitted); *see also Sykes v. Bank of Am.,* 723 F.3d 399, 406 (2d Cir.2013) (same). "Whether such a 'close nexus' exists ... depends on whether the State has exercised coercive power or has provided such significant encouragement, either overt or covert, that the [action] must in law be deemed to be that of the State." *Sullivan,* 526 U.S. at 52 (citation and internal quotation marks omitted). State action is satisfied if the private actor was "a willful participant in joint activity with the State or its agents." *Ciambriello v. County of Nassau,* 292 F.3d 307, 324 (2d Cir.2002) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

  **\*8** Plaintiff has failed to produce any evidence that hints at, let alone creates, a material dispute concerning a close nexus between Saleh and the Suffolk County Police Department or any other state actor. On June 21, 2011, Plaintiff submitted a proposed pretrial order which included two signed statements that Saleh made to Suffolk County Police. (Docket Entry No. 63.) In both statements Saleh describes seeing a man committing a burglary at a nearby store, tackling that man and holding him down while waiting for police to arrive. [4] (*See* Statement Forms given to Detectives Alese and J. Ferrara, annexed as Ex. C to Kenneth A. Walters Proposed Pretrial Order.) When the Court heard Saleh's testimony on February 21, 2014, Saleh described no further interaction with the police, only stating that either his produce manager and/or a customer-bystander called the police. [5]

[4]   According to the statement given to Detective Alese, Saleh, while at work, noticed a suspicious vehicle driving very slowly in front of a nearby store. (Statement Form given to Detective Alese ("Statement A") 1:2–7, annexed as Ex. C to Kenneth A. Walters Proposed Pretrial Order.) Saleh then heard an alarm, ran over and saw that the glass was broken on the "Rose Card store." (*Id.* at 1:9–12.) Saleh saw a man placing cigarette cartons into a garbage pail. (*Id.* at 1:13–15.) When the man began to exit the store through the hole in the glass, Saleh tried to keep the man inside the store with his foot. (*Id.* at 1:16–19.) The man was able to get out and swung the store's cash drawer at Saleh but Saleh was able to tackle the man to the ground and held him until Pete, Saleh's co-employee, came to

help. (*Id.* at 1:19, 21–22.) Saleh and Pete then held the man until the police came. (*Id.* at 1:22–23.) Saleh's statement to Detective J. Ferrara largely repeats these assertions. (*See* Statement Form given to Detective J. Ferrara ("Statement B"), annexed as Ex. C to Kenneth A. Walters Proposed Pretrial Order.) In Statement B, Saleh describes seeing the same suspicious vehicle, hearing the alarm and running over to find a man stealing cigarettes. (*Id.* at 1:6–7, 15, 17.) Saleh does not mention anything about broken glass. Saleh states that the man came out the store at which point Saleh grabbed him by the jacket. (*Id.* at 1:17–19.) The man ran toward his vehicle but Saleh tackled him and held him on the ground until the police arrived. (*Id.* at 1:21–23.)

[5]   Saleh testified to seeing a vehicle stop, hearing an alarm and seeing a large hole in the window of the card store near Saleh's workplace. Saleh saw Plaintiff filling a garbage can full of cigarettes. Saleh contacted his produce manager through their walkie-talkies. Saleh then saw Plaintiff try to exit the store through the hole in the glass with a cash register in one hand and the garbage can in the other. Saleh pushed Plaintiff back inside but Plaintiff forced his way out. Saleh pulled Plaintiff by the jacket, placed Plaintiff in a headlock and brought him down to his knees. Saleh testified that his produce manager and a customer-bystander called the police.

During cross-examination by Plaintiff, Plaintiff identified several inconsistencies in Saleh's statements. [6] Although Plaintiff correctly noted that Saleh's statements to Suffolk County police and Saleh's testimony before the Court did not perfectly agree with one another, the inconsistencies are immaterial as they do not concern the operative inquiry—whether Saleh's actions can be reasonably understood as state action. Detaining a supposed criminal while police respond does not expose a private actor to § 1983 liability. *See Forbes v. City of New York,* No. 05–CV–7331, 2008 WL 3539936, at \*5 (S.D.N.Y. Aug. 12, 2008) ("Indeed, it is well-established that private citizens may effectuate arrests without becoming state actors"); *Miqui v. City of New York,* No. 01–CV–4628, 2003 WL 22937690, at \*5 (E.D.N.Y. Dec.5, 2003) (holding that a New York City auxiliary officer, "having no power to arrest beyond that of a private citizen," could not have acted under color of state law when he chased, tackled and beat the plaintiff); *Guiducci v. Kohl's Dep't Stores,* 320 F.Supp.2d 35, 37 (E.D.N.Y.2004) (collecting cases and dismissing a claim

against store-security guards based on the guards' detention, interrogation, and search of a suspected shoplifters); *accord Spencer v. Lee,* 864 F.2d 1376, 1380 (7th Cir.1989) (en banc) (citizens' arrests are not made under color of state law). Plaintiff represented to the Court that Saleh previously stated that the police "directed" him to hold Plaintiff, however, the Court is unable to identify any such statement in the record. Plaintiff has not provided any evidence to support his allegation that Saleh acted as an agent of the Suffolk County Police Department. Consequently, Plaintiff has not shown that Saleh acted under color of state law. Saleh's motion for summary judgment is granted.

6      For example, Plaintiff noted that Saleh initially told police he was unloading bread when he noticed the vehicle yet Saleh testified on February 21, 2014 that he was having a cigarette and coffee when he saw the vehicle.

### III. Conclusion

For the foregoing reasons, the Court denies the motion to dismiss by Choy and Williams but sua sponte dismisses any claims against Choy and Williams in their official capacities and grants the motions for summary judgment by Suffolk County and Nabil Saleh. The Second Amended Complaint is dismissed against Suffolk County and Nabil Saleh. Plaintiff is granted an extension of 30 days to properly serve Choy and Williams in accordance with Rule 4 of the Federal Rules of Civil Procedure.

  **\*9**  SO ORDERED:


**All Citations**

Not Reported in F.Supp.3d, 2014 WL 940734

---

End of Document

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

2009 WL 2868231

2009 WL 2868231
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Quentin LA GRANDE, Plaintiff,

v.

TOWN OF BETHLEHEM POLICE
DEPARTMENT, et al., Defendants.

No. 1:08–CV–0738 (LEK/DRH).
|
Sept. 1, 2009.

**Attorneys and Law Firms**

Quentin La Grande, Albany, NY, pro se.

Nannette R. Kelleher, Bailey, Kelleher Law Firm, Albany, NY, for Defendants.

***DECISION AND ORDER***

LAWRENCE E. KAHN, District Judge.

*\*1* Plaintiff *pro se* Quentin La Grande ("Plaintiff" or "La Grande") commenced the instant action against Defendants Robert Helligrass [1], Stephen Kraz [2] and the Town of Bethlehem Police Department (collectively, "Defendants") pursuant to 42 U.S.C. § 1983. Complaint (Dkt. No. 1). Presently before this Court is Defendants' Motion to dismiss (Dkt. No. 13) and Plaintiff's Motion for summary judgment (Dkt. No. 12). For the following reasons, Defendants' Motion to dismiss is granted and Plaintiff's Motion for summary judgment is denied.

[1]     Incorrectly named in the Complaint as "R.J. Hellierrgrass." *See generally* Complaint (Dkt. No. 1).

[2]     Incorrectly named in the Complaint as "William Craz." *See generally* Complaint.

**I. BACKGROUND**

According to Plaintiff, "[o]n April 1, 2008 I was threaten by Patrol Officer William Craz. Patrol Officer called me a 'Nigger,' and also threaten to cause bodily harm to me. On April 2, 2008 I met with Seargent R.J. Hellierrgrass and was

interogated, and racial harrassed. On or about April 5, 10, 15, May 6, 8, 10, 15, and June 6, 2008, I have been followed by the Bethlehem Police Department." Compl. at 2. Plaintiff's jurisdictional statement asserts that the Complaint is being brought pursuant to 42 U.S.C. § 1983. *Id.* at 1.

In lieu of filing an answer, on March 11, 2009, Defendants filed the Motion to dismiss presently before the Court. Mot. to Dismiss (Dkt. No. 13). Plaintiff also filed a Motion for summary judgment on February 24, 2009, which is now before the Court. Mot. for Sum. Judg. (Dkt. No. 12).

**II. DISCUSSION**

**A. Defendants' Motion to Dismiss**

**a. Standard of Review**

In order to withstand a motion to dismiss, "a [pleading] must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* ––– U.S. ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A party must plead with such factual detail so as to sufficiently " 'nudge [ ][its] claims ... across the line from conceivable to plausible.' " *Iqbal,* 129 S.Ct. at 1950–51 (quoting *Twombly,* 550 U.S. at 570). While stating a claim does not require the recitation of detailed factual allegations, it does, however, require facts sufficient to state a claim to relief that is *prima facie* plausible. *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 555). The Court must accept the allegations in the well-pleaded complaint as true, *Albright v. Oliver,* 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), and draw all inferences in favor of the non-moving party. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1973); *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 154 (2d Cir.2006); *King v. Am. Airlines, Inc.,* 284 F.3d 352, 356 (2d Cir.2002).

In assessing the legal sufficiency of the Complaint, the Court is mindful that La Grande is a *pro se* litigant and his submissions are subject to "less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). The Court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments they suggest.' " *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999); *see Hemphill v. New York,* 380 F.3d

Case 5:20-cv-00937-GTS-TWD   Document 17   Filed 05/18/21   Page 46 of 67
La Grande v. Town Of Bethlehem Police Dept., Not Reported in F.Supp.2d (2009)
2009 WL 2868231

680, 687 (2d Cir.2004) (" "It is well-established that 'when a plaintiff proceeds *pro se* the court is obligated to construe his pleadings liberally, particularly when they allege civil rights violations' ") (quoting *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004)). However, a plaintiff's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983).

### b. Analysis

**\*2** Defendants move to dismiss Plaintiff's Complaint in its entirety pursuant to Rules 12(b)(6) of the Federal Rules of Civil Procedure.[3] Mot. to Dismiss (Dkt. No. 13) at 1. Defendants specifically argue that all causes of action against the Town of Bethlehem Police Department must be dismissed as it is not a legal entity subject to suit under 42 U.S.C. § 1983 and further that Plaintiff's entire Complaint should be dismissed for failing to state a cause of action. *Id.* at 4.

[3]    Defendants argue, alternatively, that Plaintiff's Complaint should be dismissed pursuant to 28 U.S.C. § 1915(e) and for failing to adhere to Rule 8(a) of the Federal Rules of Civil Procedure. The Court need not address these arguments as it is dismissing Plaintiff's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

### i. Town of Bethlehem Police Department

The Town of Bethlehem moves to dismiss Plaintiff's Complaint on the ground that it is not susceptible to suit under 42 U.S.C. § 1983. While a municipality may be susceptible to suit under 42 U.S.C. § 1983, a municipal police department is not. *See Walker v. Waterbury Police Dep't.,* 08–cv–959 (JG)(AKT), 2009 U.S. Dist. LEXIS 7933, at \*5, 2009 WL 261527 (E.D.N.Y. Feb. 4, 2009). "Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued." *Id.* (citing *Hall v. City of White Plains,* 185 F.Supp.2d 293, 303 (S.D.N.Y.2002)). Accordingly, claims asserted under 42 U.S.C. § 1983 will be dismissed against a municipality's police department. *See Walker,* 2009 U.S. Dist. LEXIS 7933, at \*5, 2009 WL 261527 (internal citation omitted); *see also Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999).

Here, Plaintiff has sued the Town of Bethlehem Police Department along with two individual officers of the

department. *See generally* Compl. Plaintiff's Complaint asserts that it is brought pursuant to 42 U.S.C. § 1983 and does not provide any other basis for the claims. *Id.* at 1. Since the Bethlehem Police Department cannot be sued pursuant to 42 U.S.C. § 1983, Plaintiff's Complaint is dismissed as against the Town of Bethlehem Police Department.

Even assuming *arguendo* that Plaintiff's claims against the Town of Bethlehem Police Department can be construed as a claim against the Town of Bethlehem, Plaintiff's Complaint would still be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

In order to state a cause of action for municipal liability under 42 U.S.C. § 1983, "a plaintiff must allege that the municipality has adopted a custom or policy which is the moving force behind the [alleged constitutional violation]." *Zappala v. Albicelli,* 980 F.Supp. 635, 649 (N.D.N.Y.1997). A municipality cannot be held liable on the basis of *respondeat superior* and "a single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." *Campanaro v. City of Rome,* 999 F.Supp. 277, 281 (N.D.N.Y.1998); *see also Dwares v. City of New York,* 985 F.2d 94, 100 (2d Cir.1993).

Plaintiff's Complaint is devoid of any allegations that the Town of Bethlehem had a policy or custom of violating constitutional rights, nor does plaintiff allege or even allude that the Town was deliberately indifferent to his constitutional rights. The complete failure to plead such warrants dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as the Complaint fails to state a cause of action for which relief can be granted under 42 U.S.C. § 1983. *See Campanaro,* 999 F.Supp. at 281; *Dwares,* 985 F.2d at 100.

### ii. Defendants Kraz and Helligrass

**\*3** La Grande's Complaint alleges that between April and June 2008, he was "racially harassed," "threatened" and "interrogated" by Defendants Kraz and Helligrass, two officers of the Bethlehem Police Department. Compl. at 2. Specifically, La Grande alleges that on multiple occasions the officers addressed him with a racial epithet and followed him through town. *Id.* It is well settled in this Circuit that "42 U.S.C. § 1983 is not designed to rectify harassment or verbal abuse." *Murray v. Pataki,* No. 9:03–cv–1263, 2007 U.S. Dist. LEXIS 26959, at \*22, 2007 WL 956941 (N.D.N.Y. Mar. 29, 2007) (Kahn, J.) (quoting *Gill v. Hoadley,* 261 F.Supp.2d 113, 129 (N.D.N.Y.2003)) (collecting cases).

La Grande v. Town Of Bethlehem Police Dept., Not Reported in F.Supp.2d (2009)

2009 WL 2868231

"[V]erbal harassment or profanity alone, unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983." *Murray,* 2007 U.S. Dist. LEXIS, at * 22 (quoting *Moncrieffe v. Witbeck,* 2000 U.S. Dist. LEXIS, at *3, 2000 WL 949457 (N.D.N.Y. June 29, 2000)); *see also Zeno v. Cropper,* 650 F.Supp. 138, 141 (S.D.N.Y.1986) ("vile and abusive language ... no matter how abhorrent or reprehensible cannot form the basis for a § 1983 claim) (internal citation and quotation omitted). Further, "threats do not amount to violations of constitutional rights." *Murray,* 2007 U.S. Dist. LEXIS, at *23 (quoting *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995)).

In this case, Plaintiff's claim for verbal harassment in the form of racial slurs and threats is not actionable under § 1983 and, therefore, fails to state a claim entitled to relief. Compl. at 2.

**B. Plaintiff's Motion for Summary Judgment**

Even assuming *arguendo* that this Court did not grant Defendants' Motion to dismiss, Plaintiff's Motion for summary judgment would still be denied. Under the Local Rules, *"all* motions ... require a memorandum of law, supporting affidavit, and proof of service on all the parties." N.D.N.Y. L.R. 7.1(a) (emphasis added). "All memoranda of law shall contain a table of contents and, wherever possible, parallel citations." *Id.* at 7 .1(a)(1). Further "[a]ny motion for summary judgment shall contain a Statement of Material Facts ... *Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion." Id.* at 7 .1(a)(3) (emphasis in original).

Here, not only did the Plaintiff fail to submit a memoranda of law in support of his Motion for summary judgment and an affidavit but he also failed to submit a Statement of Material Facts. In fact, in his Motion for summary judgment filed on February 24, 2009, Plaintiff explicitly stated, "I will provide this Court with a 'Law Memorandum' in support of my motion; such will contain applicable law, and case law. I will submit this to the Court on or before March 6, 2009." Mot. for Sum. Judg. at 1. To date, this Court has not received said memorandum of law. While this Court recognizes Plaintiff's *pro se* status, he has failed to comply with *all* of the Local Rules. *See Traguth v. Zuck,* 710 F.2d 90, 92 (2d Cir.1983) (a plaintiff's *pro se* status "does not exempt [him] from compliance with relevant rules of procedural and substantive law"). Accordingly, Plaintiff's Motion for summary judgment

is denied for failing to comply with the relevant rules of procedure. *See, e.g.,* N.D.N.Y. L.R. 7.1(a), 7.1(a)(3).

**C. Amended Complaint**

**\*4** Plaintiff also moves to amend his Complaint. Response (Dkt. No. 27). While *pro se* litigants are generally afforded wide latitude and an opportunity to amend, a District Court need not permit an amendment to a Complaint where it would be futile. *See Forman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (holding that although leave to amend should be freely given where justice so requires, a district court need not grant leave if amendment would be futile); *Acito v. Imcera Group, Inc.,* 47 F.3d 47, 55 (2d Cir.1995).

Here, Plaintiff's Complaint does not state any viable causes of action under 42 U.S.C. § 1983. Further, Plaintiffs Complaint does not state which, if any, of his constitutional rights were violated by Defendants nor does it plead any facts to establish municipal liability. Plaintiff's Complaint also does not plead any facts supporting his allegations that he was "racially harassed," "threatened" or "interrogated." Since, as the Court discussed above, none of the complained of actions provides the basis for a cognizable cause of action, leave to cure these defects would be futile. These deficiencies may have been excusable, albeit not cureable, had this Court not previously informed Plaintiff of the requirements for pleading a cause of action under 42 U.S.C. § 1983 against a municipality. *See La Grande v. Albany Police Dep't,* 1:07–CV–757 (Dkt. No. 4). [4] Given that leave to amend would be futile, this Court denies Plaintiff's request.

[4]    Notably, Plaintiff has also filed numerous Complaints in the Northern District, many of which include assertions of civil rights violations and racial discrimination or harassment, wherein Plaintiff has been granted leave to amend his complaints. Plaintiff has filed eleven suits in the Northern District since 2000, including the instant matter. In fact, on May 12, 2008, Chief United States District Judge Norman A. Mordue entered an order enjoining Plaintiff from filing any further actions or pleadings in this district without the prior permission of the Chief Judge. Dkt. No. 6. This Order was entered based on a record of vexatious and frivolous pleadings previously filed by La Grande.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that Defendants' Motion to dismiss (Dkt. No. 13) is **GRANTED in its entirety;** and it is further

**ORDERED,** that Plaintiff's request to amend his Complaint (Dkt. No. 27) is **DENIED;** and it is further

**ORDERED,** that Plaintiff's Motion for summary judgment (Dkt. No. 12) is **DENIED in its entirety;** and it is further

**ORDERED,** that the Clerk serve a copy of this Decision and Order on all parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 2868231

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

---

2012 WL 4052286
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Sylvia JENKINS, Plaintiff,
v.
Mr. LIADKA, Syracuse Police Officer; Mr. Sands,
Syracuse Police Officer; John Doe, Syracuse Police
Officer; and Syracuse Police Dep't, Defendants.

No. 5:10–CV–1223 (GTS/DEP).
|
Sept. 13, 2012.

**Attorneys and Law Firms**

Sylvia Jenkins, Syracuse, NY, pro se.

Hon. Mary Anne Dougherty, Corporation Counsel for
City of Syracuse, Catherine Ena Carnrike, Esq., Assistant
Corporation Counsel, of Counsel, Syracuse, NY, for
Defendants.

**_MEMORANDUM–DECISION and ORDER_**

GLENN T. SUDDABY, District Judge.

 *1 Currently before the Court, in this *pro se* civil rights
action filed by Sylvia Jenkins ("Plaintiff") against Mr. Liadka,
Mr. Sands, John Doe, and Syracuse Police Department
("Defendants"), is Defendants' motion to dismiss Plaintiff's
Complaint for insufficient service of process pursuant to
Fed.R.Civ.P. 12(b)(5) and/or for failure to state a claim
pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 13.) For the
reasons set forth below, Defendants' motion is granted in part
and denied in part.

# I. RELEVANT BACKGROUND

## A. Plaintiff's Complaint

Generally, construed with the utmost of special liberality,
Plaintiff's Complaint asserts three claims against Defendants
arising from an investigatory stop in September 2010, in
Syracuse, New York: (1) a claim that three Syracuse Police
Officers unreasonably searched her in violation of the Fourth
Amendment; (2) a claim that they unlawfully seized, and
failed to return, her personal property in violation of the

Fourth, Fifth, and/or Fourteenth Amendments; and (3) a claim
that they subjected her to excessive force in violation of
the Fourth Amendment. (*See generally* Dkt. No. 1 [Plf.'s
Compl].)

Generally, in support of these claims, Plaintiff alleges as
follows: (1) on the evening of September 9, 2010, she was
stopped on Butternut Street in the City of Syracuse by
two officers, who questioned her regarding a call they had
received; (2) when she told the two police officers that she
did not know what they were talking about and "attempted
to go on about [her] business," the officers became "uptight,
rude, [and] abnormal in their conversations [and] behavior,"
and threatened her; (3) the officers then proceeded to conduct
a search of "all [of Plaintiff and her] personal property,"
and, in the process of doing so, twisted her arm and forced
her onto the front of their police vehicle; (4) a third police
officer arrived, and she was assaulted by all three officers
(hereinafter "Defendants"), who hit her on the back and threw
her onto the police vehicle; (5) following the deprivation on
September 9, 2010, Defendants denied her a post-deprivation
remedy through a combination of threats, intimidation and/
or nonresponsiveness; and (6) Defendants took these actions
against her intentionally because they did not personally like
her, given her previous interactions with the Syracuse Police
Department. (*Id.*)

Plaintiff further alleges that, as a result of this incident,
she suffered various injuries and losses, including (1) a
"tremendous setback in already trying to recover in an [sic]
grave overall manner of my life [and] lifestyle involving
officials internally [and] externally," (2) head and back pain,
and mental suffering, (3) loss of personal property, and, (4)
loss of employment. (*Id.*) As relief, Plaintiff requests an award
of twelve thousand dollars ($12,000) in damages. (*Id.* at ¶ 6.)

Familiarity with the remaining factual allegations supporting
Plaintiff's three claims is assumed in this Decision and Order,
which is intended primarily for review by the parties. (*See
generally* Dkt. No. 1.)

## B. Defendants' Motion
 *2 On May 6, 2011, Defendants filed a motion to dismiss.
(Dkt. No. 13, Attach 2.) Generally, in support of their motion,
Defendants assert the following two arguments: (1) because
the Complaint was not served within the time allowed by
Fed.R.Civ.P. 4 or Local Rule 4.1 of the Local Rules of Practice
for this Court, the Court lacks jurisdiction over Defendants in
accordance with Fed.R.Civ.P. 4; and (2) the Complaint fails

to state a claim upon which relief can be granted, because (a) the Complaint fails to identify what constitutional rights Plaintiff is attempting to vindicate, (b) even if the Complaint has sufficiently identified a constitutional violation, the Complaint fails to allege facts plausibly suggesting the personal involvement of the individual Defendants in any such constitutional violation, (c) the City of Syracuse Police Department does not have the legal capacity to be sued, (d) even if Plaintiff's Complaint can be liberally construed as attempting to assert a claim against the City of Syracuse, the Complaint fails to allege facts plausibly suggesting that the individual Defendants' actions the result of a city policy or custom sufficient to confer municipal liability upon the City, (e) the Fifth Amendment does not govern a plaintiff's deprivation-of-property claim against state actors, (f) the Complaint fails to allege facts plausibly suggesting that force was used or that if force was used it was excessive for purposes of a Fourth Amendment claim, and (g) based on Plaintiff's factual allegations, Defendants Liadka and Sands are protected from liability as a matter of law by the doctrine of qualified immunity. (*See generally* Dkt. No. 13, Attach. 2.)

On June 2, 2011, Plaintiff filed a response to Defendants' motion. Generally, Plaintiff's response, which is handwritten and three pages in length, states that she "definitely oppose[s] [Defendants'] request" for the dismissal of her Complaint. (*See generally* Dkt. No. 17.) However, Plaintiff's response does not address the legal arguments asserted by Defendants for the dismissal of Plaintiff's Complaint. (*Compare* Dkt. No. 17 *with* Dkt. No. 13, Attach. 2.) Although Plaintiff's response was submitted two days after the expiration of the responsedeadline, the Court has accepted it, out of an extension of special solicitude to her as a *pro se* civil rights litigant.

In addition, Plaintiff has filed three letters to the Court on the following dates: July 6, 2011, August 22, 2011, and January 13, 2012. (Dkt. No. 18–20.) Generally, these letters contain assertions that Plaintiff believes that the police are treating her, treating her negatively, and responding unsatisfactorily to her telephone calls. (*Id.*) To the extent that these three letters are intended to constitute papers in opposition to Defendants' motion, the Court will not consider them, because (1) they are not responsive to the motion, and/or (2) they were not submitted in a timely manner. Moreover, to the extent that these three letters are intended to constitute a request for relief, the Court will not consider them, because do not state the relief sought, state with particularity the grounds for seeking the order, and attach a memorandum of law and

affidavit, as required by Fed.R.Civ.P. 7(b) and Local Rule 7.1 of the Local Rules of Practice for this Court.

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Motions to Dismiss for Insufficient Service of Process

**\*3** Rule 4(m) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court-on motion or its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m).

The Local Rules of Practice for this Court shorten the service requirements under Fed.R.Civ.P. 4. Specifically, Local Rule 4.1(b) requires "service of process upon all defendants within sixty (60) days of the filing of the complaint. This expedited service is necessary to ensure adequate time for pretrial discovery and motion practice. In no event shall service of process be completed after the time specified in Fed.R.Civ.P. 4." N.D.N.Y. L.R. 4.1(b).

### B. Legal Standard Governing Motions to Dismiss for Failure to State a Claim

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.,* 549 F.Supp.2d 204, 211, nn. 15–16 (N.D.N.Y.2008) (McAvoy, J., adopting Report–Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading

contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[ ]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed.R.Civ.P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal." *Jackson,* 549 F.Supp.2d at 212, n. 20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson,* 549 F.Supp.2d at 212, n. 17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson,* 549 F.Supp.2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n. 32 (N.D.N.Y.2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed.2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp .2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949–52, 173 L.Ed.2d 868 (2009).

**\*4** Most notably, in *Bell Atlantic Corp. v. Twombly,* the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly,* 127 S.Ct. at 1968–69. Rather than turning on the *conceivability* of an actionable claim,

the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965–74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id .* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*[1]

[1] It should be emphasized that Fed.R.Civ.P. 8's plausibility standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which (when reviewing a *pro se* pleading) the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley,* 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F.Supp.2d at 214 & n. 35 (explaining holding in *Erickson* ).

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not show[n]-that the pleader is entitled to relief." *Iqbal,* 129 S.Ct. at 1950 [internal quotation marks and

citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.,* it "does not impose a probability requirement." *Twombly,* 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal,* 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

This pleading standard applies even to *pro se* litigants. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12. [2] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [3] Stated more simply, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." *Jackson,* 549 F.Supp.2d at 214, n. 28.

[2]    See *Vega v. Artus,* 610 F.Supp.2d 185, 196 & nn. 8–9 (N.D.N . Y.2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

[3]    See *Vega,* 610 F.Supp.2d at 196, n. 10 (citing Supreme Court and Second Circuit cases); *Rusyniak,* 629 F.Supp.2d at 214 & n. 34 (citing Second Circuit cases).

**\*5** Finally, a few words are appropriate regarding what documents are considered on a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). The court may consider the following documents without triggering the summary judgment standard: "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference into the complaint (and provided by the parties),

(3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." *Planck v. Schenectady Cnty.,* 12–CV–0336, 2012 WL 1977972, at \*5 (N.D.N.Y. June 1, 2012) (Suddaby, J.). Moreover, "a pro se plaintiff's papers in response to a defendant's motion to dismiss for failure to state a claim may be considered as effectively amending the allegations of [her] complaint-to the extent those papers are consistent with the allegations in the complaint." *Planck,* 2012 WL 1977972, at \*5.

### C. Legal Standard Governing Unopposed Motions

In this District, when a non-movant fails to oppose a legal argument asserted by a movant in support of a motion, the movant's burden with regard to that argument has been lightened such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b) (3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein...."); *Rusyniak v. Gensini,* 07–CV–0279, 2009 WL 3672105, at \*1, n. 1 (N.D.N.Y.Oct.30, 2009) (Suddaby, J.) (collecting cases); *Este–Green v. Astrue,* 09–CV–0722, 2009 WL 2473509, at \*2 & n. 3 (N.D.N.Y. Aug.7, 2009) (Suddaby, J.) (collecting cases).

### D. Legal Standards Governing Plaintiff's Claims

Because the Court has, in its Decision and Order of March 7, 2011, addressed the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not again recite, in their entirety, those legal standards in this Decision and Order, 9 which is intended primarily for review by the parties. (*See generally* Dkt. No. 5 [Decision and Order].)

### E. Legal Standards Governing Defendants' Defenses

#### 1. Defense of Lack of Separate Identity

"Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dept.,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002). "Pursuant to Fed.R.Civ.P. 17, New York governs the capacity of

a police department to sue or be sued. In New York, police departments like the defendant, which are merely administrative arms of a municipal corporation, do not have a legal identity separate and apart from the town." *Loria v. Irondequoit* 775 F.Supp. 599, 606 (W.D.N.Y.1990). While a municipality can sue or be sued, the police department, which does not exist separate from that municipality, can not. *Baker v. Willett,* 42 F.Supp.2d 192, 198 (N.D.N.Y.1999).

### 2. Defense of Limited Municipal Liability

**\*6** It is well established that "[a] municipality may not be held liable in a Section 1983 action for the conduct of a lower-echelon employee solely on the basis of *respondeat superior.*" [4] "Rather, to establish municipal liability under § 1983 for unconstitutional acts by a municipality's employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy ." [5] "Thus, to hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to ... prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." [6]

[4]  *Powell v. Bucci,* 04–CV–1192, 2005 WL 3244193, at *5 (N.D.N.Y. Nov.30, 2005) (McAvoy, J.); *see also Monell v. Dept. of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("[A] [municipality] may not be held for the actions of its employees or agents under a theory of *respondeat superior." ).*

[5]  *Powell,* 2005 WL 3244193, at *5; *Monell,* 436 U.S. at 690–691 ("[L]ocal governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."); *Batista,* 702 F.2d at 397 ("[M]unicipalities may be sued directly under § 1983 for constitutional deprivations inflicted upon private individuals pursuant to a governmental custom, policy, ordinance, regulation, or decision."); *Smith v. City of New York,* 290 F.Supp.2d 317, 321 (S.D.N.Y.2003) ("In order to establish the liability of [municipal] defendants in an action under §

1983 for unconstitutional acts by [its] employees, a plaintiff must show that the violation of [his or] her constitutional rights resulted from a municipal custom or policy.").

[6]  *Batista,* 702 F.2d at 397, *accord, Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995), *McKeon v. Daley,* 101 F.Supp.2d 79, 92 (N.D.N.Y.2000) (Hurd, J.), *Merriman v. Town of Colonie, NY,* 934 F.Supp. 501, 508 (N.D.N.Y.1996) (Homer, M.J.); *Douglas v. Cnty. of Tompkins,* 90–CV–0841, 1995 WL 105993, at *12 (N.D.N.Y. March 2, 1995) (McCurn, J.), *Keyes v. Cnty. of Albany,* 594 F.Supp. 1147, 1156 (N.D.N.Y.1984) (Miner, J.).

With regard to the first element (the existence of a policy or custom), a "[p]laintiff may establish the 'policy, custom or practice' requirement by demonstrating: (1) a formal policy officially endorsed by the municipality ...; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question ...; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge to the practice of policymaking officials ...; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees...." [7] With regard to the second element (causation), a plaintiff must show "a direct causal link" or "an affirmative link" between the municipal policy or custom and the alleged constitutional deprivation (i.e., that the policy or custom was the "moving force" behind the deprivation). [8]

[7]  *Dorsett–Felicelli, Inc.,* 371 F.Supp.2d 183, 194 (N.D.N.Y.2005) (Kahn, J.) (citing three Supreme Court cases for these four ways), *accord, Dunbar v. Cnty. of Saratoga,* 358 F.Supp.2d 115, 133– 134 (N.D.N.Y.2005) (Munson, J.); *see also Clayton v. City of Kingston,* 44 F.Supp.2d 177, 183 (N.D.N.Y.1999) (McAvoy, J.) (transposing order of second and third ways, and citing five more Supreme Court cases).

[8]  *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional

2012 WL 4052286

deprivation."); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823, n. 8, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ("The fact that municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell'* s requirement that the particular policy be the 'moving force' behind a constitutional violation. There must at least be an affirmative link between [for example] the training inadequacies alleged, and the particular constitutional violation at issue."); *Monell,* 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983. Since this case unquestionably involves official policy as the moving force of the constitutional violation [at issue] ... we must reverse the judgment below."); *Vippolis v. Village of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985) ("A plaintiff who seeks to hold a municipality liable in damages under section 1983 must prove that ... an official policy or custom [was] the cause of the deprivation of constitutional rights.... [T]he plaintiff must establish a causal connection-an affirmative link-between the policy and the deprivation of his constitutional rights.") [internal quotation marks and citation omitted]; *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiff's injury, *Monell* prohibits a finding of liability against the City."); *Powell,* 2005 WL 3244193, at *5 ("Ultimately, the plaintiff must demonstrate a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation.") [internal quotation marks and citation omitted].

### 3. Defense of Qualified Immunity

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 [1982] ). As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation confronted." *Sira v. Morton,* 380 F.3d 57, 68–69 (2d

Cir.2004) [citations omitted], *accord, Higazy v. Templeton,* 505 F.3d 161, 169, n. 8 (2d Cir.2007) [citations omitted].

In determining the second issue (i.e., whether it would be clear to a reasonable official that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

**\*7** *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991) [citations omitted], *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). [9] "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton,* 505 F.3d 161, 169–70 (2d Cir.2007) [citations omitted]. [10] This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). [11] As the Supreme Court has explained,

[9]   *See also Pena v. DePrisco,* 432 F.3d 98, 115 (2d Cir.2005); *Clue v. Johnson,* 179 F.3d 57, 61 (2d Cir.1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir.1996); *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995); *Prue v. City of Syracuse,* 26 F.3d 14, 17–18 (2d Cir.1994); *Calhoun v. New York State Division of Parole,* 999 F.2d 647, 654 (2d Cir.1993).

[10]   *See also Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)

("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.' ") [citation omitted]; *Davis v. Scherer,* 468 U.S. 183, 190, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

11    *See also Malsh v. Correctional Officer Austin,* 901 F.Supp. 757, 764 (S.D.N.Y.1995) [citing cases]; *Ramirez v. Holmes,* 921 F.Supp. 204, 211 (S.D.N.Y.1996).

[T]he qualified immunity defense ... provides ample protection to all but the plainly incompetent or those who knowingly violate the law.... Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Malley,* 475 U.S. at 341.[12]

12    *See also Hunter v. Bryant,* 502 U.S. 224, 299, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks and citation omitted].

## III. ANALYSIS

### A. Whether Plaintiff's Complaint Should Be Dismissed for Failure to Serve Process in Timely Manner

After carefully considering the matter, the Court must answer this question in the negative. By Defendants' own calculations, Plaintiff's Complaint was served on April 18, 2011–a mere 42 days after the Court granted Plaintiff's motion to proceed *in forma pauperis,* approved the filing of her

Complaint, and directed the Clerk of the Court to issue summonses and forward them with the Complaint to the United States Marshal's Service, for service on Defendants. (Dkt. No. 5 [Decision and Order filed March 7, 2011].) Indeed, Defendants acknowledge that Plaintiff completed the Civil Summonses and USM285 form, and returned them to the Clerk's Office (so that the Clerk's Office could forward them to the U.S. Marshal's Service for service of Plaintiff's Complaint) less than eight days after receiving them from the Clerk's Office. (Dkt. No. 13, Attach. 1, at ¶¶ 6–7; Dkt. No. 13, Attach. 2, at 9 [attaching page "8" of Defs.' Memo. of Law]; *see also* Dkt. Nos. 6, 8.) After that point in time, service was largely if not entirely outside of Plaintiff's control.

Under the circumstances, the Court finds that good cause exists to extend the deadline for service by 42 days. The Court notes that a contrary conclusion (e.g., a conclusion that Plaintiff had to serve her Complaint by December 13, 2010 pursuant to Local Rule 4.1, or even February 11, 2011 pursuant to Fed.R.Civ.P. 4) would render meaningless the Court's directive that the Clerk of the Court, on March 5, 2011, to take sufficient action to enable the United States Marshal's Service to effect service for Plaintiff.

### B. Whether Plaintiff's Complaint Should Be Dismissed for Failure to State a Claim Upon Which Relief Can Be Granted

### 1. Whether Plaintiff's Complaint Should Be Dismissed for Failing to Sufficiently Identify What Constitutional Rights She Is Attempting to Vindicate

**\*8** After carefully considering the matter, the Court must answer this question also in the negative. In construing the pleadings of a *pro se* civil rights litigant in this Circuit, a district court's imagination should be limited only by the plaintiff's factual allegations, not by the legal claims set out in his or her pleadings. *See Phillips v. Girdich,* 408 F.3d 124, 130 (2d Cir.2005) ("We leave it for the district court to determine what other claims, if any, Phillips has raised. In so doing, the court's imagination should be limited only by Phillips' factual allegations, not by the legal claims set out in his pleadings.").

Here, based on Plaintiff's (albeit scant and confused) factual allegations, the Court can imagine that she is attempting to assert the following three claims: (1) a claim of an unreasonable search under the Fourth Amendment; (2) a claim of an unlawful seizure of, and failure to return, her personal property under the Fourth, Fifth and/or Fourteenth

Amendments; and (3) a claim of excessive force under the Fourth Amendment.

### 2. Whether Plaintiff's Claims Against the Individual Defendants Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Their Personal Involvement in the Constitutional Violations Alleged

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 13 [attaching page "12" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. *See, supra,* Part III.C. of this Decision and Order. [13] Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, and finally, even when construed with the utmost of special liberality, the Complaint does not identify the precise location of the incident, which officers were responsible for violating her rights, how she suffered the head injury she alleges, what property was taken from her, and how Defendants frustrated her efforts to recover that property. *See Vogeler v. Colbath,* 04–CV–6071, 2005 U.S. Dist. LEXIS 44658, at *29, 2005 WL 2482549 (S.D.N.Y. Oct. 6, 2005) ("Plaintiffs must also allege ... the personal involvement of the Defendant in the actions underlying their claim."). [14]

[13]    Under the circumstances, the Court finds that Plaintiff had sufficient notice of the consequences of failing to respond to the arguments asserted in Defendants' motion. For example, on October 14, 2010, Plaintiff was given a courtesy copy of the District's *Pro Se* Handbook and a courtesy copy of the Local Rules of Practice for the Northern District of New York. (Dkt. No. 4.) In addition, on May 6, 2011, Defendants advised Plaintiff of her need to respond to their arguments. (Dkt. No. 15.) Also, Plaintiff had extensive experience as a *pro se* civil rights litigant in this District, before responding to the motion in question. *See, infra,* Part III.D. of this Decision and Order.

[14]    Indeed, the Court notes that one of the officers that Plaintiff lists in her Complaint has not been

identified. In a prior decision by the Court, Plaintiff was ordered to take reasonable steps to ascertain the identity of the unnamed officer, immediately notify the Court, amend her complaint to include the identity of the third Defendant, and also to have that officer served. (Dkt. No. 5, at 14.) Because Plaintiff has not done so, her alleged physical injuries remain attributable to an unidentified person.

For all of these alternative reasons, Plaintiff's claims against the individual Defendants are dismissed.

### 3. Whether the Syracuse Police Department Should Be Dismissed as a Defendant

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach 2, at 13.) The Court would add only the following three brief points.

**\*9** First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, and finally, "as Plaintiff has been told several times, under New York State law, departments, like the Onondaga County Sheriff's Department, that are merely administrative arms of a municipality, do not have a legal identity separate from the municipality and may not sue or be sued." *Jenkins v. Onondaga Cnty. Sheriff's Dep't,* 12–CV–0855, Report–Recommendation, at 5 (N.D.N.Y. filed June 28, 2012) (Baxter, J.) (citing *Hayes v. Cnty. of Sullivan,* 07–CV–0667, 2012 WL 1129373, at *24 [S.D.N.Y. March 30, 2012]). Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant in this case. The real party in interest is the City of Syracuse itself.

For all of these alternative reasons, the Syracuse Police Department dismissed as a Defendant.

### 4. Whether, Even if the City of Syracuse Were Substituted for the Police Department, Plaintiff's Claims Against the City Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Municipal Liability

2012 WL 4052286

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 14–15 [attaching pages "13" and "14" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, even when it is construed with the utmost of special liberality, Plaintiff's Complaint has not alleged facts plausibly suggesting a widespread policy or custom promulgated by the municipal policy maker necessary to hold the City liable for her injuries. As indicated above in Part II.E.2. of this Decision and Order, Plaintiff must allege facts plausibly suggesting that the municipality "has adopted a 'custom' or 'policy' which is the 'moving force' behind [the violation]." *Zappala v. Albicelli,* 980 F.Supp. 635, 639 (N.D.N.Y.1997) (Scullin, J.) (citing, *inter alia, Monell v. Dept. of Soc. Servs. of City of New York,* 436 U.S. 658, 689 [1978] ). However, Plaintiff has not alleged *any* official policy or custom adopted by the City of Syracuse or its Police Department,[15] let alone one responsible for the alleged injuries she received. Because *Monell* prohibits the finding of liability against a City when there is no causal connection between a municipal policy and a resulting injury, Syracuse City Police Department cannot be responsible for Plaintiff's alleged injuries. *Monell,* 436 U.S. at 692. As a result, the City of Syracuse cannot be maintained as a Defendant in this action, and Plaintiff's Section 1983 claims against it are dismissed.

[15]    In addition to not alleging facts plausibly suggesting the existence of a department-wide policy or custom, Plaintiff has not alleged facts plausibly suggesting that Officers Liadka, Sands, and the unnamed officer created or promulgated that policy, or even that they were final policymakers. "A municipal official that exercises discretion, whether it be in a constitutional or unconstitutional manner, in an area of which that official is not the final policymaker, cannot, by itself, establish municipal liability." *Clayton v. City of Kingston,* 44 F.Supp.2d 177, 184 (N.D.N.Y.1999) (McAvoy, C.J.).

*10    For all of these reasons, Plaintiff's claims against the City of Syracuse Police Department and/or the City of Syracuse are dismissed on this alternative ground.

### 5. Whether, in the Alternative, Plaintiff's Deprivation–of–Property Claim Should Be Dismissed to the Extent It Is Grounded on the Fifth Amendment

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 16–17 [attaching pages "15" and "16" of Defs.' Memo. of Law].) The Court would add only the following four brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach the same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, a takings claim is not ripe where a state remedy is potentially available. *Vandor Inc. v. Militello,* 301 F.3d 37, 39 (2d. Cir.2002). As the Supreme Court has explained,

> An unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available. For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy.

*Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Police are not required to provide the owner with notice for state-law remedies, which are "established by published, generally available state statutes and case law." *City of W. Covina v. Perkins,* 525 U.S. 234, 240–241, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999). "Once the property owner is informed that his property has been seized,

he can turn to these public sources to learn about the remedial procedures that are available to him. The City need not take other steps to inform him of his options." *City of W. Covina, 525 U.S. at 241.* Here, Plaintiff has not alleged facts plausibly suggesting that she attempted to recover her property in the proper manner (or even what property was taken). Fourth, and finally, Plaintiff does not allege facts suggesting that her property was taken for public use in an unconstitutional manner that would require her to be paid just compensation. Instead, Plaintiff alleges that, after she attempted to escape from their investigation and was restrained by officers, she was searched and had property taken from her.

For all of these alternative reasons, Plaintiff's deprivation-of-property claim is dismissed to the extent that it is grounded on the Fifth Amendment.

### 6. Whether, in the Alternative, Plaintiff's Excessive Force Claim Should Be Dismissed for Failing to Allege Facts Plausibly Suggesting Either that Force Was Used or that Any Such Force Was Excessive

**\*11** After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 17–18 [attaching pages "16" and "17" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, as stated in the Court's Decision and Order of March 7, 2011, in evaluating a Fourth Amendment excessive-force claim, "courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." (Dkt. No. 5, at 13.) [16] Here, Plaintiff alleges the following facts, which could be construed as plausibly suggesting that, at the time the incident occurred, she had given Defendants probable cause to use the force at issue against her: (1) Defendants were dispatched to that location regarding a problem; (2) Defendants specifically chose to question Plaintiff about the incident; (3) Plaintiff was attempting to get away from Defendant when they were attempting to question her; (4) she acted in such a way as to cause Defendants to become "worked up"; (5) it became

necessary for a third unnamed officer to step in and assist Defendants Sands and Liadka in controlling Plaintiff. (Dkt. No. 1, at ¶ 4 & Attachment.) Simply stated, it is plausible, based on Plaintiff's factual allegations, that the amount of force used by the officers to pull her hands behind her back and detain her was necessary to keep her from getting away and "going about [her] business." (*Id.* at ¶ 4.) It is important to note that Plaintiff does not allege facts plausibly suggesting any physical injury other than vague "head & back pains." (*Id.* at ¶ 5.) [17]

[16]    More specifically, the standard governing constitutional excessive-force claims against government officials in "the course of making an arrest, investigatory stop, or other seizure" of a person is the Fourth Amendment's objective reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 388, 391, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Pursuant to this standard, three elements must be objectively examined to determine whether excessive force was used for Fourth Amendment violations: "(1) the need for the application of force; (2) the relationship between that need and the amount of force that was used; and (3) the extent of the injury inflicted." *Graham,* 490 U.S. at 390, 397. It is essential to look at surrounding circumstances in each case, and analyze "whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. The "extent of intrusion on the suspect's rights" must be balanced against the "importance of governmental interests." *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985).

[17]    More specifically, Plaintiff's Complaint does not allege facts plausibly suggesting that her injuries were significant, how long the pain lasted, or that medical treatment was necessary (or even sought) following the incident. *See Smith v. City of New York,* 04–CV–3286, 2010 U.S. Dist. LEXIS 88774, at \*27, 2010 WL 3397683 (S.D.N.Y. Aug. 27, 2010) ("Courts in this Circuit have consistently held that an injury is de minimis when it is temporary and/or minor in severity.") (collecting cases).

For all of these reasons, Plaintiff's excessive force claim is dismissed on this alternative ground.

**7. Whether, in the Alternative, Plaintiff's Claims Against the Individual Defendants Should Be Dismissed Because, Based on the Factual Allegations of the Complaint, Defendants Are Protected from Liability as a Matter of Law by the Doctrine of Qualified Immunity**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated by Defendants in their memorandum of law. (Dkt. No. 13, Attach. 2, at 19–20 [attaching pages "18" and "19" of Defs.' Memo. of Law].) The Court would add only the following three brief points.

First, at the very least, Defendants have met the lightened burden that was created by Plaintiff's failure to respond to this argument for dismissal. Second, in any event, the Court would the reach same conclusion even if it were to subject Defendants' argument to the more rigorous scrutiny appropriate for a contested argument. Third, as indicated above in Part I.E.3. of this Decision and Order, "[u]nder federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that his actions were lawful at the time of the challenged act." *Jenkins v. City of New York,* 478 F.3d 76, 87 (2d Cir.2007) (internal quotations and other citations omitted). Here, based on Plaintiff's own factual allegations, it is plausible that police officers of reasonable competence could disagree as to whether Defendants' actions were unlawful (e.g., given their need to question her, and her attempt to flee the scene).

**\*12** For all of these reasons, Plaintiff's claims against the individual Defendants are dismissed on this alternative ground.

**C. Whether the Court Should Give Plaintiff an Opportunity to File an Amended Complaint Before Dismissing This Action**

Generally, when a district court dismisses a *pro se* action, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank,* 171 F.3d 794, 796 (2d Cir.1999). However, an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile. As the Second Circuit has explained, "[w]here it appears that

granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (citations omitted), *accord, Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ("[W]here ... there is no merit in the proposed amendments, leave to amend should be denied").

This rule applies even to *pro se* plaintiffs. *See, e.g., Cuoco,* 222 F.3d at 103; *Brown,* 1997 WL 599355, at \*1. As explained above in Part II.B. of this Decision and Order, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12; rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.

Here, the Court has some difficulty finding that the referenced defect in Plaintiff's Complaint is merely formal. Nor is the Court confident that granting Plaintiff an opportunity to amend her Complaint will be productive. The Court notes that the errors made by Plaintiff in this action were previously made by her, and not corrected, on many occasions. Plaintiff has been ordered numerous times to file amended complaints at risk of dismissal of her case.[18] Of the seven times an amended complaint was required, Plaintiff submitted an amended complaint only three times.[19] Two of these were one page documents which did not state a claim upon which relief could be granted and were rejected by the Court, and the other did not correct the deficiencies of the original complaint.[20] Plaintiff did not comply with the Court's order

to amend her complaint at all on four occasions.[21] In one case, Plaintiff was given an additional thirty day period to file her amended complaint after she failed to do so within the first 30 day period granted to her. *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006). Similarly, in a separate case, Plaintiff did not follow up on her original claim because she failed to appear for three hearings the Court rescheduled despite warnings of her need to comply with the Court Orders. *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005). All seven of these cases resulted in dismissal, most for failure to prosecute, failure to comply with Court Orders, or failure to state a claim. Five of Plaintiff's cases were not given leave to amend because granting such leniency would have been futile.[22]

[18]     *Jenkins v. Comm'r of Soc. Sec. Admin.,* 06–CV– 0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV– 0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Onondaga Sheriff's Dep't.,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't.,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 12– CV–0855 (N.D.N.Y. filed May 23, 2012).

[19]     *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins v. Comm'r of Soc. Sec. Admin.,* 06–CV–0059 (N.D.N.Y. filed Jan 17, 2006); *Jenkins v. Sheriff's Dep't.,* 07–CV– 0939 (N.D.N.Y. filed Sept. 11, 2007).

[20]     *Id.*

[21]     *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Onondaga Sheriff's Dep't.,* 06–CV– 1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 12–CV–0855 (N.D.N.Y. filed May 23, 2012)

[22]     *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. Sheriff's*

*Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. USA,* 09–CV0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice,* 11–CV–1037 (N.D.N.Y. filed Aug. 31, 2011).

**\*13** However, the Court is mindful of the special solicitude that should be afforded to *pro se* civil rights litigants. For these reasons, before the Court dismisses Plaintiff's action, the Court will afford her an opportunity to file an Amended Complaint correcting the above-described pleading defects within thirty (30) days from the date of the filing of this Decision and Order.

If Plaintiff submits an Amended Complaint, she is encouraged to describe the acts of misconduct alleged therein and identify each individual who participated in the misconduct. Moreover, Plaintiff is advised that her Amended Complaint must be a complete pleading that will replace and supersede her original Complaint in its entirety. Finally, Plaintiff is cautioned that, if she fails to file, in a timely fashion, an Amended Complaint that successfully states a claim upon which relief can be granted, her action will be dismissed with prejudice without further Order of the Court.

### D. Whether This Case Should Be Forwarded to the Chief Judge with a Recommendation that an Anti– Filing Injunction Order Be Issued Against Plaintiff

A review of Plaintiff's litigation history on Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service reveals that, before filing the current action on October 13, 2010, she filed thirteen *pro se* civil actions in this District alone-twelve of which have been dismissed and the thirteen of which is being considered for dismissal.[23] A review of Plaintiff's litigation history has caused the undersigned to believe that (1) Plaintiff lacks a good-faith expectation in prevailing in her lawsuits, (2) she is vexatious and indeed incorrigible when proceeding pro se, (3) she has caused needless expense to other parties and placed an unnecessary burden on the Court and its personnel, and (4) no lesser sanctions (e.g., such as dismissal or chastisement) would be adequate to protect the Court and other parties.

[23]     *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621 (N.D.N.Y. filed May 19, 2006); *Jenkins Comm'r of Soc. Sec. Admin.,* 06– CV–0059 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV– 0060 (N.D.N.Y. filed Jan. 17, 2006); *Jenkins v. City*

*of Syracuse,* 06–CV–1005 (N.D.N.Y. filed Aug. 21, 2006); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167 (N.D.N.Y. filed Sept. 29, 2006); *Jenkins v. City of Syracuse,* 07–CV–0930 (N.D.N.Y. filed Sept. 7, 2007); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Murphy,* 08–CV–0921 (N.D.N.Y. filed Aug. 8, 2008); *Jenkins v. USA,* 09–CV–0603 (N.D.N.Y. filed May 11, 2009); *Jenkins v. Rice,* 11–CV–1037 (N.D.N.Y. filed Aug. 31, 2011); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855 (N.D.N.Y filed May 23, 2012).

For example, eight of Plaintiff's actions have resulted in a dismissal for failure to state a claim or frivolousness, another has resulted in the pending recommendation of a dismissal on that ground, three others have resulted in a dismissal for lack of subject-matter jurisdiction, and another has resulted in a dismissal for failure to prosecute. [24]

[24] *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457, Decision and Order (N.D.N.Y. filed Apr. 25, 2006) (Scullin, J.); *Jenkins Comm'r of Soc. Sec. Admin.,* 06–CV–0059, Decision and Order (N.D.N.Y. filed March 29, 2007) (Hurd, J.); *Jenkins v. Emergency Dep't Upstate Univ. Hosp.,* 06–CV–0060, Memorandum–Decision and Order (N.D.N.Y. filed April 14, 2006) (Scullin, J.); *Jenkins v. Dep't Corr. Servs.,* 06–CV–0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. City of Syracuse,* 06–CV–1005, Order (N.D.N.Y. filed Oct. 5, 2006) (Mordue, C.J.); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092, Decision and Order, (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.); *Jenkins v. Mohawk Corr. Facility,* 06–CV–1167, Decision and Order (N.D.N.Y. filed Oct. 12, 2006) (Mordue, C.J.); *Jenkins v. City of Syracuse,* 07–CV–0930, Decision and Order (N.D.N.Y. filed Oct. 7, 2007) (Mordue, C.J.); *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Murphy,* 08–CV–0921, Order (N.D.N.Y. filed Oct. 14, 2008) (McCurn, J.); *Jenkins v. USA,* 09–CV–0603, Decision and Order (N.D.N.Y. filed May 28, 2009) (McAvoy, J.); *Jenkins v. Rice,* 11–CV–1037, Decision and Order (N.D.N.Y. filed Oct. 11, 2011) (Kahn, J.); *Jenkins*

*v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855, Report–Recommendation (N.D.N.Y filed June 28, 2012) (Baxter, M.J.).

Moreover, Plaintiff has sued the Onondaga County Sheriff's Department four times. [25] As a result, she has been repeatedly instructed on the legal standard for suing a municipality. For example, on October 6, 2006, she was specifically informed of the need to establish a custom or policy which is the moving force behind a resulting injury. *Jenkins v. Onondaga Cnty. Sheriff's Dep't.,* 06–CV–1092, Decision and Order, at 4 (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.). However, despite receiving that specific information, she has *repeatedly* continued to file improper claims against the Onondaga County Sheriff's Department. [26]

[25] *Jenkins v. Onondaga Sheriffs' Dep't,* 05–CV–1457 (N.D.N.Y. filed Nov. 21, 2005); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092 (N.D.N.Y. filed Sept. 12, 2006); *Jenkins v. Sheriff's Dep't,* 07–CV–0939 (N.D.N.Y. filed Sept. 11, 2007); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855 (N.D.N.Y filed May 23, 2012).

[26] *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order at 3 (N.D.N.Y. filed Oct. 2, 2007) (Hurd, J.); *Jenkins v. Sheriff's Dep't,* 07–CV–0939, Decision and Order at 2 (N.D.N.Y. filed Nov. 21, 2007) (Hurd, J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV0855, Decision and Order, at 4–5 (N.D.N.Y filed May 24, 2012) (Baxter, M.J.); *Jenkins v. Onondaga Cnty. Sheriff's Dept.,* 12–CV–0855, Report–Recommendation, at 5–6 (N.D.N.Y filed June 28, 2012) (Baxter, M.J.); *see also, supra,* Part III.B.4. of this Decision and Order.

Finally, Plaintiff has repeatedly had to be ordered to comply with the Local Rules, and reminded that all factual allegations should be contained in the complaint itself, that paragraphs ought to be numbered, and that the individuals she alleges violated her rights must be identified. *See, e.g., Jenkins v. Dep't Corr. Servs.,* 06–CV–0621, Decision and Order (N.D.N.Y. filed July 5, 2006) (Kahn, J.); *Jenkins v. Onondaga Sheriff's Dep't,* 06–CV–1092, Order (N.D.N.Y. filed Oct. 6, 2006) (McAvoy, J.).

**\*14** Under such circumstances, a federal district court may impose reasonable filing restrictions on a *pro se* litigant in that particular court, pursuant to 28 U.S.C. § 1651(a) and its inherent authority to control and manage its own docket

Case 5:20-cv-00937-GTS-TWD    Document 17    Filed 05/18/21    Page 62 of 67
Jenkins v. Liadka, Not Reported in F.Supp.2d (2012)
2012 WL 4052286

so as to prevent abuse in its proceedings. For example, a federal district court may, after providing an appropriate opportunity to be heard, prohibit a vexatious litigant from filing, in that particular court, any action *pro se* (that is, without counsel), without prior leave of that court. *See Hong Mai Sa v. Doe,* 406 F.3d 155, 158 (2d Cir.2005) ("If a litigant has a history of filing vexatious, harassing or duplicative lawsuits, courts may impose sanctions, including restrictions on future access to the judicial system.") [internal quotations and citations omitted]; *In re Sassower,* 20 F.3d 42, 44 (2d Cir.1994) (where a *pro se* plaintiff has demonstrated a "clear pattern of abusing the litigation process by filing vexatious and frivolous complaints," a "leave to file" requirement may be instituted by the court as an appropriate sanction); *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998) ( "[T]he district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard."); *Azubuko v. Unknown Boston Police Officers,* 08–CV–0330, 2008 WL 1767067, at * 1 (N.D.N.Y. Apr.16, 2008) (McCurn, J.).

For all of these reasons, this case is forwarded to Chief United States District Judge Gary L. Sharpe with a recommendation that an Anti–Filing Injunction Order be issued against Plaintiff.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 13) is *GRANTED* **in part** and *DENIED* **in part;** and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is conditionally *DISMISSED;* and it is further

**ORDERED** that Plaintiff is permitted to file an Amended Complaint within **THIRTY (30) DAYS** of the filing date of this Order; and it is further

**ORDERED** that, *if Plaintiff fails to timely file an Amended Complaint, the Clerk shall enter judgment dismissing this action without further Order of this Court;* and it is further

**ORDERED** that, upon filing of the Amended Complaint, this file in this matter be returned to the Court for further review; and it is further

**ORDERED** that the Clerk of the Court is directed to forward this case to Chief United States District Judge Gary L. Sharpe with the recommendation of the undersigned that an AntiFiling Injunction Order be issued against Plaintiff.

*The Court hereby certifies, for purposes of 28 U.S.C. § 1915(a) (3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.*

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4052286

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Overruling Risk - Negative Treatment

Overruling Risk   *Darnell v. Pineiro,*   2nd Cir.,   February 21, 2017

2012 WL 1965663
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Steven LUKES, Plaintiff,

v.

NASSAU COUNTY JAIL, Armor Correctional
Health, Inc., John Doe and Jane Doe of the
Nassau County Jail, John Doe and Jane Doe
Ofarmor Correctional Health, Inc., Defendants.

No. 12–CV–1139(SJF)(AKT).
|
May 29, 2012.

**Attorneys and Law Firms**

Steven Lukes, East Meadow, NY, pro se.

*ORDER*

FEUERSTEIN, District Judge.

**I. Introduction**

 **\*1** On March 7, 2012, *pro se* plaintiff Steven Lukes
("plaintiff") filed a complaint pursuant to 42 U.S.C. § 1983
("Section 1983"), accompanied by an application to proceed
*in forma pauperis.* Subsequently, plaintiff also moved for the
appointment of *pro bono* counsel to represent him in this
case. Plaintiff's financial status, as set forth in the declaration
in support of his application to proceed *in forma pauperis,*
qualifies him to commence this action without prepayment
of the filing fees. *See* 28 U.S.C. § 1915(a)(1). Accordingly,
plaintiff's application to proceed *in forma pauperis* is granted.
However, for the reasons set forth below, the complaint is
*sua sponte* dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)
and 1915A(b) and plaintiff's application for the appointment of
*pro bono* counsel is denied without prejudice.

**II. The Complaint**

Plaintiff alleges that while incarcerated at the Nassau County
Jail, he was denied "proper medical treatment" for injuries he
allegedly suffered as a result of "police brutality," as well as

for his hepatitis C. (Compl. at ¶ IV). Plaintiff seeks damages in
the amount of one hundred million dollars ($100,000,000.00).
(Compl. at ¶ V).

**III. Discussion**

 **A. Standard of Review**

Under both the Prison Litigation Reform Act, 28 U.S.C. §
1915A, and the *in forma pauperis* statute, 29 U.S.C. § 1915(e)
(2), a district court must dismiss a complaint if it is frivolous
or malicious, fails to state a claim upon which relief may
be granted or seeks monetary relief from a defendant who is
immune from such relief. 28 U.S.C. §§ 1915A(b) and 1915(e)
(2)(B). *See Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007)
(finding both Section 1915 and 1915A to be applicable to a
prisoner proceeding *in forma pauperis* ).

It is axiomatic that district courts are required to read *pro se*
complaints liberally, *see Erickson v. Pardus,* 551 U.S. 89, 94,
127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (quoting *Estelle
v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251
(1976)); *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010),
and to construe them " 'to raise the strongest arguments
that [they] suggest[ ].' " *Chavis,* 618 F.3d at 170 (quoting
*Harris v. City of New York,* 607 F.3d 18, 24 (2d Cir.2010)).
Moreover, at the pleadings stage of the proceeding, the Court
must assume the truth of "all well-pleaded, nonconclusory
factual allegations" in the complaint. *Kiobel v. Royal Dutch
Petroleum Co.,* 621 F.3d 111, 124 (2d Cir. Sept.2010); *see also
Jackson v. Birmingham Board of Education,* 544 U.S. 167,
171, 125 S.Ct. 1497, 161 L.Ed.2d 361 (2005).

Nevertheless, a complaint must plead sufficient facts "to state
a claim to relief that is plausible on its face." *Bell Atlantic
Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974,
167 L.Ed.2d 929 (2007). The pleading of specific facts is
not required; rather a complaint need only give the defendant
"fair notice of what the \* \* \* claim is and the grounds upon
which it rests." *Erickson,* 551 U.S. 89, 127 S.Ct. 2197, 167
L.Ed.2d 1081; *see also Arista Records. LLC v. Doe 3,* 604
F.3d 110, 119–20 (2d Cir.2010) (accord). "A pleading that
offers 'labels and conclusions' or 'a formulaic recitation of
the elements of a cause of action will not do.' " *Ashcroft v.
Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868
(2009) (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955,
167 L.Ed.2d 929). "Nor does a complaint suffice if it tenders
'naked assertion[s]' devoid of 'further factual enhancement.' "
*Id.* (quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955, 167
L.Ed.2d 929). "Factual allegations must be enough to raise a

right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly,* 550 U.S. 544, 127 S.Ct. at 1959, 167 L.Ed.2d 929. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." *Iqbal,* 556 U.S. 662, 129 S.Ct. at 1949, 173 L.Ed.2d 868.

### B. Section 1983

**\*2** Section 1983 provides that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ....

42 U.S.C. § 1983. To state a Section 1983 claim, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.2010); *cert. denied sub nom Cornejo v. Monn,* ––– U.S. ––––, 131 S.Ct. 158, 178 L.Ed.2d 243 (2010) (quoting *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994)). Section 1983 does not create any independent substantive right; but rather is a vehicle to "redress ... the deprivation of [federal] rights established elsewhere." *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999).

### 1. Claims Against the Nassau County Jail

"[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002); *see also In re Dayton,* 786 F.Supp.2d 809, 818 (S.D.N.Y.2011); *Hawkins v. Nassau County Correctional Facility,* 781 F.Supp.2d 107, 109 at n. 1 (E.D.N.Y.2011); *Carthew v. County of Suffolk,* 709 F.Supp.2d 188, 195 (E.D.N.Y.2010). Since the Nassau County Jail is an administrative arm of Nassau County, without a legal identity separate and apart from the County, it lacks the

capacity to be sued. Accordingly, plaintiff's claims against the Nassau County Jail are dismissed in their entirety with prejudice. However, since plaintiff is proceeding *pro se,* his claims against the Nassau County Jail will be construed as claims against Nassau County.

### a. Claims Against Nassau County

A municipality or municipal entity, such as Nassau County, cannot be held liable under § 1983 on a *respondeat superior* theory. *See Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Roe v. City of Waterbury,* 542 F.3d 31, 36 (2d Cir.2008). To prevail on a Section 1983 claim against a municipality, a plaintiff must show "that 'action pursuant to official municipal policy' caused the alleged constitutional injury." *Cash v. County of Erie,* 654 F.3d 324, 333 (2d Cir.2011), *cert. denied,* ––– U.S. ––––, 132 S.Ct. 1741, 182 L.Ed.2d 528 (2012) (quoting *Connick v. Thompson,* ––– U.S. ––––, ––––, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011)); *see also Monell,* 436 U.S. at 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611. "Local governing bodies ... may be sued for constitutional deprivations pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell,* 436 U.S. at 690–691 (citations omitted). To establish the existence of a municipal policy or custom, the plaintiff must allege: (1) the existence of a formal policy which is officially endorsed by the municipality, *see Connick,* 131 S.Ct. at 1359; (2) actions taken or decisions made by municipal policymaking officials, i.e., officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights, *see Amnesty America v. Town of West Hartford,* 361 F.3d 113, 126 (2d Cir.2004); *Jeffes v. Barnes,* 208 F.3d 49, 57 (2d Cir.2000); (3) a practice "so persistent and widespread as to practically have the force of law," *Connick,* 131 S.Ct. at 1359; *see also Green v. City of New York,* 465 F.3d 65, 80 (2d Cir.2006) (accord), or that "was so manifest as to imply the constructive acquiescence of senior policy-making officials," *Patterson v. County of Oneida, N.Y.,* 375 F.3d 206, 226 (2d Cir.2004) (quotations and citations omitted); or (4) that "a policymaking official exhibit[ed] deliberate indifference to constitutional deprivations caused by subordinates," *Cash,* 654 F.3d at 334 (quotations and citations omitted); *see also Okin v. Village of Cornwall–On–Hudson Police Department,* 577 F.3d 415, 439 (2d Cir.2009) (holding that a municipal custom may be found when "faced with a pattern of misconduct, [the municipality] does nothing, compelling the conclusion that [it] has acquiesced in or tacitly authorized its subordinates' unlawful actions." (quotations

and citations omitted), i.e., "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights * * * amount[ing] to deliberate indifference to the rights of persons with whom the untrained employees come into contact," *Connick,* 131 S.Ct. at 1359 (quotations, alterations and citations omitted), or a policymaking official's failure to investigate or rectify a potentially serious problem of unconstitutional conduct of which he or she had notice, evidencing deliberate indifference, "rather than mere negligence or bureaucratic inaction," *Amnesty America,* 361 F.3d at 128.

**\*3** Even liberally construing the complaint, plaintiff's allegations are insufficient to state a *Section 1983* cause of action against Nassau County. *See, e.g., White v. St. Joseph's Hospital,* 369 Fed. Appx. 225, 226 (2d Cir. Mar.10, 2010) (affirming *sua sponte* dismissal of *Section 1983* claim for the plaintiffs failure "to allege that any of the allegedly unconstitutional actions were taken pursuant to an official policy or custom, as is required to state a *§ 1983* claim against a municipality."); *see generally City of Waterbury,* 542 F.3d at 37–41. Plaintiff has not alleged: (1) the existence of a formal policy which is officially endorsed by the County or Nassau County Jail; (2) actions taken or decisions made by County or Nassau County Jail policymaking officials which caused the alleged violations of his civil rights; (3) a County or Nassau County Jail practice so persistent and widespread as to practically have the force of law; or (4) a failure by County or Nassau County Jail policymakers to properly train or supervise their subordinates, amounting to "deliberate indifference" to the rights of those who come in contact with their employees. Accordingly, plaintiff's claims, as construed to be against Nassau County, are dismissed with prejudice **unless plaintiff files an amended complaint stating plausible Monell claims against the County on or before July 2, 2012.** *See, e.g. Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."); *Chavis,* 618 F.3d at 170 (when addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated.")

2. *Section 1983* Claims against the Remaining Defendants

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under *§ 1983*." *Back v. Hastings on Hudson Union Free School Dist.,* 365 F.3d 107, 122 (2d Cir.2004) (internal quotations and citation omitted); *see also Platt v. Incorporated Village of Southampton,* 391 Fed. Appx. 62, 65 (2d Cir. Aug.30, 2010); *Farid v. Ellen,* 593 F.3d 233, 249 (2d Cir.2010). "Personal involvement" may be established by evidence of direct participation by the defendant in the challenged conduct, or by evidence of a supervisory official's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." *Hayut v. State University of New York,* 352 F.3d 733, 753 (2d Cir.2003); *see also Rolon v. Ward,* 345 Fed. Appx. 608, 611 (2d Cir. Sept.4, 2009). "[A] defendant in a *Section 1983* action may not be held liable for damages for constitutional violations merely because he held a high position of authority." *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996); *see also Back,* 365 F.3d at 127; *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). A complaint based on a violation under *Section 1983* that does not allege facts establishing the personal involvement of a defendant fails as a matter of law. *See Costello v. City of Burlington,* 632 F.3d 41, 48–49 (2d Cir.2011); *Shomo v. City of New York,* 579 F.3d 176, 184 (2d Cir.2009).

**\*4** Plaintiff has not established, or even alleged, the direct participation of any defendant, or employee of a defendant, in any of the wrongdoing alleged in his complaint, nor any basis upon which to find any defendant, or employee of a defendant, liable in a supervisory capacity.

Moreover, "[a] convicted prisoner's claim of deliberate indifference to his medical needs by those overseeing his care is analyzed under the Eighth Amendment because the right the plaintiff seeks to vindicate arises from the Eighth Amendment's prohibition of 'cruel and unusual punishment.' " *Caiozzo v. Koreman,* 581 F.3d 63, 69 (2d Cir.2009) (quoting *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996)). However, "a person detained prior to conviction receives protection against mistreatment at the hands of prison officials under the Due Process Clause of the Fifth Amendment if the pretrial detainee is held in federal custody, or the Due Process Clause of the Fourteenth Amendment if held in state custody." *Id* . Regardless of whether the plaintiff is a convicted prisoner or pretrial detainee, however, "the standard for deliberate indifference is the same under the Due Process Clause of the

Fourteenth Amendment [or Fifth Amendment] as it is under the Eighth Amendment." *Id.* at 70–71, 72.

A claim for deliberate indifference to medical needs has both an objective and subjective component. *See Collazo v. Pagano,* 656 F.3d 131, 135 (2d Cir.2011); *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir.2011).

Objectively, "the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain, exists." *Hill,* 657 F.3d at 122 (quoting *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996)). In order to determine whether an alleged deprivation of medical care was objectively serious, the court must inquire (1) whether the inmate was "actually deprived of adequate medical care," i.e., whether the prison officials acted reasonably in response to the inmate's medical needs; and (2) "whether the inadequacy in medical care [was] sufficiently serious," i.e., how the challenged conduct was inadequate and what harm, if any, the inadequacy has caused or will likely cause the inmate. *Salahuddin v. Goord,* 467 F.3d 263, 279–80 (2d Cir.2006).

"Subjectively, the official must have acted with the requisite state of mind, the 'equivalent of criminal recklessness,' " *Collazo,* 656 F.3d at 135 (quoting *Hathaway,* 99 F.3d at 553); *see also Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (holding that a deliberate indifference claim "mandate[s] inquiry into a prison official's state of mind."), i.e ., the official must have "act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin,* 467 F.3d at 280; *see also Caiozzo,* 581 F.3d at 72 (holding that the plaintiff must establish that the official "knew of and disregarded an excessive risk to [the plaintiff's] health or safety and * * * was both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference." (alterations and quotations omitted)). Generally, "mere allegations of negligent malpractice do not state a claim of deliberate indifference." *Hathaway,* 99 F.3d at 553; *see also Estelle,* 429 U.S. at 106, 97 S.Ct. 285, 50 L.Ed.2d 251 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim * * * under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). *Farid,* 593 F.3d at 249 ("[N]egligence is insufficient to support an Eighth Amendment claim."); *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir.2003) (" 'Deliberate indifference' describes a mental state more

blameworthy than negligence * * * [and] is a state of mind that is the equivalent of criminal recklessness. * * * A showing of medical malpractice is therefore insufficient to support an Eighth Amendment claim unless the malpractice involves culpable recklessness, i.e., an act or a failure to act * * * that evinces a conscious disregard of a substantial risk of serious harm." (internal quotations and citations omitted)).

**\*5** Even liberally read, the complaint fails to state a claim for deliberate indifference to plaintiff's medical needs because, *inter alia,* plaintiff does not allege the personal involvement of any defendant in any of the alleged wrongdoing and plaintiff's allegations indicate only his dissatisfaction with the care provided to him during his incarceration at the Nassau County Jail and, at most, state a claim for negligence or medical malpractice. Accordingly, plaintiff's complaint is *sua sponte* dismissed in its entirety with prejudice pursuant to 28 U.S.C. § 1915A(b)(1) and § 1915(e)(2)(B)(ii) unless plaintiff files an amended complaint alleging the personal involvement of any defendant in the alleged constitutional deprivation and stating a plausible claim for deliberate indifference to medical needs **on or before July 2, 2012 .** The amended complaint must be labeled "Amended Complaint;" bear the same docket number as this Order; and clearly identify the individual(s) personally responsible for any alleged violation of his constitutional rights. In the event plaintiff does not know the names of such individuals, he must identify each of them as "John Doe Correctional Officer# 1" or "Jane Doe Medical Officer # 2, "or the like; identify the roles each of them played in the alleged constitutional deprivation; describe each of them with as much specificity as possible to enable their identification; and, where possible, identify the specific dates of the alleged wrongdoing.

C. Application for Appointment of *Pro Bono* Counsel

28 U.S.C. § 1915(e)(1) provides that a "court may request an attorney to represent any person unable to afford counsel." Courts possess substantial discretion to determine whether appointment of counsel for civil litigants is appropriate, *Ferrelli v. River Manor Health Care Center,* 323 F.3d 196, 203 (2d Cir.2003), "subject to the requirement that [they] be 'guided by sound legal principle.' " *Cooper v. A. Sargenti Co., Inc.,* 877 F.2d 170, 171–72 (2d Cir.1989) (quoting *Jenkins v. Chemical Bank,* 721 F.2d 876, 879 (2d Cir.1983)).

When deciding whether to appoint counsel to an indigent civil litigant under § 1915(e)(1), the threshold inquiry is whether there is "some likelihood of merit" to the litigant's position. *Johnston v. Maha,* 606 F.3d 39, 41 (2d Cir.2010); *see also*

Case 5:20-cv-00937-GTS-TWD    Document 17    Filed 05/18/21    Page 67 of 67
Lukes v. Nassau County Jail, Not Reported in F.Supp.2d (2012)
2012 WL 1965663

*Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 632 (2d Cir.2001) ("counsel should not be appointed in a case where the merits of the indigent's claim are thin and his chance of prevailing are therefore poor."); *see also Hodge v. Police Officers,* 802 F.2d 58, 61 (2d Cir.1986) (stating that "the district judge should first determine whether that indigent's position seems likely to be of substance").

If the threshold showing has been met, the court should next consider the following prudential factors:

> [T]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

**\*6** *Hodge,* 802 F.2d at 61–62; *see also Johnston,* 606 F.3d at 42 (applying the *Hodge* factors); *Carmona,* 243 F.3d at 632 (holding that "[o]nly after an initial finding that a claim is likely one of substance, will we consider secondary factors such as the factual and legal complexity of the case, the ability of the litigant to navigate the legal minefield unassisted, and any other reason why in the particular case appointment of counsel would more probably lead to a just resolution of the dispute"). However, those factors are not exclusive and "[e]ach case must be decided on its own facts." *Hodge,* 802 F.2d at 61.

Plaintiff has not established a threshold showing of merit to any of his claims. Accordingly, plaintiff's application for the appointment of *pro bono* counsel is denied without prejudice.

## IV. Conclusion

For the reasons set forth above, plaintiff's application to proceed *in forma pauperis* is granted; the complaint is *sua sponte* dismissed with prejudice pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2) **unless plaintiff files an amended complaint in accordance with this Order on or before July 2, 2012;** and plaintiff's application for the appointment of *pro bono* counsel is denied without prejudice. Pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, the Clerk of the Court is directed to serve notice of entry of this order upon all parties, including mailing a copy of this order to plaintiff at his last known address in accordance with Rule 5(b)(2)(C).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 1965663

---

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.